**BAKER & HOSTETLER LLP**
Bethany G. Lukitsch (SBN 314376)
*blukitsch@bakerlaw.com*
Kamran B. Ahmadian (SBN 314566)
*kahmadian@bakerlaw.com*
1900 Avenue of the Stars | Suite 2700
Los Angeles, CA 90067-4508
Telephone: 310.820.8800
Facsimile: 310.820.8859

*Attorneys for Defendant*
GOFUNDME, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

SAL MUNOZ and SHIRLEY VANASCH, individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

GOFUNDME, INC.,

Defendant.

Case No.: 3:26-CV-01217-TLT

*[Assigned to the Hon. Trina L. Thompson]*

**DEFENDANT GOFUNDME, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**

*[Filed Concurrently with Declaration of Matthew Murray, Notice of Motion and Motion to Dismiss, Request for Judicial Notice, and [Proposed] Orders]*

**Date:** August 25, 2026
**Time:** 2:00 P.M.
**Dept.:** Courtroom 9, 19th Floor

**Action Filed:** February 9, 2026

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**TO THE HONORABLE COURT, TO PLAINTIFFS, AND THEIR COUNSELS OF RECORD HEREIN**:

**NOTICE IS HEREBY GIVEN** that on August 25, 2026 at 2:00 p.m., or as soon thereafter as the matter may be heard, before the Honorable Trina L. Thompson, in Courtroom 9 of the above-entitled Court located on the 19th Floor of the Phillip Burton Federal Building, at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant GoFundMe, Inc. ("GoFundMe" or "Defendant") will and hereby does move for an order compelling the claims brought by Plaintiff Sal Munoz ("Munoz" or "Plaintiff") to arbitration (the "Motion"). This Motion is made pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1, *et seq*. on the grounds that Plaintiff and GoFundMe are parties to a binding arbitration agreement that requires resolution of the claims asserted in the Complaint against GoFundMe within an arbitral forum and warrant an order compelling arbitration.

GoFundMe bases its Motion on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Matthew Murray, Request for Judicial Notice, the pleadings, papers and records on file in this action, all other matters of which the Court may take judicial notice, and any argument that may be presented to the Court.

Dated: April 29, 2026

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: */s/ Bethany G. Lukitsch*
Bethany G. Lukitsch
Kamran B. Ahmadian

*Attorneys for Defendants*
GOFUNDME, INC.

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. STATEMENT OF ISSUES TO BE DECIDED ..... 1

III. BACKGROUND ..... 1

A. Munoz Agreed to GoFundMe's Terms of Service by Voluntarily Signing Up for An Account in 2017 on GoFundMe's Website. ..... 2

B. The Terms of Service Contain a Binding Arbitration Agreement ..... 3

IV. LEGAL STANDARD ..... 3

V. ARGUMENT ..... 4

A. An Enforceable Arbitration Agreement Exists. ..... 4

1. GoFundMe Provided Reasonably Conspicuous Notice of the Arbitration Agreement. ..... 6

2. Munoz Unambiguously Manifested His Assent. ..... 8

B. Munoz's Claims Are Within the Scope of the Arbitration Agreement. ..... 8

C. The Parties Delegated Any Issues Of Arbitrability To The Arbitrator. ..... 10

D. Munoz's Claims as to GoFundMe Should Be Dismissed or Stayed Pending Arbitration. ..... 11

VI. CONCLUSION ..... 12

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple & AT & T iPad Unlimited Data Plan Litig.*,
No. C-10-02553 RMW, 2011 WL 2886407 (N.D. Cal. July 19, 2011) ....10

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....4

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ....5, 6, 8

*Blau v. AT & T Mobility*,
No. C 11-00541 CRB, 2012 WL 566565 (N.D. Cal. Feb. 21, 2012) ....10

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ....11

*Britton v. Co-op Banking Grp.*,
4 F.3d 742 (9th Cir. 1993) ....9

*Chien v. Bumble Inc.*,
641 F. Supp. 3d 913 (S.D. Cal. 2022)....4

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ....9

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)....4

*DeVries v. Experian Info. Sols., Inc.*,
No. 16-CV-02953-WHO, 2017 WL 733096 (N.D. Cal. Feb. 24, 2017) ....10

*Dohrmann v. Intuit, Inc.*,
823 F. App'x 482 (9th Cir. 2020) ....4, 6

*Galilea, LLC v. AGCS Marine Ins. Co.*,
879 F.3d 1052 (9th Cir. 2018) ....11

*Garcia v. Dell, Inc.*,
905 F. Supp. 2d 1174 (S.D. Cal. 2012)....9

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911, 924 (N.D. Cal. 2024) ....11

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019)....10

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*HM DG, Inc. v. Amini*,
219 Cal. App. 4th 1100 (2013) ....................4

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) ....................5, 7

*Knutson v. Sirius XM Radio Inc.*,
771 F.3d 559 (9th Cir. 2014) ....................4

*Lee v. Ticketmaster L.L.C.*,
No. 18-CV-05987-VC, 2019 WL 9096442 (N.D. Cal. Apr. 1, 2019) (Chhabria, J.), *aff'd*, 817 F. App'x 393 (9th Cir. 2020)....................8

*McLellan v. Fitbit, Inc.*,
2017 WL 4551484 (N.D. Cal. Oct. 11, 2017)....................11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)....................3, 9

*Nevarez v. Forty Niners Football Co., LLC*,
2017 WL 3492110 (N.D. Cal. Aug. 15, 2017) ....................7, 8

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ....................5, 6, 8

*Peter v. DoorDash, Inc.*,
445 F. Supp. 3d 580 (N.D. Cal. 2020) ....................5, 7, 8

*Pizarro v. QuinStreet, Inc.*,
2022 WL 3357838 (N.D. Cal. Aug. 15, 2022) ....................7, 8

*Regan v. Pinger, Inc.*,
No. 20-CV-02221-LHK, 2021 WL 706465 (N.D. Cal. Feb. 23, 2021)....................4, 5, 8

*Rossi v. Purvis*,
713 F. Supp. 3d 603 (N.D. Cal. 2024) ....................9

*Sarhadi v. Pear Health Labs, Inc.*,
No. 24-CV-07921-TLT, 2025 WL 1350033 (N.D. Cal. Apr. 18, 2025), *reconsideration denied*, No. 24-CV-07921-TLT, 2025 WL 4644296 (N.D. Cal. July 11, 2025)....................9

*Smith v. Spizzirri*,
601 U.S. 472 (2024)....................11

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*,
489 U.S. 468 (1989)....................4

*Zaimi v. Neiman Marcus Grp., LLC*,
No. 2:22-CV-02972 AB (SKX), 2022 WL 19569536 (C.D. Cal. Aug. 31, 2022) ....................5, 10, 11



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Zenelaj v. Handybook Inc.*,
82 F.Supp.3d 968 (N.D. Cal. 2015) ..........11

**Federal Statutes**

9 U.S.C. § 2 ..........3

9 U.S.C. § 3 ..........11

9 U.S.C. § 4 ..........3, 4, 8

**State Statutes**

Cal. Penal Code § 631 ..........3

Cal. Penal Code § 638.51 ..........3

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Sal Munoz ("Munoz" or "Plaintiff"), along with one other named plaintiff, filed a putative class action lawsuit against Defendant GoFundMe, Inc. ("GoFundMe" or "Defendant") asserting violations of various wiretapping statutes stemming from an alleged interaction on an ***unspecified date*** during the last four years with the GoFundMe website's cookie banner. (www.gofundme.com, the "Website"). As outlined in GoFundMe's concurrently filed Motion to Dismiss, these claims lack merit and should be dismissed.

Independently and dispositively, Munoz previously agreed to resolve any disputes with GoFundMe exclusively through individual, binding arbitration.[1] On March 2, 2017, Munoz created an account on GoFundMe's Website and, in doing so, explicitly agreed to GoFundMe's Terms of Service, dated January 5, 2017 (the "2017 Terms of Service"). The 2017 Terms of Service, and GoFundMe's current Terms of Service, dated October 31, 2025 (the "Current Terms of Service") include a binding arbitration provision (the "Arbitration Agreement") and a class action waiver, that clearly encompasses the dispute at issue. Accordingly, GoFundMe respectfully requests this Court compel Munoz to submit his alleged claims against GoFundMe to individual arbitration in accordance with the Arbitration Agreement.

## II. STATEMENT OF ISSUES TO BE DECIDED

1. Whether Plaintiff Munoz's claims should be compelled to individual arbitration.

## III. BACKGROUND

GoFundMe is a leader in publicly accessible online fundraising and allows individuals to raise money for and donate to a variety of causes. GoFundMe also allows users to share fundraising campaigns to reach potential donors and to browse and donate to various campaigns directly through its Website.

\\

[1] With respect to the other named plaintiff, Shirley VanAsch, GoFundMe cannot presently determine, based on the information available to it at the time of this filing, whether she assented to GoFundMe's Terms of Service. GoFundMe reserves the right to compel plaintiff Shirley VanAsch's claims to arbitration if discovery reveals that she did in fact assent to GoFundMe's Terms of Service.

**A. <u>Munoz Agreed to GoFundMe's Terms of Service by Voluntarily Signing Up for An Account in 2017 on GoFundMe's Website.</u>**

Munoz created a free account on GoFundMe's free and publicly available Website on March 2, 2017. *See* Declaration of Matthew Murray ("Murray Decl."), ¶ 3. Although users are not required to create an account to use the GoFundMe Website, Munoz nevertheless voluntarily created an account. *Id.* ¶¶ 3-5. At that time, users could sign up for an account by clicking "Sign Up" and selecting one of two options: (1) "Use My Facebook Account" or (2) Use My Email Address. *Id.* ¶¶ 5-7. Munoz chose the "Use My Facebook Account" option and, in doing so, accepted GoFundMe's 2017 Terms of Service. As depicted below, the "Use My Facebook Account" button appeared directly above the statement: "By continuing, you agree with the GoFundMe **<u>terms</u>** and **<u>privacy policy</u>**." *Id.* The hyperlink to the 2017 Terms of Service was conspicuously <u>underlined and in 14-point pixels, a font used frequently on the GoFundMe Website</u>. *Id.* ¶ 5. The page contained no clutter or distracting text or images, and the Terms of Service notice appeared immediately beneath the sign-up buttons.






BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**B. <u>The Terms of Service Contain a Binding Arbitration Agreement</u>**

When a user clicks on the Terms of Service hyperlink, they are directly shown a complete copy of GoFundMe's Terms of Service. In March 2017, the first paragraph of the 2017 Terms of Service includes in bold green letters and hyperlinked, "**Dispute Resolution By Binding Arbitration**." Murray Decl., ¶ 8, Ex. B at 1. The 2017 Terms of Service further explained GoFundMe's dispute resolution procedures under the heading: "<u>Dispute Resolution by Binding Arbitration: PLEASE READ THIS SECTION CAREFULLY AS IT AFFECTS YOUR RIGHTS,</u>" which appeared in green, underlined, and capitalized text. That section stated, in all capital letters: "YOU AND GOFUNDME AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING." *Id.* ¶ 9, Ex. B at 11 (the "2017 Arbitration Agreement").

In March 2017, as well as today, the Arbitration Agreement is governed by the Federal Arbitration Act ("FAA"). *Id.* ¶ 11. By clicking "Use My Facebook Account," Munoz manifested his assent to be bound by GoFundMe's Terms of Service. Despite that binding Arbitration Agreement, on February 9, 2026, Munoz filed this putative class action against GoFundMe, alleging violations of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631 and 638.51, and common law fraud, deceit, and/or misrepresentation. *See* Dkt. No. 1.

**IV. <u>LEGAL STANDARD</u>**

Under the Federal Arbitration Act ("FAA"), binding arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce…shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court…for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The Supreme Court has stated that there is a federal policy favoring arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "[T]he federal policy is simply to ensure the enforceability, according to their terms, of private agreements to

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

arbitrate." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989). Courts are also directed to resolve any "ambiguities as to the scope of the arbitration clause itself ... in favor of arbitration." *Id.* at 475-76. Section Two of the FAA is described as reflecting a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H.*, 460 U.S. at 24; *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)).

When considering a motion to compel arbitration under the FAA, "a court must decide '(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute.'" *Chien v. Bumble Inc.*, 641 F. Supp. 3d 913, 932 (S.D. Cal. 2022) (quoting *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)). If both elements are satisfied, a court must compel arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."). Under California law, the party seeking to compel arbitration must prove the existence of an agreement to arbitrate by a preponderance of the evidence. *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).

## V. ARGUMENT

### A. An Enforceable Arbitration Agreement Exists.

In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation. *See Regan v. Pinger, Inc.*, No. 20-CV-02221-LHK, 2021 WL 706465, at *4 (N.D. Cal. Feb. 23, 2021) (Koh, J.) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Here, GoFundMe's Terms of Service designate California law as governing both in March 2017 and today. *See* Murray Decl., ¶ 11. Under California law, contract formation requires mutual assent. *HM DG, Inc. v. Amini*, 219 Cal. App. 4th 1100, 1109 (2013). That requirement applies equally to contracts formed online because "[t]he internet has not fundamentally changed the requirement that mutual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract." *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 483 (9th Cir. 2020) (int. quot. omitted). A reasonably prudent

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

internet user assents to an arbitration agreement on a website if: "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (int. cit. omitted).

In California, courts recognize three types of internet contracts: (1) a browsewrap agreement, where "an internet user accepts a website's terms of use merely by browsing the site," (2) a clickwrap agreement, which "requires users to click on an 'I agree' box after being presented with a list of terms and conditions of use," and (3) a sign-in wrap in which a website "notifies the user of the existence of the website's terms of use and, instead of providing an 'I agree' button, advises the user that he or she is agreeing to the terms of service when registering or signing up." *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024) (in a sign-in wrap agreement, "users are required to advance through a sign-in screen which states 'By tapping 'Play,' I agree to the Terms of Service"); *see also Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 585 (N.D. Cal. 2020) (Tigar, J.) (int. cit. and quot. omitted) (cleaned up). Under California law, a sign-in wrap agreement may be an enforceable contract based on inquiry notice if "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Keebaugh*, 100 F.4th at 1014 (int. cit. and quot. omitted); *see also Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023) (enforcing arbitration agreement through a sign-in wrap agreement).

The agreement between Munoz and GoFundMe clearly qualifies as a sign-in wrap agreement. The screen attached in paragraph 6 to the Murray Declaration was the operative sign-up screen on GoFundMe's Website in March 2017. Murray Decl., ¶ 6; *see also Oberstein*, 60 F.4th at 517 (constructive notice may be found "as a matter of law" based on defendant's screenshots of its sign-in wrap agreement); *see also Regan*, 2021 WL 706465, at *1 (where design of sign-in screen changed over time and Plaintiff did not allege when he created his first account, court relied on defendant's declarant attestations as to which screen Plaintiff saw); *Zaimi v. Neiman Marcus Grp.,*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*LLC*, No. 2:22-CV-02972 AB (SKX), 2022 WL 19569536, at *2 (C.D. Cal. Aug. 31, 2022) (relying on defendant's declaration to establish the sign-in screen plaintiff viewed and denying plaintiff's request for discovery based on claim that he did not see the terms of use).

As outlined below, when Munoz created an account, he was presented with a basic and clear screen with an option to "Use My Facebook Account" or "Use My Email Address" with the explicit understanding that "[b]y continuing, you agree with the GoFundMe **terms** and **privacy policy**." Murray Decl., ¶ 6. By creating an account with GoFundMe, Munoz received reasonably conspicuous notice of the 2017 Terms of Service and manifested his assent by clicking a button. Accordingly, Munoz assented to the Arbitration Agreement through an enforceable sign-in wrap agreement.

*1. GoFundMe Provided Reasonably Conspicuous Notice of the Arbitration Agreement.*

To qualify as conspicuous, "a notice must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Oberstein*, 60 F.4th at 515 (quoting *Berman*, 30 F.4th at 856). Courts also require that important contractual provisions appear "prominently displayed, not buried in fine print." *Berman*, 30 F.4th at 857. In *Oberstein*, the Ninth Circuit held that online users received conspicuous notice because the hyperlink to the "Terms of Use" appeared in "bright blue font," which "distinguish[ed] it from the surrounding text" and made "its presence readily apparent." *Oberstein*, 60 F.4th at 515-16 (affirming lower court's ruling in compelling arbitration); *see also Dohrmann*, 823 F. App'x at 484 (finding conspicuous notice where warning language and hyperlink to the Terms of Use were "the only text on the webpage in italics, were located directly below the sign-in button, and the sign-in page was relatively uncluttered").

The court reached the same conclusion in *Ghazizadeh v. Coursera, Inc.*, granting a motion to compel arbitration based on a user interface that is substantially similar to GoFundMe's March 2017 interface. There, users could "Sign Up with Facebook" or manually enter their information and expressly manifested assent through the statement, "[b]y creating an account, I accept Coursera's Terms of Service and Honor Code." 737 F. Supp. 3d 911, 924 (N.D. Cal. 2024) (Davila,



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

J.) (compelling arbitration of VPPA claim, finding notice was conspicuous where the sign-in screen was uncluttered and the hyperlinked terms were bolded, even though they were not underlined, presented in all capital letters, or in blue font). A side-by-side comparison of the interface in *Ghazizadeh* (left) and GoFundMe (right) appears below.







*See Ghazizadeh*, 737 F. Supp. 3d at 922; *see also* Murray Decl., ¶ 6.

Courts routinely find sign-in wrap agreements similar to GoFundMe's provide conspicuous notice. *See, e.g.*, *Keebaugh*, 100 F.4th at 1014 (compelling arbitration, finding notice was conspicuous despite no underlined hyperlink to the terms of service); *DoorDash, Inc.*, 445 F. Supp. 3d at 586 (compelling arbitration, finding notice was conspicuous where it was "wholly visible" and the sign-on screen was uncluttered, even though it used gray-on-gray font and did not capitalize or underline the hyperlink because it was "plainly readable"); *Nevarez v. Forty Niners Football Co., LLC*, 2017 WL 3492110, at *7 (N.D. Cal. Aug. 15, 2017) (Koh, J.) (compelling arbitration, finding notice was conspicuous where it was written in black bold text against a white background with the terms of use hyperlinked); *Pizarro v. QuinStreet, Inc.*, 2022 WL 3357838, at *3 (N.D. Cal. Aug. 15, 2022) (Chesney, J.) (compelling arbitration, finding notice was conspicuous where the hyperlink was underlined on a white background and appeared on a "relatively uncluttered" screen with underlining and no bolding of the terms of use).

Just like in *Ghazizadeh*, *DoorDash, Inc.*, *Nevarez*, and *Pizarro*, GoFundMe's website provided its users (including Munoz) with conspicuous notice of its Terms of Service—which included the Arbitration Agreement. The hyperlink to the Terms of Service appeared underlined, was visually distinct from the surrounding text and displayed on an uncluttered webpage directly beneath the "Use My Facebook Account" button. *See* Murray Decl., ¶ 6.

*2. Munoz Unambiguously Manifested His Assent.*

On March 2, 2017, Munoz created a GoFundMe account by clicking "Use My Facebook Account," *after* he was explicitly advised of the legal significance of proceeding, thereby providing "an unambiguous manifestation of assent" to the 2017 Terms of Service. *See* Murray Decl., ¶¶ 3, 5; *see also Oberstein*, 60 F.4th at 515; *Berman*, 30 F.4th at 858 (holding that the notice "must explicitly notify a user of the legal significance of the action [they] must take to enter into a contractual agreement" such as including language: "By clicking Continue [] button, you agree to the Terms & Conditions"). Courts routinely enforce agreements formed in this manner, even where the user does not check a separate box to indicate assent. "continuing past this page" (i.e., placing an order) would indicate assent to the terms. *Lee v. Ticketmaster L.L.C.*, No. 18-CV-05987-VC, 2019 WL 9096442, at *1 (N.D. Cal. Apr. 1, 2019) (Chhabria, J.), *aff'd*, 817 F. App'x 393 (9th Cir. 2020) (compelling arbitration where plaintiff was not required to check a separate box to indicate his assent, and instead "informed the user that 'continuing past this page' (i.e., placing an order) would indicate assent to the terms. Courts also enforce assent despite minor variations in wording where the disclosure appears immediately adjacent to the action button. *See Ghazizadeh*, 737 F. Supp. 3d at 930 (compelling arbitration, finding manifesting assent and no discrepancy in the meaning of "sign up" and "creating an account"); *see also Regan*, 2021 WL 706465, at *8 (same).

Here, Munoz manifested clear and unambiguous assent because the sign-up screen stated directly beneath the "Use My Facebook Account" button that, "[b]y continuing, you agree to the GoFundMe terms and privacy policy." Clicking that button therefore constituted an unmistakable agreement to GoFundMe's Terms of Service, including the Arbitration Agreement.

**B. Munoz's Claims Are Within the Scope of the Arbitration Agreement.**

Under the FAA, "'as a matter of federal law, any doubts concerning the scope of arbitrable



BAKER & HOSTETLER LLP ATTORNEYS AT LAW LOS ANGELES

issues should be resolved in favor of arbitration.'" *See Rossi v. Purvis*, 713 F. Supp. 3d 603, 613 (N.D. Cal. 2024) (Pitts, J.) (quoting *Benson v. Casa de Capri Enterprises, LLC*, 980 F.3d 1328, 1330–31 (9th Cir. 2020); *see also Moses H.*, 460 U.S. at 24-25. Courts recognize clauses encompassing "[a]ny dispute, controversy or claim arising out of or relating to" the agreement that are "broad and far reaching," *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) and "routinely used ... to secure the broadest possible arbitration coverage." *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 745 (9th Cir. 1993).

GoFundMe's Arbitration Agreement in its current Terms of Service uses precisely this type of broad and far-reaching language:

> YOU AND GOFUNDME AGREE THAT ***ANY DISPUTE ARISING OUT OF OR RELATED TO THIS AGREEMENT*** OR OUR SERVICES IS PERSONAL TO YOU AND GOFUNDME. ***YOU AND GOFUNDME AGREE THAT ANY DISPUTE, CLAIM OR CONTROVERSY MUST BE ARBITRATED ON AN INDIVIDUAL BASIS*** AND NOT ON A CLASS OR COLLECTIVE BASIS AND NOT IN A COURT OF LAW. YOU AND WE HEREBY EXPRESSLY WAIVE ANY RIGHTS TO SUE IN COURT AND RECEIVE A TRIAL BY JUDGE OR JURY OR TO PARTICIPATE AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS ACTION OR REPRESENTATIVE PROCEEDING.

*See* Murray Decl., ¶¶ 10-11, Ex. C at 27 (emph. added). Munoz's CIPA and wiretapping claims against GoFundMe clearly arise out of his relationship with GoFundMe, and his use of the Website, and thus fall squarely within the broad scope of the Arbitration Agreement. *See Sarhadi v. Pear Health Labs, Inc.*, No. 24-CV-07921-TLT, 2025 WL 1350033, at *2 (N.D. Cal. Apr. 18, 2025), *reconsideration denied*, No. 24-CV-07921-TLT, 2025 WL 4644296 (N.D. Cal. July 11, 2025) (Thompson, J.) (compelling CIPA claim to arbitration with agreement to arbitrate claims "whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory…"); *see also Garcia v. Dell, Inc.*, 905 F. Supp. 2d 1174, 1176 (S.D. Cal. 2012) (compelling invasion of privacy claim to arbitration with agreement to arbitrate claims "whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity ...").

Further, his claims arise in the context of a purported class action in which no class has been certified—and may never be certified. As a result, the arbitrator, not the Court, must decide

all of Munoz's claims against GoFundMe. Courts have repeatedly compelled arbitration under materially identical language requiring arbitration of "claims that are currently the subject of purported class action litigation in which you are not a member of a certified class." *In re Apple & AT & T iPad Unlimited Data Plan Litig.*, No. C-10-02553 RMW, 2011 WL 2886407, at *2 (N.D. Cal. July 19, 2011) (Whyte, J.); *see also, e.g.*, *Blau v. AT & T Mobility*, No. C 11-00541 CRB, 2012 WL 566565, at *1-3 (N.D. Cal. Feb. 21, 2012) (Breyer, J.) (same). Courts likewise enforce arbitration provisions covering any visit to a website, regardless of whether the user completed a transaction. *See DeVries v. Experian Info. Sols., Inc.*, No. 16-CV-02953-WHO, 2017 WL 733096, at *2 (N.D. Cal. Feb. 24, 2017) (Orrick, J.).

Accordingly, ***all*** of Munoz's claims alleged in the class action complaint—including the CIPA and wiretapping claims—fall within the broad scope of GoFundMe's Arbitration Agreement, regardless of whether Munoz completed any transaction on the GoFundMe Website.

### C. <u>The Parties Delegated Any Issues Of Arbitrability To The Arbitrator.</u>

Once the Court determines that an arbitration agreement was formed, its analysis need not proceed further because the parties expressly delegated any issues of arbitrability to the arbitrator. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) ("parties may delegate threshold arbitrability questions to the arbitrator"); *see also Zaimi*, 2022 WL 19569536, at *2 (whether arbitration clause covered plaintiff's claims was an issue the parties delegated to an arbitrator).

Here, GoFundMe's Arbitration Agreement delegates arbitrability issues by expressly incorporating the rules of the American Arbitration Association ("AAA") into its Terms of Service. The Terms of Service incorporate the AAA Consumer Arbitration Rules. *See* Murray Decl., ¶ 13. The rules expressly empower the arbitrator (and not the court) to decide issues of arbitrability. *See id.* at Ex. D, R-7(a) (Consumer Arbitration Rules) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.")).

The Ninth Circuit has held that incorporation of AAA rules constitutes "clear[] and unmistakabl[e]" evidence that the parties intended to delegate threshold arbitrability issues to the



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

arbitrator. *See Brennan*, 796 F.3d at 1130-32; *see also Galilea, LLC v. AGCS Marine Ins. Co.*, 879 F.3d 1052, 1061-62 (9th Cir. 2018) (agreement that stated the arbitration would be "conducted pursuant to the Rules of the American Arbitration Association" clearly and unmistakably indicated the parties' intent to submit arbitrability questions to an arbitrator). Courts in this district have routinely adopted and followed the Ninth Circuit's guidance on this issue. *See, e.g.*, *Zenelaj v. Handybook Inc.*, 82 F.Supp.3d 968, 971-74 (N.D. Cal. 2015) (Henderson, J.) ("regardless of their sophistication, the Court finds that the Parties in this case clearly and unmistakably delegated the question of arbitrability to the arbitrator when they expressly incorporated the AAA Rules into their Agreement"); *McLellan v. Fitbit, Inc.*, 2017 WL 4551484, at *2 (N.D. Cal. Oct. 11, 2017) (Donato, J.) ("[i]n our circuit, incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability,") (int. quot. omitted); *Zaimi*, 2022 WL 19569536, at *4 ("Here, the parties agreed that 'any arbitration under this agreement shall be conducted under the prevailing rules of the American Arbitration Association.' [] Like in *Brennan* and this Court's precedent, this is clear and unmistakable evidence that the parties intended to delegate arbitrability to the arbitrator.").

Accordingly, GoFundMe's incorporation of the AAA rules constitutes a separate, clear, and unmistakable delegation of all arbitrability issues to the arbitrator, and the Court should compel arbitration without reaching the merits of those threshold questions.

### D. <u>Munoz's Claims as to GoFundMe Should Be Dismissed or Stayed Pending Arbitration.</u>

Because Munoz is contractually obligated to arbitrate his claims against GoFundMe, the Court should compel arbitration and dismiss his claims against GoFundMe. In the alternative, if the Court declines to dismiss Munoz's claims against GoFundMe should be stayed pending completion of individual arbitration. Although the Federal Arbitration Act requires a stay where a party affirmatively requests one, GoFundMe seeks a stay only in the alternative and does not request it as its primary remedy. *See Smith v. Spizzirri*, 601 U.S. 472, 475 (2024); 9 U.S.C. § 3. Accordingly, dismissal of the claims against GoFundMe remains an appropriate and available remedy.

## VI. CONCLUSION

For all of the foregoing reasons, GoFundMe respectfully requests that the Court grant GoFundMe's Motion and compel Munoz's claims to individual arbitration.

Dated: April 29, 2026

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: */s/ Bethany G. Lukitsch*
Bethany G. Lukitsch
Kamran B. Ahmadian

*Attorneys for Defendants*
GOFUNDME, INC.