**BAKER & HOSTETLER LLP**
Bethany G. Lukitsch (SBN 314376)
*blukitsch@bakerlaw.com*
Kamran B. Ahmadian (SBN 314566)
*kahmadian@bakerlaw.com*
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067
Telephone: 310.820.8800
Facsimile: 310.820.8859

*Attorneys for Defendant*
GOFUNDME, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

SAL MUNOZ and SHIRLEY VANASCH, individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

GOFUNDME, INC.,

Defendant.

Case No.: 3:26-CV-01217-TLT

[*Assigned to Hon. Trina L. Thompson*]

**DEFENDANT GOFUNDME, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE CLASS ACTION COMPLAINT, AND MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

*[Filed Concurrently with Notice of Motion and Motion to Compel Arbitration; Declaration of Matthew Murray; Request for Judicial Notice; and [Proposed] Orders]*

**Date:** August 25, 2026
**Time:** 2:00 P.M.
**Dept.:** Courtroom 9, 19th Floor

**Action Filed:** February 9, 2026

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**TO THE HONORABLE COURT, TO PLAINTIFFS, AND THEIR COUNSELS OF RECORD HEREIN:**

**NOTICE IS HEREBY GIVEN** that on, August 25, 2026 at 2:00 p.m., or as soon thereafter as the matter may be heard, before the Honorable Trina L. Thompson, in Courtroom 9 of the above-entitled Court located on the 19th Floor of the Phillip Burton Federal Building, at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant GoFundMe, Inc. ("GoFundMe"), will and hereby does move to dismiss with prejudice the Class Action Complaint ("Complaint") of Plaintiffs Sal Munoz and Shirley VanAsch ("Plaintiffs") (the "Motion").

This Motion is made pursuant to Fed. R. Civ. P. 12(b)(1) because Plaintiffs fail to allege sufficient injury to confer Article III standing. Plaintiffs' Complaint should also be dismissed pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) as it fails to allege sufficient facts to plead: (1) invasion of privacy or intrusion upon seclusion; (2) a violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631(a); (3) a violation of CIPA, Cal. Penal Code § 638.51; (4) fraud, deceit and/or misrepresentation; and (5) unjust enrichment. GoFundMe further moves the Court for an order pursuant to Fed. R. Civ. P. 12(f) striking Plaintiffs' class definition because it is facially overbroad and the proposed class can never satisfy Rule 23.

This Motion is based on this Notice, the Memorandum of Points and Authorities, the declaration of Matthew Murray, Request for Judicial Notice, all pleadings, papers and records on file in this Action, and such other oral argument and documentary evidence as may be presented at or before the time of adjudication of this Motion.

Dated: April 29, 2026 Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: */s/ Bethany G. Lukitsch*
Bethany G. Lukitsch
Kamran B. Ahmadian

*Attorneys for Defendant*
GOFUNDME, INC.

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ....................................................................................................- 1 -

II. STATEMENT OF ISSUES TO BE DECIDED ......................................................- 2 -

III. FACTUAL BACKGROUND .................................................................................- 2 -

A. GoFundMe Lawfully Uses Third-Party Cookies and Sufficiently Notifies Visitors About its Privacy Practices ........................................................- 2 -

B. Plaintiffs' Allegations About Their Own Experiences Lack Basic and Necessary Facts ........................................................................................- 4 -

IV. LEGAL STANDARD ............................................................................................- 5 -

V. LEGAL ARGUMENT ............................................................................................- 6 -

A. Plaintiffs Fail to Allege Concrete Injury Sufficient to Establish Article III Standing ........................................................................................- 6 -

1. Plaintiffs Have Not Alleged a Concrete Privacy Injury. ........................- 6 -

2. Plaintiffs Have Not Alleged a Loss of Value or Control Injury. ..........- 10 -

B. Plaintiffs' Claims Fail to Meet the Heightened Pleading Standard of Rule 9(b) ........................................................................................- 11 -

C. Plaintiffs' Privacy Claims Are Untimely ..................................................- 13 -

D. Plaintiffs' Common Law Privacy Claims Fail (Counts I and II) ....................- 13 -

1. Plaintiffs Cannot Allege Any Reasonable Expectation of Privacy. ......- 14 -

2. Nothing GoFundMe Did Was "Highly Offensive." ...........................- 15 -

E. Plaintiffs' CIPA Claims Fail (Count III and IV) .......................................- 16 -

1. Plaintiffs' CIPA §631(a) Wiretapping Claim Fails. ............................- 16 -

2. Plaintiffs' CIPA Section 638.51 Pen Register Claim Fails. .................- 20 -

F. Plaintiffs' Common-Law Fraud/Misrepresentation Claim Fails (Count V) .....- 22 -

G. Plaintiffs' Unjust Enrichment Claim Fails (Count VI) ..................................- 23 -

H. Plaintiffs' Class Allegations Should Be Stricken ...........................................- 23 -

VI. CONCLUSION ......................................................................................................- 24 -


BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 6, 23

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ........ 23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 6, 23

*Boris v. Wal-Mart Stores, Inc.*,
35 F. Supp. 3d 1163 (C.D. Cal. 2014) ........ 12, 13

*Brazil v. Dell Inc.*,
585 F. Supp. 2d 1158 (N.D. Cal. 2008) ........ 23

*Brodsky v. Apple, Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) (Koh, J) ........ 13, 17, 18

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........ 13

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ........ 7

*California Crane Sch., Inc. v. Google LLC*,
722 F. Supp. 3d 1026 (N.D. Cal. 2024) ........ 23

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 ........ 19

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) ........ 14

*Davis v. Facebook, Inc.*,
956 F.3d 589 (9th Cir. 2020) ........ 8, 13

*Day v. City of Fontana*,
25 Cal. 4th 268 (2011) ........ 20

*de Ayora v. Inspire Brands, Inc.*,
2025 WL 3707561 (N.D. Cal. Dec. 22, 2025) ........ 11

*Diaz et al. v. Paramount Skydance Corp. et al.*,
2026 WL 1090958 (C.D. Cal. Apr. 20, 2026) .................... 9

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (Chhabria, J.) .................... 16

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) .................... 19

*Engalla v. Permanente Med. Grp.*,
15 Cal. 4th 951 (1997) .................... 22

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) .................... 22

*Ferry v. DF Growth REIT*,
2024 WL 5011949 (S.D. Cal. Dec. 6, 2024) .................... 5

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) .................... 10

*General Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) .................... 23

*In re Gilead Sciences Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) .................... 6

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) .................... 14

*Gutierrez v. Converse Inc.*,
2025 WL 1895315 (9th Cir. July 9, 2025) .................... 16

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .................... 13, 15

*Hart v. TWC Prod. & Tech. LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021) .................... 11

*Heeger v. Facebook, Inc.*,
2019 WL 7282477 (N.D. Cal. Dec. 27, 2019) .................... 15

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) .................... 19

*Hoey v. Sony Elecs. Inc.*,
515 F. Supp. 2d 1099 (N.D. Cal. 2007) .................... 23

*Hooked Media Grp. v. Apple Inc.*,
55 Cal. App. 5th 323 (2020) .................... 23

*Hospevian v. Apple, Inc.*,
2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) .......... 23

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) .......... 10

*Hughes v. Vivint, Inc.*,
2024 WL 5179916 (C.D. Cal. July 12, 2024) .......... 9

*Huynh v. Jabil Inc.*,
2023 WL 1802417 (N.D. Cal. Feb. 7, 2023) .......... 24

*In re Meta Pixel Tax Filing Cases*,
793 F. Supp. 3d 1147 (N.D. Cal. 2025) .......... 20

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 15

*In re USA Today Co., Inc. Internet Tracking Litigation*,
2026 WL 932655 (N.D. Cal. Apr. 6, 2026) .......... 9

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......... 14

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 14, 18

*Jones v. Peloton Interactive, Inc.*,
720 F. Supp. 3d 940 (S.D. Cal. 2024) .......... 14, 15

*Jones v. Tonal Sys., Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024) .......... 17

*Joseph v. J.J. Mac Intyre Cos., LLC*,
238 F. Supp. 2d 1158 (N.D. Cal. 2002) .......... 11

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .......... 12

*Khamooshi v. Politico LLC*,
2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) .......... 9

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) .......... 9

*Kline v. Iovate Health Sciences*,
2017 WL 1135580 (S.D. Cal. Mar. 27, 2017) .......... 13

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .......... 17

*Lau v. Gen Digit. Inc.*,
2024 WL 1880161 (N.D. Cal. Apr. 3, 2024) .................................................................... 17

*Lightoller v. Jetblue Airways Corp.*,
2023 WL 3963823 (S.D. Cal. June 12, 2023) ................................................................... 7

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ......................................................... 10, 13, 14

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......................................................................................................... 5

*Maghoney v. Dotdash Meredith, Inc.*,
2026 WL 497402 (S.D. Cal. Feb. 23, 2026) ........................................................... 10, 14

*Marich v. MGM/UA Telecomm, Inc.*,
113 Cal. App. 4th 415 (2003) .......................................................................................... 11

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ................................................................. 16

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) .......................................................................................... 11

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) ..................................................................... 18, 19

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) ................................................................................ 9

*Pirozzi v. Apple Inc.*,
913 F. Supp. 2d 840 (N.D. Cal. 2012) .............................................................................. 12

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ..................................................................................... *passim*

*R.D. Reeder Lathing Co. v. Cypress Ins. Co.*,
3 Cal. App. 3d 995 (1970) ................................................................................................ 11

*Rice-Sherman v. Big Heart Pet Brands, Inc.*,
2020 WL 1245130 (N.D. Cal. Mar. 16, 2020) .................................................................. 24

*Rodriguez v. Autotrader.com, Inc.*,
762 F.Supp.3d 921 (C.D. Cal. 2025) ................................................................................. 10

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. 2022) ................................................................................... 17

*Rodriguez v. Ink America Int'l Grp. LLC*,
2025 WL 4034985 (Cal. Super. Dec. 10, 2025) ................................................................ 21

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Rojas-Lozano v. Google, Inc.*,
159 F. Supp. 3d 1101 (N.D. Cal. 2016) ........ 23

*Rosenow v. Facebook, Inc.*,
2020 WL 1984062 (S.D. Cal. 2020) ........ 17

*Ruiz v. Gap, Inc.*,
540 F. Supp. 2d 1121 (N.D. Cal. 2008) ........ 15

*Sanders v. Apple Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009) ........ 23

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025) ........ 11

*Silvia Garcia v. Blackhawk Network, Inc.*,
2026 WL 925028 (C.D. Cal. Apr. 1, 2026) ........ 8

*Skidgel v. Cal. Unemp. Ins. Appeals Bd.*,
12 Cal. 5th 1 (2021) ........ 20

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ........ 19

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........ 5, 6

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ........ 6

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 6

*U.S. v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ........ 22

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F.Supp.3d 751 (N.D. Cal. 2023) ........ 16

*Vess Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ........ 12

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........ 17

*Wiley v. Universal Music Grp., Inc.*,
2025 WL 3654085 (N.D. Cal. Dec. 17, 2025) ........ 18, 21, 22

*Williams v. Facebook, Inc.*,
498 F. Supp. 3d 1189 (N.D. Cal. 2019) ........ 12

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .......... 16

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
62 F.4th 517 (9th Cir. 2023) .......... 7

*Wooten v. BioLife Plasma Servs. L.P.*,
807 F. Supp. 3d 1139 (E.D. Cal. 2025) .......... 9

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 18

**Statutes**

Cal. Civ. Proc. Code § 335.1 .......... 13

Cal. Civ. Proc. Code § 340 .......... 13

Cal. Pen. Code § 631(a) .......... *passim*

Cal. Pen. Code § 632.01 .......... 21

Cal. Pen. Code § 637.2(a) .......... 11

Cal. Pen. Code § 638.50(b) .......... 20, 22

Cal. Pen. Code § 638.51(a) .......... 20

Fed. R. Civ. P. 12(b) .......... 2, 5, 12

Fed. R. Civ. P. 9(b) .......... 11,12, 13, 23

Fed. R. Civ. P. 12(f) .......... 2, 22

**Other Authorities**

California Assembly Bill No. 929 .......... 20

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case is the latest in a series of lawsuits filed by the same firm whose clients test the functionality of companies' voluntary "cookie banners" and then assert boilerplate allegations claiming that the firing of any allegedly unwanted cookies amounts to "egregious privacy violations." Despite its length, the Complaint is strikingly devoid of concrete facts. Plaintiffs Sal Munoz and Shirley VanAsch ("Plaintiffs") allege little more than that they visited and browsed Defendant GoFundMe, Inc.'s ("GoFundMe") publicly available website at some unspecified date in the last four years (www.gofundme.com, the "Website"). They do not allege even the most basic facts about their interactions with the Website—such as *when* they visited, *which* pages they viewed, or *what* (if any) user content they input into the Website when they visited. Critically, the Complaint omits any facts regarding the devices or browsers Plaintiffs used, their cookie or privacy settings, whether any cookies were actually installed or triggered ***after*** they made their selections, or what "personal information" or "private communications" were supposedly transmitted. And although Plaintiffs include screenshots of an ***undated*** (and ***outdated***) cookie banner on GoFundMe's Website—which conspicuously links to the full Privacy Notice—they fail to identify a single statement in either that is "false or misleading." These omissions are fatal under any federal pleading standard.

The same pleading failures preclude Plaintiffs from establishing a concrete injury, which is required both for Article III standing and as an essential element of each claim. Under controlling Ninth Circuit precedent, including *Popa v. Microsoft Corp.*, Plaintiffs cannot establish a concrete privacy injury absent, at minimum, allegations that the information collected was "embarrassing, invasive, or otherwise private"—allegations that are entirely absent from the Complaint. Plaintiffs' conclusory assertions of "loss of control" or diminished value of their information likewise fail because they plead no facts showing they shared any information of value with GoFundMe, let alone any economic harm or the loss of any such information with cognizable value.

Even if Plaintiffs could establish standing, their substantive claims fail as a matter of law. Because the gravamen of the Complaint is that GoFundMe made false representations, Plaintiffs

were required—but failed—to plead their claims with the heightened specificity mandated by Rule 9(b). Their common-law privacy claims falter because Plaintiffs cannot plausibly allege a reasonable expectation of privacy in routine website browsing data or conduct that is "highly offensive." Plaintiffs' California Invasion of Privacy Act ("CIPA") wiretapping claims fail because Plaintiffs do not allege the interception of the contents of any communications, let alone a contemporaneous interception "in transit," as the statute requires. Their CIPA pen register claims are equally deficient because even if cookies could qualify as pen register devices, Plaintiffs fail to identify the specific dialing, routing, addressing, or signaling information for outgoing communications from their devices that was purportedly tracked. And because Plaintiffs fail to plead any actionable misrepresentation, their fraud-based and unjust enrichment claims necessarily collapse as well. For all of these reasons, the Complaint should be dismissed in its entirety, with prejudice.

Lastly, to the extent the Complaint is not dismissed in its entirety, Plaintiffs' facially overbroad class allegations should be dismissed or stricken.

## II. STATEMENT OF ISSUES TO BE DECIDED

1. Do Plaintiffs allege an injury-in-fact to establish Article III or statutory standing?
2. Do Plaintiffs satisfy Rule 9(b) for each of their claims, all of which sound in fraud?
3. Do Plaintiffs plausibly allege each cause of action against GoFundMe?
4. Should Plaintiffs' class allegations be dismissed or stricken, under Rule 12(b)(6) or Rule 12(f)?

## III. FACTUAL BACKGROUND

### A. GoFundMe Lawfully Uses Third-Party Cookies and Sufficiently Notifies Visitors About its Privacy Practices

GoFundMe is a leader in publicly accessible online fundraising and allows individuals to raise money for and donate to a variety of causes. To support this noble initiative, GoFundMe operates a free, public Website for users to browse various fundraising campaigns. Compl. ¶¶ 1, 79, 88. Plaintiffs do not allege that they attempted to donate to a fundraising campaign, start a fundraiser, or that they entered ***any*** information on the public Website. *Id.* ¶¶ 79, 88.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Like virtually all companies, GoFundMe embeds first- and third-party code for analytics, website functionality and security, advertising, and marketing purposes on its Website. *Id.* ¶¶ 5, 18. This code may deploy additional small text files of code, referred to as "cookies," that website servers can cause to be placed on an Internet user's browser. Cookies can perform a variety of functions such as helping websites operate effectively and website owners to personalize advertisements. Internet browsers (i.e., Chrome, Edge, Safari) and certain privacy-focused add-ons (like uBlock Origin or "Incognito Mode") contain settings that users can set to *automatically reject or accept* all or only certain cookies, and also to *automatically delete* the browser's cookie cache at the end of the browsing session, daily, weekly, monthly (or whenever the system is rebooted), or on demand by the user. And cookies, including the cookies in Plaintiffs' Complaint, themselves have an expiration date which varies between when a user ends their browsing session to years.

***While not required under any U.S. law***, in an effort to be transparent and provide consumers with an easier and less burdensome method to opt out of the collection of information by certain third-party technology deployed on its site, GoFundMe deploys a cookie management tool including a "cookie banner" pop-up notification on its Website, that provides visitors with a direct link to GoFundMe's comprehensive Privacy Notice, and includes certain selections for visitors to manage their choices.[1]

The Complaint contains unverified, undated screenshots of the Website cookie banner. *Id.* ¶¶ 1, 27. Plaintiffs do not allege they took these screenshots; instead, they were taken at an unknown date and time, by an unidentified user. *Id.* As depicted, the Website cookie banner conspicuously links GoFundMe's Privacy Notice. *Id.* Users can customize their cookie preferences or "Reject all" to decline further tracking action. *Id.* Nowhere on the banner does GoFundMe state that it will not (or has not) place cookies on a visitor's device, or that GoFundMe

[1] California law does not prohibit companies from placing third-party technology on their websites or prohibit the placement of a cookie by the third-party technology. Rather, California law only provides that a company must give consumers the ability to *opt out* of the collection of data by that third-party technology if it is "sold" or used for the purpose of cross-context behavioral advertising, as defined by the California Consumer Privacy Act. GoFundMe's "cookie banner" and its content has changed over time.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

will delete any cookies already placed on a visitor's device. And nowhere on the banner does GoFundMe state that a visitor can decline other categories of cookies, such as essential cookies.

As Plaintiffs do not specify ***when*** they visited the Website, or whether they viewed GoFundMe's Privacy Notice, the latest version of the Privacy Notice, effective November 21, 2025 conspicuously linked in the cookie banner informing visitors that GoFundMe uses cookies on its Website, informs them of the categories of information GoFundMe may collect, how it is collected, how it may be shared, and how it may be used. It also generally educates visitors about cookies, stating, in part:

> Please review the "Online Analytics and Targeted Advertising" section below as well as our Cookie Policy for information on the types of cookies and similar technologies that we or our vendors use on the Services, like on our websites and mobile apps, how we use these technologies, and how you can manage your Cookie and mobile privacy preferences.
>
> Some web and mobile device browsers may accept cookies by default. If you prefer, you can usually change your browser to prevent that or to notify you each time a new cookie is set. You can turn off non-essential cookies, but some or all of our Services may not work as intended. Essential cookies cannot be turned off because they ensure the site works as it should.
>
> As to the information in this "Information That is Passively or Automatically Collected" Section, GoFundMe either stores such information itself or such information is included in databases owned and maintained by GoFundMe, and/or its agents or vendors.

Request for Judicial Notice ("RJN"), Ex. E, GoFundMe Privacy Notice (Last Updated: November 21, 2025) (current version available at https://www.gofundme.com/c/privacy) (the "Privacy Notice").

The Complaint's various other screenshots allegedly depicting the transmission of third-party cookies after visiting the Website again, are not Plaintiffs' screenshots but purportedly demonstrate an unknown user using an unknown device and browser, with unknown device and browser settings, at an unknown time. *See generally* Compl. ¶¶ 33, 38, 46, 49, 52-53, 58.

### B. <u>Plaintiffs' Allegations About Their Own Experiences Lack Basic and Necessary Facts</u>

Plaintiffs Munoz's and VanAsch's sparse allegations and interactions with the Website are

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

virtually identical. They each allege they visited the Website "to seek and obtain information about GoFundMe's services and/or view certain fundraising campaigns … on one or more occasions during the last four years." *Id.* ¶¶ 79, 88. Plaintiffs do not provide screenshots of the cookie banners they saw during their personal visit(s) to the Website—which have changed over time. *Compare* banner depicted in Compl. ¶ 27 *with* Declaration of Matthew Murray ("Murray Decl."), ¶ 4, Ex. A. Other than alleging that they interacted with a cookie banner, Plaintiffs do not provide any relevant and necessary facts about their visits to the Website. *See* Compl. ¶¶ 79-80, 88-89. Plaintiffs ***do not allege***: (1) what pages they viewed; (2) whether they entered any content into the Website, such as their name, email, or other information; (3) whether they sent any messages or communications to GoFundMe during their Website visits; (4) what device(s) or browser(s) they used to visit the Website; and (5) whether they clicked or viewed the "Privacy Notice" conspicuously linked on the Website cookie banner. Significantly, Plaintiffs do not allege what cookies were allegedly placed or fired ***after*** they made their privacy selections on the Website, or what information (if any) was collected by which cookie. *Id.* ¶¶ 83-84, 92-93. In sum, Plaintiffs do not allege that they have suffered *any* harm whatsoever from any alleged misrepresentation, other than to say that they would not have visited the free Website or "would have interacted with the Website differently." *Id.* ¶¶ 86, 95. They provide no facts alleging any loss in value of any device or of their personal information.

## IV. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), the Court must dismiss any action that lacks subject matter jurisdiction. At the core of the Court's jurisdictional inquiry is Article III's standing requirement. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992). The "'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan*, 504 U.S. at 560-61). "'The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Id.* Where, as here, a case is "at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Ferry v. DF Growth REIT*, 2024 WL 5011949, at *3 (S.D. Cal. Dec. 6, 2024) (int. quot. omitted).

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that threadbare allegations and conclusory statements are insufficient to withstand scrutiny). Pleadings that contain "no more than conclusions … are not entitled to the assumption of truth" that would be otherwise applicable on a motion to dismiss. *Iqbal*, 556 U.S. at 679. Thus, the Court need not "'accept as true… allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

## V. <u>LEGAL ARGUMENT</u>

### A. <u>Plaintiffs Fail to Allege Concrete Injury Sufficient to Establish Article III Standing</u>

Despite the length of the Complaint, Plaintiffs fail to allege any facts demonstrating that they suffered a concrete injury to establish Article III standing. Instead, Plaintiffs vaguely and conclusively assert that they suffered harm based on a "violation of their right to privacy," as well as harm resulting from the loss of value and control over their private information, which was allegedly disseminated to third parties without their consent. *See, e.g.*, Compl. ¶ 144. As outlined below, these abstract allegations are not sufficient to establish Article III standing.

#### 1. <u>*Plaintiffs Have Not Alleged a Concrete Privacy Injury.*</u>

As courts have recognized, Plaintiffs must show they "suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423, 426 (2021) ("Article III standing requires a concrete injury even in the context of a statutory violation,") (quoting *Spokeo*, 578 U.S. at 341)); *see also Popa v. Microsoft Corp.*, 153 F.4th 784, 793 (9th Cir. 2025) (confirming *Spokeo* and *TransUnion* require "a plaintiff to demonstrate more than just a statutory violation when evaluating whether a plaintiff has alleged a concrete injury.").

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

A harm is "concrete" only if the injury bears a "close relationship" to a harm "traditionally" recognized as providing a basis for a lawsuit. *TransUnion*, 594 U.S. at 426. Naked assertions of harm that are "traditionally recognized as providing a basis for a lawsuit in American courts," is not enough. *Id.* at 417. Accordingly, to establish Article III standing, Plaintiffs must "identify the specific personal information" that "implicates a protectable privacy interest" that was then intercepted by or improperly disclosed to a third party. *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *1, 3 (C.D. Cal. Apr. 5, 2023) (finding lack of Article III standing where "[p]laintiff does not identify any personal or sensitive information she disclosed on the website"); *Popa*, 153 F.4th at 793; *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) ("Plaintiff has failed to adequately allege that she suffered any concrete harm that bears a close relationship to the right to control personal information, meaning Plaintiff has failed to establish an injury in fact.").

No such concrete injury exists here. Plaintiffs fail to allege ***any facts*** describing their visits to the Website—let alone facts showing they suffered any harm. They do not allege *when* they visited the Website, *what* pages they viewed, *how* they interacted with them, whether they input any information into a Website, or whether *their own* information was even collected by GoFundMe during those visits. And, Plaintiffs certainly failed to identify any sensitive or personal data, the disclosure of which could plausibly be considered "highly offensive to a reasonable person." This omission is dispositive. *See Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523 (9th Cir. 2023) ("[P]laintiffs must … show that they ***personally have been injured***.") (emph. added & int. quot. omitted); *Popa*, 153 F.4th at 791 (plaintiff lacked Article III standing because she failed to explain how the tracking of her pet store website interactions "caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law.").

The Ninth Circuit's decision in *Popa* is controlling. There, the plaintiff alleged the collection of more than thirty categories of information without his knowledge or consent, including "the date a user visited the website, the device the user accessed the website on, the type of browser the user accessed the website on, the operating system of the device used to access the website, the

country where the user accessed the website from, a user's mouse movements, a user's screen swipes, text inputted by the user on the website, and how far down a webpage a user scrolls." *Popa*, 153 F.4th at 786. To establish a cognizable injury, the plaintiff in *Popa* pointed to two asserted common-law analogues: intrusion upon seclusion and public disclosure of private facts. *Id.* at 791. The Ninth Circuit rejected both theories because the plaintiff could not identify any "embarrassing, invasive, or otherwise private information" that was allegedly collected. *Id.* The Ninth Circuit instead analogized the alleged data collection to a store clerk observing shoppers to determine which aisles attract the most traffic or to identify obstacles that interfere with potential sales. *Id.* The Ninth Circuit further contrasted the allegations made in *Popa* to those made in *Davis v. Facebook, Inc.*, 956 F.3d 589 (9th Cir. 2020), where the Ninth Circuit found a sufficiently pleaded privacy injury based on Facebook's alleged collection of "an enormous amount of individualized data" constituting an individual's "comprehensive browsing history" by collecting "URLs of third-party websites … ***operating outside of Facebook's platform***," including highly sensitive data about plaintiff's visits to sensitive or embarrassing websites. *Id.* at 603, 605 (emph. added).

This Complaint only contains vague, boilerplate allegations about Plaintiffs' visits to the Website without alleging any specific actions taken by Plaintiffs on the Website. Plaintiffs do not allege what of their ***own information*** such as browsing history, user input data, demographic information, or session information was transmitted from the Website to other third parties. *See generally*, Compl. Plaintiffs do not allege that they searched for a particular fundraising campaign, or that they attempted to donate or start a fundraiser. Indeed, Plaintiffs do not allege that they ***input any information into the Website*** during their visits. Instead, Plaintiffs heavily rely on broad generic allegations about how certain cookies—e.g., Google—allegedly function and what they might be *capable* of collecting in certain scenarios. *See id.* ¶¶ 41-63. But these speculative allegations about what certain technologies are "enabled" to do or "could" collect fall short of establishing what—if anything—was ***actually collected*** from Plaintiffs during their visits.

Courts routinely reject such vague and conclusory allegations, holding that far more detail than Plaintiffs provide in the Complaint is required to determine whether a protectable privacy interest has been alleged. *See Diaz et al. v. Paramount Skydance Corp. et al.*, No. EDCV 25-02945-

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

KK-DTBX, 2026 WL 1090958, at *4 (C.D. Cal. Apr. 20, 2026) ("Even accepting their allegations as true, Plaintiffs do not present any evidence that the disclosure of their Platform activity caused embarrassment, was invasive, or that the videos they watched were at all private.") (int. quot. omitted); *In re USA Today Co., Inc. Internet Tracking Litigation*, No. 24-CV-05150-MMC, 2026 WL 932655, at *3 (N.D. Cal. Apr. 6, 2026) (Chesney, J.) (dismissing CIPA claim for failure to plead a cognizable injury); *Silvia Garcia v. Blackhawk Network, Inc.*, 2026 WL 925028, at *5 (C.D. Cal. Apr. 1, 2026) ("Plaintiff has not made any allegations that the information collected, or its reach, would have been highly offensive).

As in *Popa*, Plaintiff identifies 'no embarrassing, invasive, or otherwise private information' that was shared,") (quoting *Popa*, 153 F.4th at 791); *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025) (Kim, M.J.) ("Plaintiffs [] allege that Defendant disclosed their 'browser and device data' and 'other identifying information' … but fail to provide any more detail. ***Those allegations are too vague to assert a protectable privacy interest***.") (emph. added); *Hughes v. Vivint, Inc.*, 2024 WL 5179916, at *4 (C.D. Cal. July 12, 2024) (finding no standing where plaintiff only alleged what information the software "could" potentially capture); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) ("Plaintiff's conclusory allegation that she disclosed 'personal information' does not allow the Court to determine whether Plaintiff has a protectable privacy interest in that information,") (int. cit. omitted).

Even if Plaintiffs could attribute their generic allegations about GoFundMe's data-collection practices to themselves—which they cannot—they still fail to allege that GoFundMe collected any private or sensitive information. Courts consistently hold that the routine collection of non-private, non-sensitive website data constitutes ordinary commercial conduct, not actionable under common law, and therefore cannot support a cognizable privacy injury. *See Khamooshi v. Politico LLC*, No. 24-CV-07836-SK, 2025 WL 2822879, at *1, 3 (N.D. Cal. Oct. 2, 2025) (Kim, M.J.) (relying on *Popa* in holding plaintiffs have failed to allege a concrete privacy injury sufficient to establish Article III standing); *Wooten v. BioLife Plasma Servs. L.P.,* 807 F. Supp. 3d 1139, 1145 (E.D. Cal. 2025) (granting motion to dismiss, finding no concrete injury for collection of "a one-time collection of their IP and email addresses" and no allegations of

"embarrassing, invasive, or otherwise private information") (int. quot. omitted); *Rodriguez v. Autotrader.com, Inc.*, 762 F.Supp.3d 921, 926-27 (C.D. Cal. 2025) ("Not all information will qualify; the information must be sufficiently personal or sensitive that its disclosure is harmful.") (int. cit. omitted). This interpretation of *Popa* also aligns with California law, which similarly treats routine commercial data practices as non-egregious. *See, e.g.*, *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011) ("Here, the supposed invasion of privacy essentially consisted of [Defendant] obtaining plaintiff's address without his knowledge or permission and using it to mail him coupons and other advertisements. ***This conduct is not an egregious breach of social norms, but routine commercial behavior***.") (emph. added).

2. *Plaintiffs Have Not Alleged a Loss of Value or Control Injury.*

While Plaintiffs summarily state they have suffered a diminution of value in their information, *see* Compl. ¶¶ 144, 163, courts have repeatedly held that plaintiffs must allege *how* they have suffered economic harm in order to establish a concrete injury. *See, e.g.*, *Maghoney v. Dotdash Meredith, Inc.*, No. 24-CV-2394-AJB-BJW, 2026 WL 497402, at *7 (S.D. Cal. Feb. 23, 2026) (holding plaintiff's allegations of that he was deprived over control of his information "does not have a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts.") (int. cit. omitted); *Hubbard v. Google LLC*, 2024 WL 3302066, at *9 (N.D. Cal. July 1, 2024) (Van Keulen, M.J.) (granting motion to dismiss and finding no injury alleged where plaintiffs did not allege facts explaining *how* defendant's collection and use of plaintiffs' information reduced the value of that information). Plaintiffs must plead what economic value the allegedly transmitted information held *to them* and how that value was lost through GoFundMe's alleged misconduct. *See, e.g.*, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1032 (N.D. Cal. 2012) (Koh, J.) ("[T]he Amended Complaint fails to allege how either Plaintiff was foreclosed from capitalizing on the value of his personal data.").

It is irrelevant that Plaintiffs allege GoFundMe *can* monetize the collected data and maximize revenue, as Plaintiffs do not claim *they* want (or have sought) to monetize their data. As this Court has previously recognized, "even if a company made money off of the sharing or use of a plaintiff's information, that company's gain of money does not equal a plaintiff's loss of money



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

or property." *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025) (Thompson, J.); *see also Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 603 (N.D. Cal. 2021) (Tigar, J.) ("That the information has external value, but no economic value to plaintiff, cannot serve to establish that plaintiff has personally lost money or property.") (int. quot. omitted). Indeed, the Complaint indicates that Plaintiffs had no interest in selling their data. In fact, they allege this information is so personal that they are somehow injured by third parties knowing it. [2]

In sum, because Plaintiffs have not alleged a concrete injury, they have failed to satisfy the injury in fact requirement for Article III standing. Without standing, this Court lacks subject matter jurisdiction and must dismiss the Complaint in its entirety. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("lack of *Article III* standing requires dismissal…").

### B. Plaintiffs' Claims Fail to Meet the Heightened Pleading Standard of Rule 9(b)

As Plaintiffs themselves make clear in the opening allegations, their claims arise from alleged "egregious violations of consumer privacy and breach of consumer trust in violation of California law," premised on purported false representations that GoFundMe allowed users to browse the Website without being tracked, followed, or targeted by third-party advertisers or data brokers—while allegedly disregarding users' expressed preferences. *See, e.g.*, Compl. ¶¶ 1-4, 27, 30. Because Plaintiffs allege a single, unified course of fraudulent conduct and rely entirely on that conduct to support every claim, all claims "sound in fraud" and are subject to Rule 9(b)'s heightened pleading requirements. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (the word "fraud" need not be used); *Vess Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003); *de Ayora v. Inspire Brands, Inc.*, No. 25-CV-03645-AGT, 2025 WL 3707561, at *3 (N.D. Cal. Dec. 22, 2025) (Tse, M.J.) (finding the entirety of a virtually identical cookie banner complaint to be subject to Rule 9(b) because the "alleged deception [] forms the backbone for all

[2] Plaintiffs' failure to allege a cognizable injury not only deprives this Court of subject matter jurisdiction but also defeats each of their claims—every one of which requires a showing of actual harm. *See Marich v. MGM/UA Telecomm, Inc.*, 113 Cal. App. 4th 415, 423 (2003) (an essential element of a claim for invasion of privacy is that "[t]he intrusion caused plaintiff to sustain injury, damage, loss or harm"); *Joseph v. J.J. Mac Intyre Cos., LLC*, 238 F. Supp. 2d 1158, 1169 (N.D. Cal. 2002) (Chen, M.J.) (same for intrusion upon seclusion claim); Cal. Penal Code § 637.2(a) (CIPA statutory standing requires plaintiff has been "injured by" a violation of CIPA); *R.D. Reeder Lathing Co. v. Cypress Ins. Co.*, 3 Cal. App. 3d 995, 999 (1970) (fraud plaintiff must show "he has sustained some pecuniary damage or injury" as a result of the fraud).



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

of Plaintiffs' claims, and therefore the Court finds that the nature of the averred conduct sounds in fraud."); *Williams v. Facebook, Inc.*, 498 F. Supp. 3d 1189, 1200–01 (N.D. Cal. 2019) (Seeborg, C.J.) (applying Rule 9(b) to misrepresentation-based claims including intrusion upon seclusion and invasion of privacy claims).

Plaintiffs fall far short of meeting this standard. Rule 9(b) requires them to plead with particularity the "who, what, when, where, and how" of the alleged misconduct. *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 744 (N.D. Cal. 2019) (Orrick, J.) (int. quot. omitted). Yet the Complaint includes virtually no allegations describing either of Plaintiff's actual experiences on the Website. Instead, it relies on a handful of undated screenshots purportedly obtained from an unidentified "Website user." *See* Compl. ¶¶ 25–36. That approach is legally insufficient to satisfy Rule 9(b)—or even Rule 12(b)(6)—because Plaintiffs never allege how *they themselves* were misled, defrauded, or harmed. *See Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 850 (N.D. Cal. 2012) (Rogers, J.) (dismissing fraud-based claims where plaintiff "fail[ed] to provide the particulars of ***her own experience***" reviewing or relying on misrepresentations) (emph. added).

Requiring specificity is particularly relevant and important here, where the content, and the nature of that content, is relevant not just to any standing inquiry but also to the plausibility of the underlying claims. Plaintiffs fail to specify ***when*** they visited the Website. Instead, the Complaint merely alleges that Plaintiffs accessed the Website at some point within the "past four years." *See* Compl. ¶ 79 (Munoz); ¶ 88 (VanAsch). These vague allegations are particularly problematic because GoFundMe's cookie banner, as well as the Website's underlying code, content, and features, have changed over time. Yet Plaintiffs offer only amorphous assertions about their purported visits, forcing GoFundMe to guess about facts central to their fraud-based claims, including ***when*** they visited the Website, which ***version of the cookie banner*** they encountered, ***what representations*** that banner made, ***which pages*** they viewed, ***what data*** (if any) they entered, ***what communications*** were allegedly intercepted, and ***what cookies***, if any, fired on their devices.

Without additional factual allegations about Plaintiffs' visits to the Website—information uniquely within Plaintiffs' possession—GoFundMe cannot meaningfully assess or respond to the claims. Because Plaintiffs fail to satisfy Rule 9(b), the Court should dismiss the Complaint. *See*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Boris v. Wal-Mart Stores, Inc.*, 35 F. Supp. 3d 1163, 1174–75 (C.D. Cal. 2014), *aff'd*, 649 F. App'x 424 (9th Cir. 2016).

**C. Plaintiffs' Privacy Claims Are Untimely**

Plaintiffs' CIPA, invasion of privacy, and intrusion upon seclusion claims are time barred. Both the invasion of privacy and intrusion upon seclusion claims have a two-year statute of limitations. *See Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1069 (N.D. Cal. 2021) (Koh, J.) (statutes of limitations for "intrusion upon seclusion and invasion of privacy claims is two years.") (citing Cal. Civ. Proc. Code § 335.1). And CIPA imposes an even shorter statute of limitations of one year, which begins to run at the time of the alleged collection. *See Brodsky v. Apple, Inc.*, 445 F. Supp. 3d 110, 134 (N.D. Cal. 2020) (Koh, J); Cal. Civ. Proc. Code § 340. As discussed above, Plaintiffs allege only that they visited the Website on "one or more occasions during the last four years." Compl. ¶¶ 79, 88. By failing to provide any specificity regarding the timing of these visits, Plaintiffs have alleged a set of facts where their claims are time-barred because they could have accrued earlier than three years before the filing of the Complaint. *See Kline v. Iovate Health Sciences*, No. 3:15-cv-02387, 2017 WL 1135580, at *3 (S.D. Cal. Mar. 27, 2017) (dismissing claims with three-year statute of limitations because allegations that plaintiff purchased products "within the last four years" established the claims "could be time barred"). At the very least, because their claim sounds in fraud, Rule 9(b) requires more certainty as to when the alleged incident occurred.

**D. Plaintiffs' Common Law Privacy Claims Fail (Counts I and II)**

Plaintiffs fail to state either an invasion of privacy or intrusion upon seclusion claim. When claims for invasion of privacy and intrusion upon seclusion are brought together on the same factual basis, courts conduct a combined inquiry because of the similarities in their analyses. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022) (Breyer, J.). To establish these common law privacy claims, Plaintiffs must sufficiently allege both that: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive. *Davis*, 956 F.3d at 601; *see also Popa*, 153 F.4th at 791. As courts have recognized, "[t]he California Constitution and the common law set a high bar for an invasion of privacy claim." *Low v. LinkedIn Corp.*, 900

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (Koh, J.); *see also In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014) (Koh, J.). Plaintiffs fail to meet either prong—and cannot do so—given the innocuous nature of the Website and their limited interactions.

1. *Plaintiffs Cannot Allege Any Reasonable Expectation of Privacy.*

As outlined above, Plaintiffs cannot establish they had a reasonable expectation of privacy given that they failed to allege that any of ***their own information*** was actually disclosed or collected during their visits. While Plaintiffs do allege that certain cookies were ***capable*** of collecting certain information, which they broadly define as "Private Communications," *see* Compl. ¶ 22, without any facts connecting the "Private Communications" to Plaintiffs, these generalized allegations are irrelevant. *See, e.g.*, *Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940, 950–51 (S.D. Cal. 2024) (granting motion to dismiss finding no legally protected privacy interest in the contents of internet-connected chats where plaintiff did not allege she shared sensitive and confidential information and instead vaguely alleged a chat could include private or sensitive information).

Courts have routinely held that website visitors have no reasonable expectation of privacy in the very type of information purportedly at issue in this Complaint, including browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data. Compl. ¶¶ 3, 22, 24; *see, e.g.*, *Popa*, 153 F.4th at 791 (rejecting claims that defendant's monitoring of a ***pet store website*** was "highly offensive" holding that it "seems most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales,"); *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108-09 (9th Cir. 2014) (finding no reasonable expectation of privacy in the descriptive URL of a website the plaintiff previously had visited or in basic identification information); *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 198 (N.D. Cal. 2019) (Davila, J.) (no reasonable expectation of privacy in their geolocation data); *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1206 (S.D. Cal. 2024) (no invasion of privacy for collection of user's account name, IP address, geographic location, and referral site URL); *Dotdash*, 2026 WL 497402, at *5 (no invasion of privacy for collection of user's personal health-related search queries on a health website).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Repeatedly referring to hypothetical collected information allegedly shared by Plaintiffs as "Private Communications" does not make it so, and Plaintiffs in any event fail to explain how merely visiting a public website would be private, or how any allegedly collected information constitutes a "communication" between Plaintiffs and GoFundMe. *See Heeger v. Facebook, Inc.*, 2019 WL 7282477, at *4 (N.D. Cal. Dec. 27, 2019) (Donato, J.) (dismissing privacy claim where plaintiff only made bare-boned and vague allegation that Facebook collected his "private" location data); *Jones*, 720 F. Supp. at 950–51.

2. *Nothing GoFundMe Did Was "Highly Offensive."*

As other courts in this district have recognized, "data collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy." *Hammerling*, 615 F. Supp. 3d at 1090 (finding plaintiffs failed to plead "highly offensive" invasion of privacy because Google's representation regarding data collection was at most ambiguous, and plaintiffs did not allege how Google could collect or collected private information); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (Koh, J.) ("*In re iPhone*") (dismissing privacy claim with prejudice because sharing data to third parties including "unique device identifier number, personal data, and geolocation information from Plaintiffs' Devices" was routine commercial behavior and not highly offensive). Plaintiffs cannot save their privacy claims by cloaking them in claimed fraud or allegedly false statements. *See, supra*, Section V(B); *see also Hammerling*, 615 F. Supp. 3d at 1090. And, electronic data collection and disclosure is no "egregious breach of social norms" ***"[e]ven assuming this information was transmitted without Plaintiffs' knowledge and consent*** . . . ." *In re iPhone*, 844 F. Supp. 2d at 1063 (emph. added).

The same result as in *In re iPhone*—dismissal with prejudice—is warranted here. In fact, courts have dismissed invasion of privacy claims (under both California's Constitution and common law) when far more sensitive data allegedly was collected and disclosed. *See, e.g.*, *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1128 (N.D. Cal. 2008) (Conti, J.), *aff'd*, 380 F. App'x 689 (9th Cir. 2010) (alleged disclosure of social security numbers "do[es] not constitute an egregious breach" of social norms).

### E. Plaintiffs' CIPA Claims Fail (Count III and IV)

#### 1. *Plaintiffs' CIPA §631(a) Wiretapping Claim Fails.*

California Penal Code section 631(a) prohibits a defendant from engaging in one of three activities: (1) "intentional wiretapping," (2) "willfully attempting to learn the contents or meaning of a communication in transit over a wire," or (3) using or "attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." Section 631(a) also includes a fourth basis for liability, for anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the other three bases for liability." Cal. Pen. Code § 631(a). And because CIPA is a penal statute, Plaintiffs must allege scienter. *See Doe I v. Google LLC*, 741 F. Supp. 3d 828, 844 (N.D. Cal. 2024) (Chhabria, J.) ("CIPA liability only extends to willful or intentional conduct."). Although the Complaint is not entirely clear, Plaintiffs appear to assert their CIPA wiretapping claim under the fourth aiding and abetting prong. *See* Compl. ¶ 138. To establish liability under this theory, Plaintiffs must first plausibly allege that a third party committed an underlying violation of one of the first three clauses of § 631(a). *See Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (Alsup, J.) (An aiding-and-abetting defendant's liability is "based entirely on whether [a third party] violated Section 631(a) in some way…"). Here, Plaintiffs fail to allege a predicate violation under Section 631(a).

***Clause 1:*** Plaintiffs cannot allege a predicate violation of the first clause of § 631(a) because it does not apply to online conduct. *See Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025) (affirming summary judgment where no evidence the defendant "made an unauthorized connection through a telephone wire"); *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F.Supp.3d 751, 755 (N.D. Cal. 2023) (Corley, J.) (first clause of "Section 631(a)'s plain text does not prohibit the non-telephonic conduct…"). While Plaintiffs cite cases in their Complaint purportedly applying Section 631(a) to "new technologies," *see* Compl. ¶ 190, these cases only apply to the ***second*** clause of § 631(a), not the first. *See, e.g.*, *Matera v. Google Inc.*, 2016 WL 8200619, at *18, 21 (N.D. Cal. Aug. 12, 2016) (Koh, J.).

***Clause 2***: The second clause of Section 631(a) is violated only where a third party "***reads,***



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

***or attempts to read, or to learn the contents*** or meaning of any ***message, report, or communication while the same is in transit***." *Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1032-33 (S.D. Cal. 2024) (emph. added); *see also Lau v. Gen Digit. Inc.*, 2024 WL 1880161, at *1 (N.D. Cal. Apr. 3, 2024) (Lin, J.) (wiretapping concerns "the unauthorized *interception* of *communications*, not any subsequent storage and/or use.") (emph. added). The contemporaneity requirement is a threshold issue in determining whether the second clause can be applied to a purported violation. *See Jones*, 751 F. Supp. 3d 1025, 1035-36. Put simply, the alleged third-party eavesdropper must: (1) read or learn the content of communications; (2) while it is *en route* to the intended recipient. *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). Plaintiffs fail to allege either element.

*First*, Plaintiffs fail to plausibly allege that any communication was intercepted while "in transit." As the Ninth Circuit has made clear, interception under Section 631(a) requires acquisition of a communication ***during transmission***. *See Konop*, 302 F.3d at 878 ("This conclusion is consistent with the ordinary meaning of 'intercept,' which is 'to stop, seize, or interrupt in progress or course before arrival.'"). The Complaint contains no factual allegations explaining how a third party acquired, let alone read or attempted to read, any of Plaintiffs' "communications" during transmission. Instead, Plaintiffs rely on conclusory assertions that an interception occurred. Courts have consistently held that such boilerplate allegations are insufficient. *See Rodriguez v. Google LLC*, 2022 WL 214552, at *1–2 (N.D. Cal. 2022) (Seeborg, C.J.) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting their data in transit,"); *Rosenow v. Facebook, Inc.*, 2020 WL 1984062, at *7 (S.D. Cal. 2020) (dismissing wiretap claim where allegations of interception "in transit" were conclusory); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (dismissing wiretap claim because the "conclusory allegation that Vizio intercepted their electronic communications 'during transmission'" was only supported by "vague allegations about how Vizio's data collection occurs in real-time.").

*Second*, setting aside Plaintiffs' failure to plead interception in transit, their wiretapping claim fails for the independent reason that they do not allege transmitting ***any communications***, let alone communications with ***contents*** that could have been intercepted. *See Brodsky*, 445 F. Supp.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

3d at 127 (Section 631 prohibits only the "unauthorized access of the contents of any communication."). Under CIPA, "contents" refers specifically to the intended message conveyed, not to metadata or technical details generated during transmission. *See In re Zynga Priv. Litig.*, 750 F.3d at 1106. Plaintiffs concede that "[s]ome of the information" allegedly transmitted data would not constitute "content," such as "IP addresses and user-agent information." Compl. ¶ 153. In addition to IP addresses, Courts have also consistently held that other data such as browsing history, page views, and similar information constitutes unprotected record information, and not content. *See Brodsky*, 445 F. Supp. 3d at 127 (holding text messages are content, but "usernames, passwords, and geographic location information are not,"); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (holding that "keystrokes, mouse clicks, pages viewed, and shipping and billing information ... [and] the date and time of the visit, the duration of the visit, Plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device" are not "content" under 631(a)).

GoFundMe does not dispute that some courts have recognized that "website interactions," "user input data," "shopping behaviors," and potentially "referring URLs" ***could in some circumstances involve user generated content*** and convey what users were searching for or what they wanted to do on a website and thus involve the "contents" of users' communications with their Website. *See, e.g.*, *Wiley v. Universal Music Grp., Inc.*, 2025 WL 3654085, at *7 (N.D. Cal. Dec. 17, 2025) (Pitts, J.) (collecting cases which all require the visitor to input some information in order to constitute a "communication"). Here, however, Plaintiffs ***fail to allege that they personally entered any such information on GoFundMe's Website***. They do not provide a single fact demonstrating how either Plaintiff personally interacted with the Website—such as entering search queries, names, demographic details, email addresses, location data, or payment information, or any other substantive content—on ***any*** Website. Even if Plaintiffs somehow clicked a button or a link or browsed from page to page, those actions do not equate to a "communication." *See In re Zynga Priv. Litig.*, 750 F.3d at 1102, 1106 (recognizing that descriptive URLs sent when a user clicks on a link are not considered "content" under the Federal Wiretap Act). Absent such factual allegations, Plaintiffs' generalized assertions are insufficient. *See id.*; *see also Mikulsky v.*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) (dismissing Section 631(a) claim where plaintiffs alleged only that their "interactions" were intercepted, without identifying the contents of any communication); *Universal Music Grp., Inc.*, 2025 WL 3654085, at *7 (N.D. Cal. Dec. 17, 2025) ("In the absence of any allegation that plaintiffs themselves interacted with the websites in a manner that involved communications whose contents could have been intercepted, they fail to plead the elements of a valid wiretapping claim.").

Because Plaintiffs have failed to allege a viable violation of Section 631(a), their derivative aiding and abetting claim against GoFundMe necessarily fails. *See Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1003 (N.D. Cal. 2024) (Araceli Martínez-Olguín, J.) (dismissing claim under Section 631(a)'s fourth clause where plaintiff failed to establish "underlying third-party violation" of preceding clauses).

Even if Plaintiffs did plausibly plead predicate violations for Clauses 2 and 3 (they do not), to state an aiding and abetting claim under CIPA, Plaintiffs must also plausibly allege that GoFundMe caused Plaintiffs' browsers to store third parties' cookies and to transmit information with "knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024) (Lin, J.); *see also Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023) (dismissing CIPA complaint where plaintiff did "not allege facts demonstrating Defendant acted with the requisite knowledge or intent to aid and abet [a third party's] purported CIPA violation."). Plaintiffs do not—and cannot—plausibly allege that GoFundMe knowingly deployed cookie technologies with the intent to violate CIPA, particularly given the unsettled case law disputing the statute's application to this type of technology as a whole. *See e.g.*, *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1112 (N.D. Cal. 2025) ("The language of CIPA is a total mess."); *Variety Media, LLC v. Superior Court Los Angeles County et al.*, California Court of Appeals, Second District, Case No. B350578 (pending California appellate case on the whether CIPA applies to routine internet technology).

The technologies at issue, including GoFundMe's cookie-management tools, are standard, commercially available products offered by well-established companies such as Meta and Google.

These tools serve legitimate business functions, including cookie-preference management, analytics, and advertising—not unlawful interception or surveillance. Plaintiffs' own allegations confirm this point. They acknowledge that GoFundMe deployed the cookies for ordinary commercial purposes, namely advertising and analytics. *See, e.g.*, Compl. ¶ 18. Absent factual allegations showing that GoFundMe intended to intercept communications or knowingly assisted third parties in doing so, Plaintiffs fail to state an aiding-and-abetting claim under CIPA.

2. *Plaintiffs' CIPA Section 638.51 Pen Register Claim Fails.*

CIPA also precludes "a person…[from] install[ing] or us[ing] a pen register [] without first obtaining a court order." Cal. Pen. Code § 638.51(a). Under CIPA, a "pen register" is "a device or process that records or decodes dialing, routing, addressing, or signaling information … but not the contents of a communication." Cal. Pen. Code § 638.50(b). Plaintiffs assert that third-party cookies and related software code qualify as pen register devices.

In construing a statute, "California courts 'determine the Legislature's intent so as to effectuate the law's purpose.'" *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1153 (N.D. Cal. 2025) (Pitts, J.) (quoting *Skidgel v. Cal. Unemp. Ins. Appeals Bd.*, 12 Cal. 5th 1, 14 (2021)). If the statutory terms remain ambiguous, California courts examine "extrinsic sources" and "select the construction that comports most closely with the apparent intent of the Legislature … and to avoid an interpretation that would lead to absurd consequences." *Day v. City of Fontana*, 25 Cal. 4th 268, 272 (2011). Indeed, there is significant ambiguity as to the application and scope of the definition of pen register as defined in Cal. Penal Code § 638.50. Given that ambiguity, it is appropriate to examine extrinsic sources to adopt the interpretation that most closely aligns with the Legislature's intent.

The legislative history indicates that CIPA's provisions ***do not*** concern the analytical tools employed here and certainly are inapplicable in the context of Plaintiffs' allegations. The Legislative Counsel's Digest preceding the bill states that A.B. 929 "would clarify that any location information obtained ... is limited to the information that can be determined from the ***telephone number***." RJN, Ex. F, California Assembly Bill No. 929, California 2015-2016 Regular Session, at pg. 1. (emph. added). The bill does not mention IP addresses or other data. And, given that A.B.





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

929 was enacted in 2015, when the internet and website tracking software were both known and widespread, Plaintiffs cannot plausibly argue that the Legislature was unaware of IP addresses or other internet identifiers when it passed the law. Specifically, the Legislature has expressly referenced "Internet" or "online" communications and services when extending protections beyond traditional telephonic technologies. For example, the Legislature added Cal. Penal Code § 632.01 in 2017, extending the statute to "Internet Web sites and social media" and "the contents of a confidential communication with a health care provider …." *See* Cal. Pen. Code §632.01. When the Legislature has carefully employed a term in one place and has excluded in another, it should not be implied where excluded. *See Rodriguez v. Ink America Int'l Grp. LLC*, 2025 WL 4034985 (Cal. Super. Dec. 10, 2025) (int. quot. and cit. omitted).[3]

This legislative intent leaves no room for doubt—CIPA was never meant to apply to online tracking or analytics tools. Instead, the Legislature deliberately chose to regulate internet-based data collection (including cookies and other tracking and analytics tools) through the California Consumer Privacy Act ("CCPA") and the California Privacy Rights Act ("CPRA"), which establish comprehensive, modern, and technology-specific rights and compliance obligations. Allowing plaintiffs to shoehorn analysis of these same tools under CIPA's pen-register provisions would directly contradict legislative intent and produce precisely the confusion and punishment of compliance the Legislature sought to prevent when it passed the CCPA.

Even if cookies could under certain circumstances qualify as pen register devices, Plaintiffs

---

[3] Pending legislation—Senate Bill 690—is further support that CIPA's reach should not be interpreted to include routine website-tracking technologies expressly regulated under the California Consumer Privacy Act ("CCPA"). In explaining the purpose of S.B. 690, Democratic Senator Anna Caballero stated:

> I rise today to present SB 690, a Bill to protect California businesses from ***a wave of abusive and predatory lawsuits that are threatening jobs, innovation, and the very ability to do business in our state***… California already has the strongest privacy law in the nation, the. . . CCPA. Back in 2018, this Legislature passed CCPA to give consumers real control over their data using a modern opt out approach. ***Suing under CIPA for activity that's already governed by the CCPA goes against legislative intent, creates confusion, punishes compliance, and doesn't make Californians any safer.*** A private settlement doesn't create stronger protections for consumer or clearer rules for business.

RJN, Ex. G, *Assembly Public Safety Committee*, Tuesday, July 1, 2025, California State Assembly (emph. added).



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

fail to identify not only their communications with GoFundMe's Website, but also the ***specific dialing, routing, addressing, or signaling information*** for ***outgoing communications*** that were purportedly tracked. *See Wiley*, 2025 WL 3654085, at *9 ("[T]he problem with plaintiffs' pen register claim is that they have not alleged that *they* ever communicated with the website. In the absence of any allegation that they communicated with the websites, they cannot allege that the "dialing, routing, addressing, or signaling information" relating to any such communication was unlawfully tracked."). As discussed above, the Complaint is completely devoid of any factual allegations regarding what allegedly collected information constitutes ***Plaintiffs' own*** communications with the Website. *See generally* Compl. And, not surprisingly, in the absence of any allegations that they personally communicated with the Website, Plaintiffs cannot allege what specific "dialing, routing, addressing, or signaling information" for those alleged outgoing communications were tracked. *See* Cal. Pen. Code § 638.50(b). Because Plaintiffs do not provide the requisite information, their pen register claims should be dismissed.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### F. <u>Plaintiffs' Common-Law Fraud/Misrepresentation Claim Fails (Count V)</u>

In California, the elements of a cause of action for fraud are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 717 (N.D. Cal. 2011) (Ware, C.J.), *aff'd*, 572 F. App'x 494 (9th Cir. 2014) (citing *Engalla v. Permanente Med. Grp.*, 15 Cal. 4th 951, 974 (1997)). As discussed in detail above, Plaintiffs have failed to plausibly plead (1) the "when" of their Website visits that would have given rise to a fraud/misrepresentation claim, (2) any conduct with respect to ***their own*** experience, (3) knowledge by GoFundMe of any errant or unintended collection of data, and/or (4) portions of the incorporated Privacy Notice and cookie banner supporting any claimed misrepresentation or fraud by GoFundMe. *See*, *supra*, Section V(B); *see also U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (a district court may consider certain materials, such as documents incorporated by reference in the complaint, without converting the motion to dismiss into a motion for summary judgment). Nor have Plaintiffs alleged actual reliance, knowledge by GoFundMe, or damage with the required specificity. Plaintiffs' "formulaic recitation of the

elements" of fraud—knowledge of falsity, intent to defraud, and induced reliance—lack factual support and cannot surmount the *Twombly/Iqbal* standard, let alone the heightened pleading standard under Rule 9(b). *See Twombly*, 550 U.S. at 555; Compl. ¶¶ 158-169. Plaintiffs' fraud claim thus should be dismissed.

**G. Plaintiffs' Unjust Enrichment Claim Fails (Count VI)**

Plaintiffs' unjust enrichment claim is improper and must be dismissed with prejudice. California law does not recognize unjust enrichment as a standalone cause of action, as it is merely synonymous with restitution. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); *see also Hooked Media Grp. v. Apple Inc.*, 55 Cal. App. 5th 323, 336 (2020). Even if construed as a quasi-contract claim for restitution—where a benefit is unjustly conferred through mistake, fraud, coercion, or request—Plaintiff must identify the specific benefit received and retained by GoFundMe. *See California Crane Sch., Inc. v. Google LLC*, 722 F. Supp. 3d 1026, 1042 (N.D. Cal. 2024) (Pitts, J.) (int. quot. omitted). Here, the Complaint fails to allege any such benefit; the Website is free and publicly accessible. Moreover, restitution cannot be claimed absent a sufficiently pled actionable misrepresentation. *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1120 (N.D. Cal. 2016) (Corley, M.J.). As discussed above, Plaintiffs have not alleged fraud with the requisite particularity. "[W]ithout the other claims, plaintiffs' claim for unjust enrichment fails, as well." *Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 2d 1099, 1106 (N.D. Cal. 2007) (Whyte, J.).

**H. Plaintiffs' Class Allegations Should Be Stricken**

The Supreme Court has acknowledged that in certain cases the viability of a proposed class may be determined at the pleading stage. *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *see, e.g.*, *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 998 (N.D. Cal. 2009) (Fogel, J.) (granting motion to strike class allegations); *Hospevian v. Apple, Inc.*, 2009 WL 5069144, at *6 (N.D. Cal. Dec. 17, 2009) (Fogel, J.) (same); *Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, (N.D. Cal. 2008) (Whyte, J.) (same). Where, as here, a complaint demonstrates on its face that a class action cannot be maintained, courts have granted motions to strike class allegations in order "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sanders*, 672 F. Supp. 2d. at 990–91. While some courts have noted

that granting a motion to strike class allegations "is only appropriate where the defendant presents an argument that completely precludes certification of any class, not just the class currently defined in the complaint," *Rice-Sherman v. Big Heart Pet Brands, Inc.*, 2020 WL 1245130, at *15 (N.D. Cal. Mar. 16, 2020) (Orrick, J.); *see also Huynh v. Jabil Inc*., 2023 WL 1802417, at *7 (N.D. Cal. Feb. 7, 2023) (Orrick, J.) (same), the class allegations in the Complaint here are precisely the type that demand immediate scrutiny at the pleading stage.

Plaintiffs' purported Class, defined as "[a]ll persons who browsed the Website in the United States after clicking or selecting 'Reject all' button in the popup cookies consent banner," Compl. ¶ 97, is patently overbroad. Presumably to avoid a fail-safe class definition, Plaintiffs omit any requirement that, after a user rejected cookies, cookies in fact continued to fire or collect and transmit information to third parties. That omission alone exposes the class's fundamental defects. Establishing liability would require individualized inquiries into whether cookies were deployed at all after a rejection, what cookies (if any) were triggered, what data was collected, and whether any data, let alone "communications" or "private or sensitive" communications, was transmitted. These are issues that turn on transient and highly individualized factors such as user input and subjective concepts of privacy, plus any number of mechanical/logistical derivations, such as browser type, device, operating system, user privacy settings, cache-clearing practices, and the specific version of the Website at the time of the visit. User website browsing and interactive experiences following a cookie-preference selection will necessarily vary widely, producing an effectively limitless combination of outcomes. As a result, commonality and predominance are unattainable. The proposed class could not be proven through common evidence, but only through self-serving testimony and individualized, device-by-device examinations. This is precisely the type of claim that cannot—and should not—be litigated on a classwide basis.[4]

## VI. CONCLUSION

Plaintiffs' Complaint is riddled with fundamental and incurable defects. Accordingly,

[4] Cookie banners, including the one employed by GoFundMe, typically function by deploying a cookie to the user's browser associated with the user's selection choice that is recognized in subsequent visits to the same website, by the same device on the same browser. This cookie can be cleared like any other cookie if a user clears its browser's cache.

GoFundMe respectfully requests that the Court dismiss the Complaint in its entirety with prejudice. In the alternative, GoFundMe requests that Plaintiffs' overbroad class allegations be dismissed and/or stricken.

Dated: April 29, 2026

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: */s/ Bethany G. Lukitsch*
Bethany G. Lukitsch
Kamran B. Ahmadian

*Attorneys for Defendant*
GOFUNDME, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES