**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Anthony J. Patek (State Bar No. 228964)
anthony@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT FOR THE**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SAL MUNOZ AND SHIRLEY VANASCH, as individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOFUNDME, INC.,<br><br>Defendant. | Case No. 3:26-CV-01217-TLT<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Hon. Trina L. Thompson<br><br>**<u>Hearing</u>**<br>Date: September 8, 2026<br>Time: 2:00 p.m.<br>Location: Courtroom 9, 19th Floor<br>Phillip Burton Federal Building<br>450 Golden Gate Avenue<br>San Francisco, CA 94102 |

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

III. LEGAL STANDARD ..... 3

IV. ARGUMENT ..... 4

A. California Law Applies. ..... 4

B. The GoFundMe Sign-Up Screen Does Not Provide Sufficient Notice of the Terms. ..... 4

C. Murray's Declaration that a Contract Exists Is Inadmissible Hearsay. ..... 10

V. CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**Cases**

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ........ 4

*Chabolla v. Classpass Inc.*,
129 F.4th 1147 (9th Cir. 2025) ........ passim

*Chambers v. Crown Asset Mgmt., LLC*,
71 Cal. App. 5th 583 (2021) ........ 11

*Echeverria-Corzan v. Michaels Stores, Inc.*,
No. 4:25-cv-05839 YGR, 2026 U.S. Dist. LEXIS 49621 (N.D. Cal. Feb. 6, 2026) ........ 10

*Ellis v. Wallet Buddha LLC*,
No. 25-cv-1533-MWF, 2025 U.S. Dist. LEXIS 266800 (C.D. Cal. Dec. 29, 2025) ........ 11

*First Options of Chic., Inc. v. Kaplan*,
514 U.S. 938 (1995) ........ 4

*Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911 (N.D. Cal. 2024) ........ 9

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025) ........ 4

*Goldman, Sachs & Co. v. City of Reno*,
747 F.3d 733 (9th Cir. 2014) ........ 3

*Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559 (9th Cir. 2014) ........ 2

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ........ 4

*Norcia v. Samsung Telecomms. Am., LLC*,
No. 14-cv00582-JD, 2014 U.S. Dist. LEXIS 131893 (N.D. Cal. Sept. 18, 2014),
*aff'd*, 845 F.3d 1279 (9th Cir. 2017) ........ 3

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ........ 4, 9

*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th 444 (2021) ........ 4

*Serrano v. Open Rd. Delivery Holdings, Inc.*,
666 F. Supp. 3d 1089 (C.D. Cal. 2023) ........ 7

*Sifuentes v. Dropbox, Inc.*,
No. 20-cv-07908-HSG, 2022 U.S. Dist. LEXIS 125273 (N.D. Cal. June 29, 2022) ........ 3

*Stirrup v. Educ. Mgmt. LLC*,
No. CV-13-01063-TUC-CRP, 2014 U.S. Dist. LEXIS 130366 (D. Ariz. Sep. 16, 2014) ........ 11

*Zaimi v. Neiman Marcus Grp., LLC*,
No. 2:22-CV-02972, 2022 U.S. Dist. LEXIS 241626 (C.D. Cal. Aug. 31, 2022) .................. 12, 13

**Statutes**

Cal. Penal Code §§ 631 .......... 2

Cal. Penal Code §§ 638.51 .......... 2

**Rules**

Fed. R. Evid. 602 .......... 11

Fed. R. Evid. 801(c) .......... 10

Fed. R. Evid. 802 .......... 2, 10

Fed. R. Evid. 803(6)(A)–(E) .......... 10

## I. INTRODUCTION

Plaintiffs allege that GoFundMe, Inc. ("Defendant" or "GoFundMe") enabled third parties to intercept and collect swaths of class members' data against their express instructions and contrary to Defendant's express promise not to do so. Defendant now seeks to compel Plaintiff Munoz ("Plaintiff") to arbitrate his claims on an individual basis—in direct contravention of controlling Ninth Circuit precedent and without sufficient evidence that Plaintiff agreed to Defendant's terms (or ever actually created an account with GoFundMe). Defendant's motion is factually and legally deficient.

Even assuming Plaintiff clicked the sign-up button Defendant alleges he did, Defendant cannot establish that Plaintiff agreed to GoFundMe's Terms of Service because—under directly applicable Ninth Circuit case law—Defendant's sign-up screen did not provide conspicuous, unambiguous notice that clicking that button constituted agreement to the terms at issue. In *Chabolla v. Classpass Inc.*, 129 F.4th 1147 (9th Cir. 2025), the Ninth Circuit considered a similar sign-up screen and found it was not effective to bind the plaintiff to the linked terms. Because Defendant's sign-up screen here provides even less effective notice of the purported agreement to terms than the sign-up process in *Chabolla*, Defendant's motion must be denied.

Moreover, Defendant has not established that Plaintiff Munoz actually created an account with GoFundMe. Defendant submits a declaration with a hearsay statement that "GoFundMe's business records reflect that Munoz created a GoFundMe account by clicking 'Use My Facebook Account.'" Dkt. 18-1 ¶ 7. Defendant does not attach these business records as exhibits; it does not even describe them or explain how they accurately and contemporaneously captured Plaintiff's interactions with the website. Defendant does not identify the Facebook user ID associated with the alleged account. It does not produce or even describe a click log, session record, IP address, timestamp, or any other documentary evidence corroborating its declarant's assertions. In short, GoFundMe tells the Court to take its employee's word for it. In follow-up correspondence about this unsupported declaration, Defendant was unable or unwilling to fill in this evidentiary vacuum. Instead, Defendant produced only a screenshot showing an image from Sal Munoz's Facebook profile, along with his name, email, and a field noting "account setup incomplete." That is far from sufficient. The party seeking to compel arbitration bears the burden of proving a valid agreement by a preponderance of the evidence. *Knutson*

*v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). An employee's description of what unproduced and unspecified business records supposedly say is classic hearsay inadmissible under Federal Rule of Evidence 802. It is not a substitute for the records themselves. And without admissible evidence that Mr. Munoz ever created a GoFundMe account, clicked any button, or agreed to any Terms of Service, there is no basis upon which this Court can find a valid agreement to arbitrate

For these reasons, the Court should deny Defendant's motion in its entiretey.

## II. FACTUAL BACKGROUND

Plaintiffs Sal Munoz and Shirley VanAsch filed this putative class action on February 9, 2026, asserting violations of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631 and 638.51, and common law fraud, deceit, and/or misrepresentation, arising from GoFundMe's use of tracking technologies on its website. Dkt. No. 1.

On April 29, 2026, GoFundMe filed its Motion to Compel Arbitration solely as to Plaintiff Munoz. Dkt. No. 18. GoFundMe's Motion rests on its assertion that Mr. Munoz created a GoFundMe account on March 2, 2017, and in doing so agreed to GoFundMe's 2017 Terms of Service, which contains a binding arbitration provision. *Id.* at 8–9, 12.[1] GoFundMe's evidence consists of a single declaration, which includes four exhibits: (A) a screenshot of GoFundMe's current cookie banner; (B) an archived copy of the 2017 Terms of Service sourced from the Wayback Machine (web.archive.org); (C) GoFundMe's current Terms of Service; and (D) the AAA Consumer Arbitration Rules. Dkt. No. 18-1 (Murray Decl.) ¶¶ 4, 8, 10, 13.

When Plaintiff Munoz visited the Website in the summer of 2025, he did not notice or click any link to the GoFundMe Terms of Service, and he did not agree to arbitrate his claims against GoFundMe. Munoz Decl. ¶¶ 2–4. Plaintiff Munoz denies that he created a GoFundMe account or ever made a donation through GoFundMe. Munoz Decl. ¶¶ 5–6.

On May 21, 2026, Plaintiffs' counsel requested to meet and confer with GoFundMe to obtain more details regarding Defendant's arbitration-related allegations, including whether the putative account was associated with Plaintiff or another person of the same name. Patek Decl. Ex. A at 5. In

[1] Page citations for documents filed in this case use the ECF page numbering in the header of document, not the separate internal page numbering at the bottom of the pages.

subsequent correspondence, GoFundMe forwarded a screenshot of a profile that showed the name "Sal Munoz," Plaintiff Munoz's email, and a photo of Mr. Munoz purportedly from his Facebook account. *Id.* at 3. That screenshot also showed: a "Processor" field indicating "account setup incomplete;" a "Processor Reference" field showing "none;" a blank field for "Socials Connected" and a blank field for "Descope ID." *Id.*

Subsequently, the parties disputed the import of the screenshot produced by GoFundMe. Plaintiffs' counsel noted that the screenshot does not confirm that Mr. Munoz created any account, given that there is no account number identified and it says on its face "account setup incomplete." *Id.* at 1–3. Plaintiffs' counsel noted that GoFundMe's Privacy Policy states that GoFundMe collects names, emails, and other information from user's contacts, and that the record submitted could be the result of someone else submitting Mr. Munoz as a contact. *Id.* at 1. Plaintiffs' counsel requested copies of all of GoFundMe's business records for Mr. Munoz, including the "Logs" and "Ekata" screens suggested by the produced screenshot, as well as all records on which Mr. Murray relied when submitting his declaration. *Id.* To date, GoFundMe has not provided all relevant business records requested by Plaintiffs' counsel. *Id.* ¶ 4.

## III. LEGAL STANDARD

"The party seeking to compel arbitration bears the burden of proving the existence of an agreement to arbitration by a preponderance of evidence." *Chabolla v. Classpass Inc.*, 129 F.4th 1147, 1153 (9th Cir. 2025). "[T]he party opposing arbitration is entitled to the benefit of all reasonable doubts and inferences." *Sifuentes v. Dropbox, Inc.*, No. 20-cv-07908-HSG, 2022 U.S. Dist. LEXIS 125273, at *7 (N.D. Cal. June 29, 2022). "In making this threshold inquiry, there is no thumb on the scale in favor of finding an arbitration agreement to exist." *Norcia v. Samsung Telecomms. Am., LLC*, No. 14-cv00582-JD, 2014 U.S. Dist. LEXIS 131893, at *10 (N.D. Cal. Sept. 18, 2014), *aff'd*, 845 F.3d 1279 (9th Cir. 2017); *see also Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014) ("If the parties contest the existence of an arbitration agreement, the presumption in favor of arbitrability does not apply.").

## IV. ARGUMENT

### A. California Law Applies.

In determining whether a valid arbitration agreement exists, the Court must apply "ordinary state-law principles that govern the formation of contracts." *First Options of Chic., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Here, because Plaintiff is a California citizen who visited Defendant's Website while in California, California law governs the question of whether Plaintiff agreed to the TOU. *See Godun v. JustAnswer LLC*, 135 F.4th 699, 708 (9th Cir. 2025) (applying California law, while noting that "no differences exist in the law of the different states as to internet contract formation"); *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 462 n.4 (2021) (applying California law to question of contract formation despite choice-of-law provision in the terms at issue).

### B. The GoFundMe Sign-Up Screen Does Not Provide Sufficient Notice of the Terms.

Under California law, website terms, such as Defendant's Terms of Service, will be enforced against a consumer only if: "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022); *see also Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512–13 (9th Cir. 2023) ("[T]here must be actual or constructive notice of the agreement and the parties must manifest mutual assent."). Under controlling Ninth Circuit precedent, the sign-up screen used by Defendant in 2017 was insufficient to establish Plaintiff Munoz's agreement to Defendant's Terms of Service.

"Website users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be prominently displayed, not buried in fine print." *Chabolla*, 129 F.4th at 1156 (internal quotation marks and citations omitted); *see also Berman*, 30 F.4th at 857 (emphasizing "the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers") (quoting *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014)). "To be conspicuous, the notice must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Chabolla*, 129 F.4th at 1155 (cleaned up) (noting "[t]he context of the transaction, as well as . . . font size, text

placement, and overall screen design, inform whether a website provides reasonably conspicuous notice of the terms of an agreement”).

In *Chabolla*, the Ninth Circuit analyzed whether the defendant’s sign-up process (comprising three screens) gave the plaintiff sufficiently conspicuous and clear notice of the alleged agreement to the defendant’s terms. *See Chabolla*, 129 F.4th at 1152–53. In the first screen, the user was presented with two prominent options: (1) to enter an email address and click the large “Continue” button or (2) to click the large “Sign up with Facebook” button. *Id.* “Below that, in the smallest font on the page, read ‘By clicking ‘Sign up with Facebook’ or ‘Continue,’ I agree to the Terms of Use and Privacy Policy.’ The words ‘Terms of Use’ and ‘Privacy Policy’ were in blue, while the rest of the text was in gray.” *Id*. The link to the Terms of Use appeared in two subsequent screens as well. *Id.* Despite a hyperlink to the terms appearing three times near where a user would input information or click buttons to sign up for the defendant’s services, the Ninth Circuit held that the defendant failed to provide conspicuous, unambiguous notice that taking a specific action would constitute assent to the terms at issue. *Id*. at 1157 (concluding that the hyperlink to the Terms of Use on the first screen was “‘deemphasized by the overall design of the webpage’ and not ‘prominently displayed’”), 1158–59 (concluding the second and third screens were ambiguous as to whether clicking a button constituted assent to the linked terms). The first screen analyzed in *Chabolla* is depicted below:




*Id*. at 1166, 1173.

For comparison, Defendant's sign-up screen is depicted below:




Dkt. No. 18-1 ¶ 6.

As shown above, Defendant's TOU hyperlink is even less noticeable to a reasonable user than the one found insufficient in *Chabolla*, considering the font, placement, and clarity of the notice language.

In *Chabolla*, the hyperlink "Terms of Use" was in **blue** font and had two capital letters. Here, the link to "terms" is in the same gray font as the surrounding text and is not capitalized at all. While the word "terms" is underlined, that is not sufficient. *Berman*, 30 F.4th at 856-57 (noting the hyperlinked text was underlined but not "in a contrasting font color (typically blue)" and not in "all capital letters," and explaining that "[s]imply underscoring words or phrases . . . will often be insufficient to alert a reasonably prudent user that a clickable link exists"); *Serrano v. Open Rd. Delivery Holdings, Inc.*, 666 F. Supp. 3d 1089, 1096-97 (C.D. Cal. 2023) (the notice language was not immediately adjacent to the relevant button, was smaller than the font in the button, was less noticeable, and the hyperlink to the terms was only underlined but not in blue font nor all capital

letters); *Sellers*, 73 Cal. App. 5th at 480-81 (noting "the hyperlink to the terms of service is underlined, but it is not set apart in any other way that may draw the attention of the consumer, such as with blue text or capital letters").

The notice language is also not immediately adjacent to the button at issue. In *Chabolla*, the plaintiff proceeded with the first option (to enter an email address and click "Continue") and had no reason to review the fine print that appeared below the second option (to "Sign up with Facebook"). The Ninth Circuit determined that purported notice and hyperlink were "on the periphery" of where someone intending to use the first option would be looking, and would likely not be read by such a user. 129 F.4th at 1157. Here, the GoFundMe sign-up screen also presents the user a choice of large buttons to click and here, too, Defendant alleges that Plaintiff clicked the ***first*** option ("Use My Facebook Account"). The only fine print below that button reads "We will never post without your permission." The inconspicuous link to Defendant's terms appears below the ***second*** option to "Use My Email Address" (which Defendant alleges Plaintiff Munoz did ***not*** use), and it is tacked on to the end of *two other statements*, also in fine print. Because the critical textual notice is buried at the end of a paragraph, well below the large Facebook button (which is designed to be readily clicked without reading the fine print that is separated from and well below it), and is designed to be inconspicuous to someone who clicks the "Use My Facebook Account" option, a reasonably prudent user is even less likely to notice the fine print and hyperlink here than in *Chabolla*. *See id.* at 1157 (finding that the notice "seems to fade into the irrelevancy of other aspects of the page").

The textual notice here is also deficient because it is ambiguous. The notice appears below the option to "Use My Email Address," not directly below the option to "Use My Facebook Account," and (unlike the notice on the first screen in *Chabolla*) it does not specifically state that clicking the "Use My Facebook Account" button constitutes agreement to the Terms of Service. Instead, Defendant first identified certain fees that would be charged with each donation and then says: "By continuing, you agree with the GoFundMe terms and privacy policy." But continuing *with what*? Given the preceding references to donation fees, reasonable users (to the extent they even read the statement) would likely understand that to mean 'by continuing ***with a donation***,' not merely clicking the Facebook button.

In *Chabolla*, the Ninth Circuit found that two screens (Screens 2 and 3) were ambiguous as to whether clicking a particular button manifested assent to the terms at issue. Screen 2 required the plaintiff to input her first and last name and said, "By signing up you agree to our Terms of Use and Privacy Policy," followed by a large "Continue" button. *Chabolla*, 129 F.4th at 1158. But that did not make it absolutely clear that entering one's name and clicking "Continue" was the same thing as "signing up." *Id.* It would have been entirely reasonably for someone to assume that signing up might occur later and that agreement to the terms was not effected merely by clicking "Continue." Screen 3 in *Chabolla* included the statement "I agree to the Terms of Use and Privacy Policy" (in fine print), followed by a large button labeled "Redeem now." *Id.* This too, without an unambiguous correlation between the purported notice and the text on the button, "fails to tell the user the significance of clicking 'Redeem now,' and therefore fails to provide the opportunity to unambiguously manifest assent to the Terms of Use." *Id.* at 1159. Here, as in *Chabolla*, Defendant did not state, in unambiguous and conspicuous terms, that specifically clicking the Facebook button constitutes agreement to the Terms of Service.

Defendant ignores *Chabolla* entirely, not mentioning it a single time in its motion, and instead relies heavily on district court cases, such as *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911 (N.D. Cal. 2024), which have been abrogated by *Chabolla* or are otherwise distinguishable (to the extent the notice provided could still be found conspicuous and unambiguous under the standards applied in *Chabolla*). Defendant's citation to *Oberstein* is also inapposite. In *Oberstein*, the notice language was directly above the action button (interrupting the natural flow of clicking that button), it was unambiguous, and the hyperlink to the terms was "in bright blue font, distinguishing it from the surrounding text." 60 F.4th at 515–16. These are critical differences, as the Ninth Circuit explained in specifically distinguishing the screens at issue in *Oberstein* from those at issue in *Chabolla*. *Chabolla*, 129 F.4th at 1157–59.

Accordingly, even aside from Defendant's failure to provide sufficient evidence that Plaintiff Munoz actually clicked the Facebook button or created an account, Defendant's motion to compel arbitration must be denied under the direct application of the analysis in *Chabolla*.

### C. Murray's Declaration that a Contract Exists Is Inadmissible Hearsay.

The pivotal paragraphs of the Murray Declaration are Paragraphs 5 and 7. Both paragraphs purport to establish that Sal Munoz created a GoFundMe account in March 2017. Both are plainly inadmissible. Paragraph 5 of the Murray Declaration states: "GoFundMe's business records *reflect that* Plaintiff Sal Munoz ('Munoz') created a GoFundMe account by clicking 'Sign Up' on the GoFundMe Website on or about March 2, 2017." Murray Decl. ¶5 (emphasis added). Paragraph 7 similarly states: "GoFundMe's business records *reflect that* Munoz created a GoFundMe account by clicking 'Use My Facebook Account' on the GoFundMe Website." *Id.* ¶7 (emphasis added).

This is textbook hearsay. Federal Rule of Evidence 802 provides that "[h]earsay is not admissible" unless a recognized exception applies. "Hearsay" means an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Mr. Murray is not testifying from his own personal knowledge that he witnessed Mr. Munoz create a GoFundMe account. Nor does he say "I am producing as Exhibit [X] a true and correct copy of GoFundMe's account record for Sal Munoz." Instead, he testifies that unspecified, unproduced "business records reflect" a fact —*without producing or even describing those records*. The assertion "business records reflect that Munoz created an account" is an out-of-court statement about the contents of unproduced documents, offered for the truth of the matter asserted (i.e., that Munoz created an account). It is inadmissible under Rule 802.

GoFundMe might argue that Mr. Murray's statements are admissible under the business records exception, Federal Rule of Evidence 803(6). But Rule 803(6) applies to the records themselves, not a witness's vague reference to those records. The exception permits the introduction of "a record of an act, event, condition, opinion, or diagnosis" if it was made in the regular course of business and the other foundational requirements are met. Fed. R. Evid. 803(6)(A)–(E). The exception requires that the *record* be offered into evidence, not a declaration vaguely stating that some unspecified record exists. *See, e.g., Echeverria-Corzan v. Michaels Stores, Inc.*, No. 4:25-cv-05839 YGR, 2026 U.S. Dist. LEXIS 49621, at *10 (N.D. Cal. Feb. 6, 2026) (holding "defendant has not met its burden to show there is no dispute regarding [plaintiff's] assent to an arbitration agreement," where there was no specific evidence, aside from a conclusory statement in a declaration, that the plaintiff had signed up for an account); *Stirrup v. Educ. Mgmt. LLC*, No. CV-13-01063-TUC-CRP, 2014 U.S.

Dist. LEXIS 130366, at *19-20 (D. Ariz. Sep. 16, 2014) (refusing to consider a declarant's statement that plaintiff received an email with the ADR policy at issue, where there was no basis provided for that statement, but considering actual business records authenticated by persons with appropriate knowledge); *cf. Chambers v. Crown Asset Mgmt., LLC*, 71 Cal. App. 5th 583, 598 (2021) (affirming denial of motion to compel arbitration where declarant failed to submit records of the alleged mailing and instead "only vaguely alluded to unspecified . . . records").

Here, GoFundMe did not produce any business record reflecting Mr. Munoz's account creation. No account number, no user ID, no registration log, no click record, no database extract, no system-generated confirmation email, no Facebook log—nothing. None of the four exhibits attached to the Murray Declaration is a business record showing that Sal Munoz created a GoFundMe account. The business records exception is therefore inapplicable. If such records exist, it would have been easy for GoFundMe to print or take a screenshot of them and submit them with its motion. The fact that GoFundMe chose to withhold such evidence suggests that the evidence is not as clear or compelling as GoFundMe asserts. Indeed, the only evidence that GoFundMe has produced (in correspondence with Plaintiffs' counsel) is a screenshot of a business record that expressly notes "account setup incomplete" and which does not include a Facebook ID in any field (as would be expected if Plaintiff Munoz had created a GoFundMe account using his Facebook ID and login credentials).

Furthermore, Federal Rule of Evidence 602 requires that a witness "may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Mr. Murray states that "I have personal knowledge of the facts stated herein *or have access*, based on my position at the company, to the relevant facts or documents maintained in the regular course of GoFundMe's business." Dkt. No. 18-1 ¶ 2 (emphasis added). This vague reference to "access . . . to the relevant facts or documents" is insufficient to establish personal knowledge as to the specific factual assertions in Paragraphs 5 and 7. *See Ellis v. Wallet Buddha LLC*, No. 25-cv-1533-MWF, 2025 U.S. Dist. LEXIS 266800, at *12 (C.D. Cal. Dec. 29, 2025) (defendant failed to present competent evidence that an arbitration agreement was ever formed where the declarant's conclusory statement that the plaintiff had agreed to the defendant's terms was not supported by personal knowledge). Mr. Murray's employment at GoFundMe does not establish his personal knowledge of

what Sal Munoz did or did not do on GoFundMe's website in March 2017, nor has he set forth his personal knowledge of how sign-up records are created and maintained, which records he reviewed, or how those records accurately reflect Plaintiff Munoz's interactions with the Website. Mr. Murray only vaguely references "business records," which he does not produce, and he does not even attempt to describe, authenticate, or lay a foundation for the "business records" from which he purports to conclude (in paragraphs 5 and 7) that Mr. Munoz created an account.

Even setting aside the hearsay problem, the Murray Declaration fails on its own terms because it provides no specific identifying information connecting Plaintiff Munoz—as opposed to some other GoFundMe user—to the account it describes.

Mr. Murray asserts that GoFundMe's business records reflect that Munoz created an account on March 2, 2017, by clicking "Use My Facebook Account." Dkt. No. 18-1 ¶¶ 5, 7. But the Declaration does not identify:

- The email address associated with the alleged account;
- The Facebook user ID or Facebook login credentials used during account creation;
- The unique GoFundMe account identifier or user ID assigned to the account;
- Any details regarding any campaign to which Munoz allegedly contributed;
- Any IP address or geolocation data corroborating that the account creation occurred from a device or location associated with Mr. Munoz; or
- Any subsequent activity (logins, donations, campaign contributions, or communications) confirming the account belongs to Plaintiff Munoz and not another person of the same or similar name.

This specificity deficit is fatal. Names like "Sal Munoz" are not unique. GoFundMe has tens of millions of users. An assertion that "business records reflect" that someone named Sal Munoz created an account, with no corroborating identifiers whatsoever, cannot reliably establish that *this* Sal Munoz is the same individual who supposedly created that account in 2017. GoFundMe's evidence submitted with its motion cannot support the inference it asks the Court to draw.[2]

[2] Plaintiffs concede that the screenshot later produced by counsel contains Mr. Munoz's correct email address. But nothing in that screenshot connects it to the business records referenced in Mr. Murray's declaration. Nor does it support any of Mr. Murray's assertions.

GoFundMe relies on *Zaimi v. Neiman Marcus Grp., LLC*, No. 2:22-CV-02972 AB (SKX), 2022 U.S. Dist. LEXIS 241626 (C.D. Cal. Aug. 31, 2022), for the proposition that courts may rely on a defendant's declaration to establish what sign-in screen a plaintiff viewed. Dkt. No. 18 at 5. But Plaintiff is not contesting whether the sign-up screen depicted in the Murray Declaration is the one GoFundMe used in 2017; Plaintiff is contesting (a) Defendant's allegation that Plaintiff himself created an account and (b) Defendant's argument that clicking the Facebook button on the sign-up screen bound Plaintiff to Defendant's Terms of Service. In *Zaimi*, the plaintiff had pled that they created an account. 2022 U.S. Dist. LEXIS 241626 at *3. As such, *Zaimi* did not even involve a dispute as to whether an account was created, much less hold that a defendant's completely unsupported statements in a declaration established that fact.

In sum, Defendant has not carried its burden of proof that an arbitration agreement was formed. Accordingly, Defendant's motion must be denied.

## V. CONCLUSION

For the foregoing reasons, Defendant's motion to compel arbitration of Plaintiff Munoz's claims must be denied.

Dated: June 3, 2026

**GUTRIDE SAFIER LLP**

*/s/ Anthony J. Patek*
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Anthony J. Patek (State Bar No. 228964)
anthony@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*