**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Anthony J. Patek (State Bar No. 228964)
anthony@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAL MUNOZ AND SHIRLEY VANASCH, as individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

GOFUNDME, INC.,

Defendant.

Case No. 3:26-CV-01217-TLT

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE**

Hon. Trina L. Thompson

**Hearing**
Date: September 8, 2026
Time: 2:00 p.m.
Location: Courtroom 9, 19th Floor
Phillip Burton Federal Building
450 Golden Gate Avenue
San Francisco, CA 94102

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1
II. STATEMENT OF FACTS ..... 3
III. LEGAL STANDARD ..... 4
IV. ARGUMENT ..... 5
  A. Plaintiffs Plead a Concrete Injury. ..... 5
  B. Plaintiffs' Allegations Satisfy Rule 9(b), to the Extent It Applies. ..... 8
  C. Plaintiffs' Claims Are Timely. ..... 10
  D. Plaintiffs Adequately Plead Common Law Privacy Claims. ..... 11
  E. Plaintiffs Adequately Allege Violations of CIPA § 631(a). ..... 13
  F. Plaintiffs Adequately Allege Violations of CIPA § 638.51 ..... 18
  G. Plaintiffs Adequately Allege Their Fraud Claim. ..... 20
  H. Plaintiffs' Unjust Enrichment Claim May Proceed. ..... 20
  I. The Class Allegations Should Not Be Stricken. ..... 21
V. CONCLUSION ..... 22

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1990) .......... 22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 4

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 12, 14

*Calhoun v. Google LLC*,
526 F.Supp.3d 605 (N.D. Cal. 2021) .......... 12

*Doe v. Amgen, Inc.*,
No. 2:23-cv-7448, 2024 U.S. Dist. LEXIS 144579 (C.D. Cal. Aug. 13, 2024) .......... 17

*Doe v. Eating Recovery Ctr. LLC*,
No. 23-cv-05561-VC, 2025 U.S. Dist. LEXIS 207952 (N.D. Cal. Oct. 17, 2025) .......... 16

*Doe v. Fullstory*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) .......... 11

*Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814 (E.D. Cal. 2025) .......... 14

*Durnford v. MusclePharm Corp.*,
907 F.3d 595 (9th Cir. 2018) .......... 10

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .......... 5

*Gabrielli v. Haleon US Inc.*,
No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503 (N.D. Cal. Aug. 29, 2025) .......... 1

*Gabrielli v. Motorola Mobility LLC*,
No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836 (N.D. Cal. July 14, 2025) .......... passim

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 18, 19

*Hart v. TWC Prod. & Tech. LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021) .......... 12

*Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849 (C.D. Cal. 2024) .......... 14

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .......... 11

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) .......... 12

*Huynh v. Chase Manhattan Bank*,
465 F.3d 992 (9th Cir. 2006) .......... 10

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 5, 6, 11

*In re Facebook, Inc.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 13

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3d Cir. 2019) .......... 5

*In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262 (3d Cir. 2016) ..... 12

*In re Vizio, Inc.*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017) ..... 12

*In re Zynga Privacy Litig.,* 750 F.3d 1098 (9th Cir. 2014) ..... 14

*Jackson v. LinkedIn Corp.*, 744 F. Supp. 3d 986 (N.D. Cal. 2024) ..... 16

*James v. Walt Disney Co.*, 701 F. Supp. 3d 942 (N.D. Cal. 2023) ..... 17

*Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023) ..... 14

*Katz-Lacabe v. Oracle America, Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023) ..... 12

*Kearns v. Ford Motor Co*., 567 F.3d 1120 (9th Cir. 2009) ..... 8

*Kotlarsz v. Integrity Vehicle Servs., Inc.*, No. 8:24-cv-00569, 2024 U.S. Dist. LEXIS 213565 (C.D. Cal. Sep. 3, 2024) ..... 17

*Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014) ..... 5

*Mirmalek v. L.A. Times Communs. LLC*, No. 24-cv-01797-CRB, 2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024) ..... 18

*Mitchell v. Sonesta Int'l Hotels Corp.*, No. CV 24-2603-GW-SSCx, 2024 U.S. Dist. LEXIS 186701 (C.D. Cal. Oct. 4, 2024) ..... 16

*Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993) ..... 9

*Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-cv-03647-JSC, 2025 U.S. Dist. LEXIS 230964 (N.D. Cal. Nov. 24, 2025) ..... 8

*Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) ..... 7

*Rabin v. Google LLC*, 725 F. Supp. 3d 1028 (N.D. Cal. Mar. 26, 2024) ..... 10

*Ribas v. Clark*, 38 Cal. 3d 355 (1985) ..... 16

*Sanders v. Apple Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009). ..... 21

*Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924 (N.D. Cal. 2024) ..... 18

*Shah v. Fandom, Inc.*, No. 24-cv-01062-RFL, 2024 U.S. Dist. LEXIS 193032 (N.D. Cal. Oct. 21, 2024) ..... 18, 19

*Shah v. MyFitnessPal, Inc.*, No. 25-cv-04430-PCP, 2026 U.S. Dist. LEXIS 15193 (N.D. Cal. Jan. 27, 2026) ..... 8

*Silver v. Stripe, Inc.*, No. 4:20-cv-08196-YGR, 2021 U.S. Dist. LEXIS 141090 (N.D. Cal. 2021) ..... 12

*Six v. IQ Data Int'l, Inc.*, 129 F.4th 630 (9th Cir. 2025) ..... 5

*Smith v. Google, LLC*, 735 F. Supp. 3d 1188 (N.D. Cal. 2024) ..... 8

*Spokeo Inc. v. Robins*,
578 U.S. 330 (2016) ........ 5

*St. Aubin v. Carbon Health Techs., Inc.*,
No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024) ........ 14

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 5

*United States v. McGee*,
993 F.2d 184 (9th Cir. 1993) ........ 10

*Van Saher v. Norton Simon Museum of Art at Pasadena*,
592 F.3d 954 (9th Cir. 2010) ........ 10

*Walsh v. Dollar Tree Stores, Inc.*,
No. 25-cv-01601-SVK, 2025 U.S. Dist. LEXIS 204652 (N.D. Cal. Oct. 16, 2025) ...... 6, 9, 11

*Wiley v. Universal Music Grp., Inc.*, No. 25-cv-03095-PCP, 2025 LX 594493 (N.D. Cal. Dec. 17, 2025) ........ 9, 10

*Williams v. Facebook, Inc.*,
384 F. Supp. 3d 1043 (N.D. Cal. 2018) ........ 13

**Statutes**

Cal. Penal Code § 631(a) ........ 13, 16, 18

Cal. Penal Code § 638.5 ........ 18

Cal. Penal Code § 638.50(b) ........ 18, 19

Cal. Penal Code § 638.51 ........ 18

Cal. Penal Code § 638.51(b) ........ 19

**Rules**

Fed. R. Civ. P. 12(b)(6) ........ 4

Fed. R. Civ. P. 9(b) ........ 8

## I. INTRODUCTION

Plaintiffs Sal Munoz and Shirley VanAsch ("Plaintiffs") bring this action against GoFundMe, Inc. ("GoFundMe" or "Defendant") for intentionally aiding third parties in the collection of Plaintiffs' and other users' private information *against those website users' express instructions*, and in violation of Defendant's *express promise not to do so*. In particular, GoFundMe presented Plaintiffs with a cookie consent banner that offered a clear and unequivocal choice: "Accept All" or "Reject All" cookies. Plaintiffs chose "Reject All." GoFundMe ignored that choice entirely—causing third-party tracking cookies to fire anyway.

As a result, Defendant enabled the third parties to collect large swaths of Plaintiffs' data, including, without limitation, browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data, despite Defendant's explicit representation that it would disable such transmissions. Plaintiffs have properly asserted claims to hold Defendant liable for such misconduct. *See Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, at *21–22 (N.D. Cal. July 14, 2025) (denying motion to dismiss alleging defendant's website violated privacy laws by using tracking cookies after expressly promising it would not do so); *Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503, at *21 (N.D. Cal. 2025 Aug. 29, 2025) (same). Ignoring or mischaracterizing Plaintiffs' actual allegations, Defendant seeks dismissal based on technical arguments, none of which have merit.

Defendant's argument that Plaintiffs lack Article III standing has been repeatedly rejected by courts in this district. Like the defendants in those other cases, Defendant attempts to disregard its own affirmative representation that Plaintiffs would not be tracked and instead focuses entirely on whether Plaintiffs shared particularly sensitive information on the Website. But Defendant itself created a privacy expectation by presenting Plaintiffs with the choice to protect their information, and that provides a basis for standing in a way that generic website tracking (in the absence of any assurance of privacy) does not.

GoFundMe's Rule 9(b) argument fares no better. Plaintiffs have pled, with specificity, the specific representation GoFundMe made (that Plaintiffs could "Reject all" cookies), where it was made (in cookie consent banner on the Website), when Plaintiffs visited the Website (within the last four years), and the specific third-party cookies—Google Analytics, DoubleClick, Google Ads—that continued to fire after Plaintiffs' rejection. That is more than sufficient to apprise GoFundMe of the "who, what, when, where, and how" of the alleged misconduct.

Defendant's argument that Plaintiffs' claims are untimely misconstrues or disregards Plaintiffs' allegations, and misunderstands how an affirmative defense applies at the pleading stage.

The Complaint further adequately alleges that Plaintiffs had a reasonable expectation of privacy based on GoFundMe's express representation that Plaintiffs could "Reject all" cookies and that the subsequent invasion of their privacy in blatant violation of that assurance was highly offensive. Plaintiffs have adequately and timely pled their common law claims for invasion of privacy, intrusion upon seclusion, fraud, and unjust enrichment.

The Complaint also adequately alleges all elements of Plaintiffs' CIPA claims, including that the contents of Plaintiffs' The Website includes a search bar and other input fields where users enter information—communications whose contents were intercepted by third parties in real time. The Complaint contains extensive technical detail about GoFundMe's stream-processing infrastructure, demonstrating that the Third Parties read, transform, and act upon user communications while they are in transit, before they are stored. And GoFundMe's affirmative misrepresentation that users could "Reject All" cookies—and then disregarding that rejection—plainly satisfies any intent requirement under CIPA.

GoFundMe's argument that CIPA's pen register provision was never intended to apply to internet tracking technology is both legally wrong and premature. The legislative history GoFundMe cites does not demonstrate the Legislature intended to exclude internet tracking, and its reliance on a pending bill (SB 690) confirms that the current statute reaches this conduct.

The motion to strike class allegations should also be denied. The proposed class—persons who clicked "Reject All" and whose communications were nonetheless intercepted—is not facially

overbroad and presents the same common questions of law and fact that class actions routinely address.

Accordingly, the Court should deny GoFundMe's Motion to Dismiss and Motion to Strike in its entirety. In the event the Court deems any portion of the Complaint deficient, Plaintiffs respectfully request leave to amend.

## II. STATEMENT OF FACTS

When consumers visit GoFundMe's website at www.gofundme.com (the "Website"), GoFundMe displays to them a popup cookie consent banner. Compl. ¶¶ 1, 27. The banner states: "We use cookies[.] By clicking 'Accept all', you agree to the storing of cookies on your device for functional, analytics, and advertising purposes." *Id.* ¶ 27. Users are then given three options: "Accept All," "Reject All," or "More choices." *Id.* Plaintiffs Munoz and VanAsch, like many GoFundMe visitors, clicked "Reject All." *Id.* ¶¶ 82–83, 91–92. By doing so, they gave GoFundMe express notice that they did not consent to the placement or transmission of third-party cookies for functional, analytics, or advertising purposes. *Id.*

Contrary to its express representation that users could reject cookies, GoFundMe caused multiple third parties—primarily Google LLC, through its DoubleClick, Google Ads, and Google Analytics platforms—to place and transmit cookies on users' devices and to receive users' Private Communications, even after users clicked "Reject All."[1] *Id.* ¶¶ 3–4, 33–72. These cookies allowed the Third Parties to track and collect users' browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and geolocation data (collectively, "Private Communications"). *Id.* ¶ 4–5, 22, 32–40, 45. The Third Parties use the personal information to profile users and target them with advertising for the Third Parties' own financial gain. *Id.* ¶¶ 5, 35, 61–63, 74–78. This is the exact type of tracking and data sharing that Plaintiffs and other Website users sought to avoid.

The Complaint provides specific technical detail about how Google's cookies operate on the Website. Even after a user clicks "Reject All," GoFundMe causes data to be transmitted to

[1] If given leave, Plaintiffs will amend to include allegations regarding use by Meta as well.

www.google.com, fls.doubleclick.net, play.google.com, adservice.google.com, and analytics.google.com. *Id.* ¶¶ 41–60. The Complaint identifies specific parameters transmitted to these domains. *Id.* The Complaint further alleges in detail how the Third Parties intercept user communications while in transit, through real-time stream processing platforms specifically designed to operate on data "in flight." *Id.* ¶¶ 64–72. These platforms—including Google's own Cloud Dataflow—transform, deduplicate, validate, filter, and analyze user communications in real time before they are committed to storage. *Id.*

Plaintiffs visited the Website on one or more occasions during the last four years to seek information about GoFundMe's services and to view fundraising campaigns. *Id.* ¶¶ 79, 88. When they visited, GoFundMe immediately presented them with its popup cookie consent banner. *Id.* ¶¶ 81, 90. They each clicked "Reject All," relying on GoFundMe's representation that doing so would prevent the placement of non-essential tracking cookies, and then browsed the Website. *Id.* ¶¶ 82–83, 91–92. Despite these clear rejections, GoFundMe nonetheless caused the Third Parties' cookies to be placed on their devices and caused their Private Communications to be transmitted to third parties. *Id.* ¶¶ 83–86, 92–95. Had GoFundMe disclosed that it would continue causing cookies to be stored and transmitted even after users clicked "Reject All," Plaintiffs would not have used the Website or would have interacted with it differently. *Id.* ¶¶ 86, 95.

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion, the claimant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). And the allegations need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. The district court resolves a facial attack on standing under Rule 12(b)(1), such as Defendant's standing challenge here, as it would a motion to dismiss under Rule 12(b)(6): accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are

sufficient as a legal matter to invoke the court's jurisdiction. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

## IV. ARGUMENT

### A. Plaintiffs Plead a Concrete Injury.

Plaintiffs have standing under Article III because they allege a "concrete" injury, which is one that is "real" as opposed to "abstract," or hypothetical. *See Spokeo Inc. v. Robins*, 578 U.S. 330, 340 (2016). Alleged intangible harms are concrete if they have "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," and invasions of privacy (such as disclosure of private information and intrusion upon seclusion) have long been recognized at common law as concrete injuries. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021); *accord Six v. IQ Data Int'l, Inc.*, 129 F.4th 630, 634 (9th Cir. 2025) (the alleged injury must simply be similar in kind to a traditionally recognized harm, such as intrusion upon seclusion). A right to privacy "encompass[es] the individual's control of information concerning his or her person." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (citation omitted). The California Invasion of Privacy Act (CIPA) was "intended to protect these historical privacy rights." *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020). Accordingly, internet users, such as Plaintiffs, who allege that their data was collected in violation of an expectation of privacy have "standing to bring claims for invasion of privacy, intrusion upon seclusion, as well as claims under . . . CIPA, because they adequately alleged privacy harms." *Id.* at 598–99; *accord In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3d Cir. 2019) ("History and tradition reinforce that a concrete injury for Article III standing purposes occurs when Google, or any other third party, tracks a person's internet browser activity without authorization.").

Here, Plaintiffs allege they suffered concrete harm and that Defendant's conduct was highly offensive because: (a) Defendant *expressly represented* that Plaintiffs could reject cookies, Plaintiffs affirmatively chose to reject the cookies at issue, and Defendant surreptitiously placed third-party tracking cookies on Plaintiffs' devices *after* they explicitly rejected such cookies; and (b) Defendant thereby enabled the third parties to collect *large swaths* of Plaintiffs' data, including,

without limitation, "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data," despite Defendant's explicit representation that it would disable such transmissions. *See* Compl. ¶¶ 1–6, 22, 26–37, 41–63, 79–96, 108–16, 119–126, 138–46, 152–57, 159–69, 172–78. And, like in *In re Facebook*, the tracking continues across websites and across multiple browsing sessions, for the purpose of compiling extensive user profiles. Compl. ¶¶ 5, 21, 36, 41, 61–63. These allegations set forth a concrete harm to Plaintiffs' privacy interests that are similar in kind to traditionally recognized harms (indeed, their claims for invasion of privacy and intrusion upon seclusion are historically recognized causes of action). *See In re Facebook*, 956 F.3d at 598–99. Courts in this District have repeatedly found standing in cases involving substantially the same alleged conduct. *See, e.g.*, *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *16–17 ("Gabrielli's allegations that Motorola deprived him control of personal information regarding his digital activity and profile are sufficient to establish a concrete injury to his right to privacy and confer standing."); *accord Haleon*, 2025 U.S. Dist. LEXIS 169503, at *15 (same); *Walsh v. Dollar Tree Stores, Inc.*, No. 25-cv-01601-SVK, 2025 U.S. Dist. LEXIS 204652, at *29 (N.D. Cal. Oct. 16, 2025) (same).

In arguing that Plaintiffs lack Article III standing because they have not alleged that particularly sensitive or embarrassing information was collected during their particular browsing sessions (Dkt. No. 19 ("MTD") at 16–19),[2] Defendant both (a) ignores the directly applicable cases discussed above and (b) relies on distinguishable cases, where there were no affirmative assurances by the defendants that users could reject tracking technologies and where the plaintiffs had not expressly rejected cookies. Most notably, in *Popa*, the Ninth Circuit reiterated that courts "assess whether 'plaintiffs have identified a close historical or common-law analogue for their asserted injury,'" and found no need to revisit the conclusions reached in *In re Facebook* and *Eichenberger*. *See Popa v. Microsoft Corp.*, 153 F.4th 784, 794 (9th Cir. 2025) (confirming that the decision in *In re Facebook* properly "accounted for the individual circumstances giving

[2] Page citations for documents filed in this case use the ECF page numbering in the header of document, not the separate internal page numbering at the bottom of the pages

rise to the plaintiffs' alleged injuries," while cautioning against an overly expansive reading of that case). In *Popa*, the defendant did not seek plaintiff's consent, create an expectation of privacy, and then defy plaintiff's rejection of the software. Moreover, the session replay software in *Popa* was limited to collecting data about the use of a single website for the defendant's *own use*. 153 F.4th at 786–87. Here, by contrast, Defendant causes tracking beyond its own website and for the benefit of third parties—who build profiles as in *In re Facebook*—and, even worse, Defendant does so in defiance of its promise not to do exactly that. Accordingly, Defendant's Article III argument fails.

Moreover, the data at issue here is not as innocuous as GoFundMe suggests. The Complaint alleges interception of user input data including search queries entered into GoFundMe's search bar, as well as fundraising-related browsing activity that can reveal sensitive personal or economic circumstances (such as medical conditions, financial hardship, bereavement), or political views, all of which can be exploited by third parties. Compl. ¶ 24, 38, 75. The Ninth Circuit's *Davis* analysis, which found standing based on browsing history including visits to "sensitive or embarrassing websites," 956 F.3d at 605, applies with equal or greater force here.

Defendant also argues that Plaintiffs have not alleged a loss of value to their personal information. MTD at 19–20. But Plaintiffs' concrete injury is not primarily economic—it is the violation of their privacy autonomy and the breach of an explicit consent mechanism they relied upon. The common law has long recognized that involuntary disclosure of personal information, in violation of a confidence, is itself an actionable harm. That is precisely what Plaintiffs allege here. Although the diminution in value of personal information can be a cognizable harm, that is not the only or primary type of harm that Plaintiffs have alleged; Plaintiffs repeatedly emphasize that they have suffered a loss of the right to control the dissemination and use of their Private Communications. *See*, *e.g.*, Compl. ¶¶ 110, 144, 164. This is a concrete harm sufficient for standing. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 599 (a plaintiff can be harmed by loss of control over personal information); *Haleon US Inc.*, 2025 U.S. Dist. LEXIS 169503, at *15 ("Haleon deprived [Plaintiff] control of personal information regarding his digital

activity and profile are enough to show a concrete injury to his right to privacy and, subsequently, Article III standing"). Plaintiff also alleges that Defendant was unjustly enriched by invading Plaintiff's privacy and property rights. *See* Compl. ¶¶ 171–79. This, too, is a cognizable basis for standing. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 599–600 (noting a plaintiff can seek disgorgement of profits from a privacy invasion, and thus has a personal stake in the controversy).

**B. Plaintiffs' Allegations Satisfy Rule 9(b), to the Extent It Applies.**

Defendant contends Rule 9(b) applies to all of Plaintiffs' claims, but courts have rejected that argument. *See Shah v. MyFitnessPal, Inc.*, No. 25-cv-04430-PCP, 2026 U.S. Dist. LEXIS 15193, at *25 n.3 (N.D. Cal. Jan. 27, 2026) (rejecting argument that Rule 9(b) applied to the pleading as a whole, rather than just the fraud claim, where plaintiffs' other claims (like the claims here) "focus primarily on privacy-related harms resulting from the information gathering that was enabled by the cookies placed on plaintiffs' devices after they attempted to reject them"); *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1198 (N.D. Cal. 2024) (finding Rule 9(b) to be inapplicable to wiretapping claims since "Plaintiffs' statutory claims here do not sound in fraud").

In any event, Rule 9(b) is satisfied here. Rule 9(b) requires plaintiffs to plead "'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1124 (9th Cir. 2009). Here, Plaintiffs adequately allege the who (GoFundMe); the where (the Website and its pop-up screens); the what and the how (GoFundMe represented that users could "Reject all" non-essential cookies but then disregarded Plaintiffs' selections and caused Google's DoubleClick, Google Ads, and Google Analytics cookies to fire despite users' rejection, transmitting specific identifiable data parameters to Google's domains); and the when (during the class period). Compl. ¶¶ 1–6, 27–63, 79–96. Courts in this district have found Rule 9(b) satisfied by materially identical allegations. *See Motorola*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, at *36–37 ("These allegations satisfy the "who, what, when, and where" of Rule 9(b)."); *Haleon*, 2025 U.S. Dist. LEXIS 169503, at *36 (per "Fed. R. Civ. 9(b), [Plaintiff's] allegations are sufficient for now."); *Pemberton v. Rest. Brands Int'l, Inc.*, 2025 U.S. Dist. LEXIS 230964, at *22 (N.D. Cal. Nov. 24, 2025) (quoting *Motorola,* and "finding similar allegations sufficient" to

survive a 9(b) challenge); *Dollar Tree*, 2025 U.S. Dist. LEXIS 204652, at *57 ("Plaintiffs proffer the who, what, when, where and how in their Opposition, citing to portions of the Complaint" in a reject-all cookies case).

Defendant argues that further specificity is required as to the specific timing of Plaintiffs' visits to the Website (MTD at 21), but there is no real confusion here. In addition to alleging that they visited on one or more occasions during the last four years (Compl. ¶¶ 79, 88), Plaintiffs also allege the specific representations they saw and selections they made to reject cookies (Compl. ¶¶ 81–83, 90–92). The allegations here plainly "give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Brown*, No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760, at *7 (quoting *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (quotation marks and citation omitted)). That is sufficient at the pleading stage. *See, e.g., Wiley v. Universal Music Grp., Inc.*, No. 25-cv-03095-PCP, 2025 LX 594493, at *7–8 (N.D. Cal. Dec. 17, 2025) (finding pleading of website visits "on multiple occasions during the last four years" to be adequate).

Defendant's larger argument that Plaintiffs are required to allege *exactly* when they visited, which pages they visited, what they clicked, how they searched the Website, what specific cookies were installed during those sessions, and what specific information was transmitted and intercepted—during past Website visits which they believed at the time were protected from such invasions—is absurd. Such a pleading standard would essentially require individuals to record their network activity with sophisticated tools constantly. That would be an effective bar to internet privacy cases. Moreover, a plaintiff who could provide such details would be subject to an attack on their Article III standing, on the theory that they *expecting* that their privacy rights would be infringed upon.

Here, Plaintiffs have already provided a remarkable amount of detail—with screenshots and specific cookie names. Compl. ¶¶ 33, 41–63. The Complaint includes network traffic screenshots from Chrome Developer Tools showing Google cookies transmitting data *after* a user rejected all cookies. *Id.* At the pleading stage, this is more than sufficient. Indeed, the bulk of

what Defendant alleges is missing is within the control of Defendant and third parties and can be uncovered during discovery.

In the end, there is no substance to Defendant's Rule 9(b) argument.

**C. Plaintiffs' Claims Are Timely.**

GoFundMe argues that Plaintiffs' claims are time-barred because they allege visits only "during the last four years," which could encompass periods outside the one- or two-year statutes of limitations. MTD at 22. This argument has no merit.

Where the defendant moves to dismiss a claim as untimely under the applicable statute of limitations, the motion can be granted "only when 'the running of the statute is apparent on the face of the complaint.'" *Van Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)); *see also United States v. McGee*, 993 F.2d 184, 187 (9th Cir. 1993) (noting complaint need not address statute of limitations raised as affirmative defense). This is because affirmative defenses do not provide a basis for dismissal under Rule 12(b)(6) unless the plaintiff has pleaded himself out of a claim by "admit[ing] all the ingredients of an impenetrable defense," *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 604 n.8 (9th Cir. 2018), meaning that the plaintiff's pleaded facts demonstrate no "potential factual dispute that could affect whether the defense applies," *Rabin v. Google LLC*, 725 F. Supp. 3d 1028, 1031 (N.D. Cal. Mar. 26, 2024). But here, the allegations in the Complaint do not establish that any of Plaintiffs' claims are untimely.

Plaintiffs allege visits on one or more occasions during the last four years. Compl. ¶¶ 79, 88. This allegation encompasses visits within the past year (for CIPA) and the past two years (for common law privacy claims), "so it is entirely possible, from the face of the complaint, that [Plaintiffs'] claims are timely." *Wiley*, 2025 U.S. Dist. LEXIS 261303, at *8 (rejecting a similar argument).

Moreover, the discovery rule and fraudulent concealment doctrine toll the limitations period. GoFundMe affirmatively misrepresented that clicking "Reject All" would prevent cookie tracking. Compl. ¶¶ 27–30. Because of this misrepresentation, and because detecting unauthorized cookie firing requires specialized developer tools that ordinary consumers do not

possess, Plaintiffs could not have discovered the violation at the time of their visits. *Id.* ¶¶ 86–87, 95–96. *See Doe v. Fullstory*, 712 F. Supp. 3d 1244, 1255–56 (N.D. Cal. 2024) (discovery rule applied where plaintiff alleged that defendant had exclusive knowledge of its platform, and the highly technical nature of the violation all but ensured that Plaintiff could not discover the violation at all).

**D. Plaintiffs Adequately Plead Common Law Privacy Claims.**

California's common law invasion of privacy and intrusion upon seclusion are analyzed together and require that Plaintiffs show: (1) an intentional intrusion into a matter as to which the plaintiff has a reasonable expectation of privacy, and (2) the intrusion must be "highly offensive." *In re Facebook*, 956 F.3d at 606; *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 285–97 (2009). Plaintiffs plainly allege both elements.

Defendant argues that Plaintiffs could not have had a reasonable expectation of privacy in mere browsing activity and that any tracking of such activity cannot be highly offensive. MTD at 23–24. But Plaintiffs allege that Defendant knowingly assisted *third parties* in collecting large swaths of their data and communications—including "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data"—***after specifically representing*** to Plaintiffs that they could browse the Website ***without*** their data and communications being shared with third parties.

Given Defendant's *own representations* and the scope of the violation of those representations, Plaintiffs plausibly allege that they had a reasonable expectation of privacy and that Defendant's conduct was highly offensive. *See Dollar Tree*, 2025 U.S. Dist. LEXIS 204652, at *37–39 (finding plaintiffs plausibly alleged that (a) "Dollar Tree *itself* creates a reasonable expectation of privacy when it presents customers with a Cookie Banner permitting them to 'Reject Advertising Cookies'" and (b) the collection of plaintiffs' browsing history, user input data, and geolocation data constituted highly offensive conduct, "considering the 'plus factor' of alleged deceit on the part of Dollar Tree in collecting such information via the Cookie Banner"); *Haleon*, 2025 U.S. Dist. LEXIS 169503, at *23 (court could not conclude on a motion to dismiss that the

"alleged transmission via stored cookies of [plaintiff's] browsing data, visit history, website interactions, geolocation information, user input data (including search terms), and other types of data is not a highly offensive invasion of his reasonable privacy expectation"); *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *27 (same); *see also Brown v. Google LLC*, 685 F. Supp. 3d 909, 937–39 (N.D. Cal. 2023) (Google itself "told users that they could 'go Incognito' and 'browse privately,'" and thus "[b]y browsing privately, plaintiffs could be said to have asserted their expectation of privacy"); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 630 (N.D. Cal. 2021) (finding plaintiffs "had a reasonable expectation of privacy in the data allegedly collected" based on defendant's own representations that it would not receive such data). Courts consistently, recognize that the tracking and amassing of online data without consent is highly offensive. *See, e.g., Katz-Lacabe v. Oracle America, Inc.*, 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023) (the accumulation of online data was an invasion of privacy); *Silver v. Stripe, Inc.*, No. 4:20-cv-08196-YGR, 2021 U.S. Dist. LEXIS 141090, at *17–18 (N.D. Cal. 2021) (finding plaintiff stated claims for intrusion upon seclusion based on the aggregation of data); *Rodriguez I*, 2021 U.S. Dist. LEXIS 98074, at *27 (users have a privacy interest in their internet-wide browsing history); *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 600 (N.D. Cal. 2021) (collection and sharing of data when the app was closed was an invasion of privacy).

Defendant's cases (MTD at 23) are not persuasive here because they do not address a situation where the defendant enabled third parties to collect a user's data in violation of an *express assurance that such data would not be shared*. Even "more routine data collection practices may be highly offensive if a defendant disregards consumers' privacy choices while simultaneously 'h[olding] itself out as respecting' them." *In re Vizio, Inc.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017) (quoting *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 292 (3d Cir. 2016)).

In any event, the question of whether an intrusion is "highly offensive" is one that courts do not resolve on the pleadings because it is fact-intensive and entails weighing the "extent and gravity of the invasion." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994); *see also In re Facebook, Inc., Internet Tracking Litig.*, 956 F.3d at 606 (stressing the uniquely subjective nature of the "highly offensive inquiry" before concluding it "cannot be resolved at the pleading

stage"); *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *26 (explaining "courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is") (quoting *In re Facebook, Inc.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019)); *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1054 (N.D. Cal. 2018) (whether conduct rises to the level of highly offensive "is indeed a factual question best left for a jury").

**E. Plaintiffs Adequately Allege Violations of CIPA § 631(a).**

Plaintiffs allege a claim under the fourth clause of Section 631(a). That clause imposes liability on Defendant to the extent it aided, agreed with, or conspired with third parties to eavesdrop on (attempt to learn the contents of) Plaintiffs' communications, and/or to use or communicate information obtained as a result of eavesdropping. Cal. Penal Code § 631(a).

With respect to the contents of their communications, Plaintiffs allege third parties obtained their interests, preferences, behavior, and user input data as they used the Website. Compl. ¶¶ 22 (describing user input data), 35 (user input data was intercepted), 38–39 (describing the search functionality on the Website), 45 (Google cookies collect, *inter alia*, user input data), 138–40 (third parties intercepted the contents of Plaintiffs' communications, including user input data). When Plaintiffs and class members type search queries into GoFundMe's search bar, or use or methods of searching for and viewing various fundraising campaigns, they are communicating the *contents* of their inquiry—what they are looking for, what causes they are interested in supporting, what personal circumstances may have led them to GoFundMe. GoFundMe "programmed the Website so that the contents of those communications are intercepted by the Third Parties while the communications are in transit between the users' browser and the Website." *Id.* ¶ 40. This is a direct allegation that search queries—unambiguous "contents" of communications—were intercepted.

Despite these allegations, Defendant asks this Court to dismiss Plaintiffs' CIPA claims simply because they do not allege specific information that they typed into a field on the Website. But Defendant cannot so easily override Plaintiffs' allegations that the contents of communications were intercepted. *See Haleon*, 2025 U.S. Dist. LEXIS 169503, at *31 (holding "contents" of communication were sufficiently alleged when plaintiff "identifies the information collected as

'the Website user's affirmative decisions, actions, choices [and] preferences,' including 'user input data' such as 'search queries, the user's name, age, gender, email address, location, and/or payment information'"); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 859 (C.D. Cal. 2024) ("Search terms constitute 'contents' of a communication."); *In re Zynga Privacy Litig.,* 750 F.3d 1098, 1108–09 (9th Cir. 2014) (URL data can contain contents of communications); *St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067, at *11 (N.D. Cal. Oct. 1, 2024) ("Descriptive URLs that reveal specific information about a user's queries reflect the 'contents' of a communication."); *Brown*, 685 F. Supp. 3d at 936 ("full-string detailed URL[s]" containing "users' actions on a website, and their search queries" can constitute content); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 944–45 (N.D. Cal. 2023) (finding allegations regarding user input data to sufficiently allege contents of communications).

At the pleading stage, Plaintiffs are not required to itemize every specific interaction they had with the Website. Plaintiffs allege they visited the Website "to seek and obtain information about GoFundMe's services and/or view certain fundraising campaigns." Compl. ¶¶ 79, 88. It is entirely plausible—and should be inferred in Plaintiffs' favor—that users seeking information about GoFundMe's services would use the Website's search functionality and other input fields to do so. Furthermore, even the act of navigating between fundraising pages on a platform like GoFundMe can reveal sensitive content about the user: a search for cancer fundraisers, disaster relief campaigns, or memorial funds discloses information about the user's personal circumstances.

Plaintiffs also clearly allege that their communications were intercepted in transit. "[A]llegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement." *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 838 (E.D. Cal. 2025); *see also Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 759 (N.D. Cal. 2023) (plaintiff sufficiently alleged that the interception occurs "contemporaneous[ly] with the sending or receipt of the message"); *St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067, at *17 (N.D. Cal. Oct. 1, 2024) ("'while . . . in transit' means 'contemporaneously'"). Applying a more demanding

standard "would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder." *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *15.

The Complaint here goes well beyond the bare minimum. It contains an entire section—titled "The Third Parties Intercept User Communications While in Transit"—that describes in technical detail exactly how contemporaneous interception occurs. Compl. ¶¶ 64–72. The Complaint alleges that the Third Parties: (1) *transform* data in real time, converting it into usable formats as it is received, before storage (Compl. ¶ 65); (2) *deduplicate* events transmitted through multiple channels in real time, comparing identifiers within the transmitted data to determine whether transmissions correspond to the same user action, before storage (*id.* ¶ 66); (3) *validate and filter* incoming communications in real time, detecting invalid or anomalous transmissions "immediately upon receipt" (*id.* ¶ 67); and (4) perform real-time *analytics* on user communications to determine their meaning and significance, triggering advertising delivery and automated responses while data is "in motion, prior to final storage" (*id.* ¶ 68). The Complaint identifies specific platforms which Google specifically uses for real-time analytics on incoming data streams at the "Ingest" phase before data is stored. Compl. ¶¶ 69–70.[3] These are not conclusory allegations; they are detailed technical descriptions of how real-time interception occurs—precisely the kind of factual specificity that courts have found sufficient.

In arguing that the Complaint lacks "facts explaining how a third party acquired, let alone read or attempted to read, any of Plaintiffs' 'communications' during transmission" (MTD at 26), GoFundMe ignores the Complaint's extensive stream-processing allegations entirely. GoFundMe's reliance on *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002), similarly misses the mark. *Konop* involved the reading posts that had been made on an earlier date and were already in electronic storage. That holding does not govern the real-time stream processing alleged here.

[3] If necessary, Plaintiffs can provide further details regarding use of specific third party platforms, including Meta, Transcend, Amplitude, Chartbeat, New Relic, Optimizely, and Hotjar.

GoFundMe also argues that Plaintiffs must allege that the Third Parties "read or attempted to read" communications "in real time during the transmission." MTD at 26. But CIPA's plain language is broader than GoFundMe concedes. CIPA prohibits both *reading or learning* the contents of communications in transit and *using or communicating any information so obtained.* Cal. Penal Code § 631(a). It also prohibits "*attempting*" to do so. *Id.* Neither the "use" prong nor the "attempt" prong requires a human to be reading the communication contemporaneously with its transmission. "CIPA prohibits both reading *or learning* the contents of any message in transit . . . *and using or communicating any information so obtained*." *Jackson v. LinkedIn Corp.*, 744 F. Supp. 3d 986, 994 (N.D. Cal. 2024) (emphasis added). To the extent the Third Parties log and process information in real time for use in advertising targeting, they "attempt" to learn the information "while" the communication is in transit. *See Doe v. Eating Recovery Ctr. LLC*, No. 23-cv-05561-VC, 2025 U.S. Dist. LEXIS 207952, at *13 (N.D. Cal. Oct. 17, 2025) (noting CIPA plausibly covers "attempts" to intercept communications via cookies).

Furthermore, "Section 631(a) relates not just to messages, reports, or communications that are 'in transit,' but also to those that are 'being sent from, or received at any place within this state." *Mitchell v. Sonesta Int'l Hotels Corp.*, No. CV 24-2603-GW-SSCx, 2024 U.S. Dist. LEXIS 186701, at *19–20 (C.D. Cal. Oct. 4, 2024) (citing Cal. Penal Code § 631(a) and *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985)). The California Supreme Court's decision in *Ribas* is instructive. In *Ribas*, "the California Supreme Court already indicated that a complaint survives a pleadings-based challenge and states a prima facie violation of Section 631 because it alleges that eavesdropping occurred either while the communication was 'in transit' or was 'being sent from' or 'received at' a place within California." *Mitchell*, 2024 U.S. Dist. LEXIS 186701, at *25 ("There is no indication in *Ribas* that the word 'while' was a key focus of the California Supreme Court's analysis."). The Complaint alleges that the Third Parties' cookies were executed on Plaintiffs' California-located devices, and the data was transmitted from those California devices to the Third Parties' servers. Compl. ¶ 143. This satisfies the territorial element of CIPA independently of any "in transit" dispute.

Defendant argues Plaintiffs have insufficiently pleaded Defendant's knowledge or intent in aiding third parties to commit CIPA violations. Not so. Plaintiff alleges that "Defendant voluntarily integrated 'third-party resources' from the Third Parties into its Website programming" which was "done so pursuant to agreements between Defendant and [the] Third Parties," that Defendant had complete control as to whether those cookies would be installed on Plaintiffs' devices. Compl. ¶¶ 18, 25. Plaintiffs also allege they made clear rejections of cookies and Defendant intentionally disregarded their choices. These allegations are sufficient to allege intent.

For example, in *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 945–46 (N.D. Cal. 2023), the plaintiff brought CIPA claims under Section 631 against Disney for causing a third-party to intercept user data including "search terms entered," "pages viewed," and other data similar to the allegations here. The court held that plaintiff adequately pled "aiding," because "it can be reasonably inferred that [Defendant] entered into a contractual agreement with [third party] under which [the third party] would collect information. . . . so that [Defendant] could market to and attract new customers." *Id.* at 954. So too here. *See also Walsh*, 2025 U.S. Dist. LEXIS 204652, at *46 (applying *James* and holding that substantially similar allegations were sufficient so "that the Court can reasonably infer from Plaintiffs' allegations that Dollar Tree entered into agreements with the identified third parties to place cookies on the devices of consumers who visit Dollar Tree's website").

The decision in *James* is consistent with other recent decisions from this Circuit holding that intent under CIPA is satisfied by pleading that Defendant intentionally "enable[d] a third party's eavesdropping on or interception of the communication." *See, e.g.*, *Doe v. Amgen, Inc.*, No. 2:23-cv-7448, 2024 U.S. Dist. LEXIS 144579, at *5 (C.D. Cal. Aug. 13, 2024); *Revitch*, 2019 U.S. Dist. LEXIS 186955, at *4 ("[T]he complaint adequately alleges that [Defendant] violated section 631 by enabling [a third party's] wrongdoing"); *Kotlarsz v. Integrity Vehicle Servs., Inc.*, No. 8:24-cv-00569, 2024 U.S. Dist. LEXIS 213565, at *22 (C.D. Cal. Sep. 3, 2024) ("it was the [D]efendant's website on which the [third party] operated."). And, regardless of whether Defendant specifically intended to enable *unlawful* conduct, courts routinely find

sufficient allegations that the defendant intended the *act* which "enable[d]" the privacy violation. *See, e.g., Doe*, 2024 U.S. Dist. LEXIS 144579, at *5.

**F. Plaintiffs Adequately Allege Violations of CIPA § 638.51.**

In their fourth cause of action, Plaintiffs allege that Defendant's conduct violates CIPA section 638.51, which prohibits any person from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." Compl. ¶¶ 147–57. Under CIPA, a "pen register" is defined as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). "Based on the expansive statutory definition of a pen register, tracking software could plausibly constitute a pen register under §§ 638.50 and 638.51." *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 931 (N.D. Cal. 2024) (internal quotation marks and citation omitted). Plaintiffs allege that the Third Party cookies and the corresponding software code installed by Defendant on its Website operate as pen registers under the meaning of the statute because they record users' IP address and user-agent information, which is routing, addressing, or signaling information. Compl. ¶¶ 147–157.

Defendant argues Plaintiff cannot state a claim under CIPA § 638.51 because it does not apply to the type of technology at issue here. MTD at 29–31. However, Defendant's argument contradicts the plain text of the statute, which is deliberately expansive. *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023) ("[T]he Court cannot ignore the expansive language in the California Legislature's chosen definition."). Section 638.51 does not limit its reach to "telephone" communications. To the contrary, the Legislature adopted language covering the use of a pen register or trap and trace device in connection with an "electronic communication." Courts in this District have repeatedly rejected Defendant's argument as contrary to the statute's plain language. *See, e.g.*, *Mirmalek v. L.A. Times Communs. LLC*, No. 24-cv-01797-CRB, 2024 U.S. Dist. LEXIS 227378, at *7 (N.D. Cal. Dec. 12, 2024) (collecting cases); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 931 (N.D. Cal. 2024). This is because "the California Legislature's chosen definition" of a pen register is "specific as

to the *type of data* [collected]," but "vague and inclusive as to the form of *the collection tool*" (i.e., a "device or process"). *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *7 (citing Section 638.51(b)). "Thus, the Court applies the plain meaning of a 'process' to [CIPA]. A process can take many forms. Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting,'" like Plaintiff alleges here. *Greenley*, 684 F. Supp. 3d at 1050. "By the plain meaning of § 638.50(b), collection of the recipient phone number or IP address is not a required element. All that is required is that the Trackers record addressing information transmitted by the user's *computer or smartphone* in connection with the outgoing HTTP request to [the] website, regardless of whether that addressing information pertains to the sender or the recipient of the communication at issue." *Shah*, 754 F. Supp. 3d 924, 929. "[T]he Court's analysis must begin with the statutory text, and if that text is clear, must end there. . . . Nothing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register." *Id*.

GoFundMe's legislative history argument—that Assembly Bill 929 (2015) demonstrates the Legislature intended CIPA's pen register provision to apply only to telephone number-derived location data, not internet identifiers—is unpersuasive. It certainly does not overcome the statutory text or the authorities cited above.

First, GoFundMe argues from silence: the fact that AB 929's digest mentioned telephone numbers does not mean the Legislature intended to exclude internet tracking. The bill amended an existing provision; it does not follow that the broader statute was limited to telephonic conduct. The California Supreme Court has repeatedly held that CIPA is a remedial statute that must be construed broadly to effectuate its purpose of protecting privacy. *Ribas v. Clark*, 38 Cal. 3d at 359.

Second, GoFundMe's reliance on the *pending* Senate Bill 690 is, if anything, confirmation that the current statute reaches this conduct. SB 690 was introduced precisely because CIPA *does* currently apply to cookie-based tracking—and some legislators wish to change that. A pending bill to narrow a statute's reach is not evidence of the statute's original meaning; it is evidence that the statute currently means what plaintiffs say it means. Indeed, the

senator's statement quoted by GoFundMe—that "suing under CIPA for activity that's already governed by the CCPA goes against legislative intent"—reflects one legislator's policy preference, not a judicial determination of the statute's current scope.

Defendant also argues that Plaintiffs have not adequately identified the specific routing information captured during their particular visits to the Website. But, as previously explained, that kind of detail is not required. The Complaint alleges that the Third Parties' cookies record and transmit: IP addresses (which identify the origin of network requests), user-agent information (which identifies the browser and device making requests), client identifiers (cid), and other addressing information. Compl. ¶¶ 54–60, 153. IP addresses are "addressing information"—the very information pen registers were designed to capture. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1008 (9th Cir. 2014) ("IP addresses constitute addressing information"). User-agent information identifies the requesting device and browser—precisely "signaling information" under the statute. This is sufficient to allege a pen register violation.

**G. Plaintiffs Adequately Allege Their Fraud Claim.**

In arguing that Plaintiffs' fraud claim fails, Defendant repeats its Rule 9(b) argument. MTD at 31–32. As previously explained above, Plaintiffs' fraud claim is adequately alleged. Each element of fraud is present: GoFundMe made a false representation (that "Reject All" would prevent cookie placement); it knew or should have known the representation was false given its control over the Website's code; it intended users to rely on the representation by continuing to browse the Website; Plaintiffs did rely on it; and they were damaged as a result. Compl. ¶¶ 158–169.

**H. Plaintiffs' Unjust Enrichment Claim May Proceed.**

"Courts in this District have regularly held that even if plaintiffs have suffered no economic loss from the disclosure of their plausibly private information, they are allowed to proceed through the pleadings stage with a claim for unjust enrichment to recover the gains that a defendant realized from its allegedly improper conduct." *Haleon*, 2025 U.S. Dist. LEXIS 169503, at *41. Here, Plaintiffs have adequately alleged, as an alternative to their other claims, that it would be unjust for Defendant to retain the benefit of invading Plaintiffs' and Class members' privacy and any

profits earned thereon. Compl. ¶¶ 171–79.

### I. The Class Allegations Should Not Be Stricken.

GoFundMe moves under Rule 12(f) to strike Plaintiffs' class allegations, arguing that the proposed class is facially overbroad and cannot satisfy Rule 23. MTD at 32–33. This motion should be denied. Motions to strike class allegations are disfavored and should be granted only in exceptional circumstances where it is clear on the face of the complaint that no class could be certified. *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990–91 (N.D. Cal. 2009).

The proposed class—"[a]ll persons who browsed the Website in the State of California after clicking or selecting the 'Reject all' button in the popup cookies consent banner"—is not facially overbroad. It is defined precisely by the conduct alleged to be unlawful: clicking "Reject All" on GoFundMe's cookie banner, which GoFundMe then disregarded. Compl. ¶ 97. This definition ties class membership directly to the alleged harm and does not require individualized inquiry to identify class members—either a person clicked "Reject All" or they did not.

GoFundMe argues that establishing liability would require individualized inquiries into whether cookies fired after each user's rejection. But this is a question about the consistency of GoFundMe's conduct, not about individual class members' circumstances. The Complaint alleges—and the screenshots demonstrate—that GoFundMe's Website is programmed to fire tracking cookies regardless of users' cookie selections. Whether that programmatic behavior is consistent across class members is a common question of fact that is particularly amenable to class treatment. Arguing that commonality cannot be established because GoFundMe might have *sometimes* honored cookie rejections is itself a defense on the merits, not a basis for striking class allegations at the pleading stage.

GoFundMe's observation that the proposed class does not require that "cookies in fact continued to fire" after rejection does not make the class overbroad—it reflects the appropriate pleading-stage posture of framing the class around the conduct giving rise to the claims. Whether all class members' data was actually captured is a question of fact to be addressed at class certification, after discovery. Striking class allegations now would be premature.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant's motion to dismiss. In the alternative, Plaintiffs request leave to amend to correct any defects the Court identifies. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990).

Dated: June 3, 2026

**GUTRIDE SAFIER LLP**

*/s/ Anthony J. Patek*

Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Anthony J. Patek (State Bar No. 228964)
anthony@gutridesafier.com 100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*