**BAKER & HOSTETLER LLP**
Bethany G. Lukitsch (SBN 314376)
*blukitsch@bakerlaw.com*
Kamran B. Ahmadian (SBN 314566)
*kahmadian@bakerlaw.com*
1900 Avenue of the Stars | Suite 2700
Los Angeles, CA 90067-4508
Telephone: 310.820.8800
Facsimile: 310.820.8859

**BAKER & HOSTETLER LLP**
Safina Motiwala (SBN 358668)
*smotiwala@bakerlaw.com*
600 Montgomery Street | Suite 3100
San Francisco, CA 94111
Telephone: 415.659.2600
Facsimile: 415.659.2601

*Attorneys for Defendant*
GOFUNDME, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

SAL MUNOZ and SHIRLEY VANASCH, individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

GOFUNDME, INC.,

Defendant.

Case No.: 3:26-CV-01217-TLT

*[Assigned to the Hon. Trina L. Thompson]*

**DEFENDANT GOFUNDME, INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION**

*[Filed concurrently with the Declarations of Alex Krylov and Kamran B. Ahmadian]*

**Date:** September 8, 2026
**Time:** 2:00 P.M.
**Dept.:** Courtroom 9, 19th Floor

**Action Filed:** February 9, 2026



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES ........ iii

I. INTRODUCTION ........ 1

II. ARGUMENT ........ 2

A. Mr. Murray's Declaration is Sufficient to Establish that Plaintiff Munoz Assented to GoFundMe's Terms of Service. ........ 2

B. The Court Should Disregard Plaintiff Munoz's Declaration. ........ 5

C. Plaintiff Munoz Had Sufficient Notice of GoFundMe's Terms of Service. ........ 7

III. CONCLUSION ........ 10


BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bender v. Twilio Inc.*,
No. 24-CV-04914-AMO, 2025 WL 2308484 (N.D. Cal. Aug. 11, 2025)....3, 8

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022)....8

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 (9th Cir. 2025)....1, 7, 8, 9, 10

*Echeverria-Corzan v. Michaels Stores, Inc.*,
No. 4:25-CV-05839 YGR, 2026 WL 668533 (N.D. Cal. Feb. 6, 2026)....4

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024)....3, 8

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025)....8

*Gonzalez v. Peak California Rest. Grp., LLC*,
No. 25-CV-04068-AMO, 2026 WL 765325 (N.D. Cal. Mar. 18, 2026)....6

*Houtchens v. Google LLC*,
649 F. Supp. 3d 933 (N.D. Cal. 2023)....6

*Kroskey v. Elevate Labs, LLC*,
No. 5:24-CV-08113-EJD, 2025 WL 1507091 (N.D. Cal. May 27, 2025)....3

*Molina v. Scandinavian Designs, Inc.*,
No. 13-CV-04256 NC, 2014 WL 1615177 (N.D. Cal. Apr. 21, 2014)....6

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)....7

*Navarro v. SmileDirectClub, Inc.*,
No. 22-CV-00095-WHO, 2022 WL 1786582 (N.D. Cal. June 1, 2022)....4

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024)....7, 8

*Sarhadi v. Pear Health Labs, Inc.*,
No. 24-CV-07921-TLT, 2025 WL 1350033 (N.D. Cal. Apr. 18, 2025)....3, 7, 8

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

## I. INTRODUCTION

Plaintiff Sal Munoz's Opposition ("Opposition" or "Opp.") rests on shifting facts, unsupported attacks on admissible evidence, and a misreading of controlling law. None undermines GoFundMe's clear showing that Plaintiff assented to its Terms of Service and Arbitration Agreement.

*First*, Plaintiff Munoz tries to rewrite his own timeline to avoid arbitration. While not pled in the Complaint, Plaintiff Munoz now claims that he first visited GoFundMe's Website in the "summer 2025," and during that visit, he allegedly saw and selected a "Reject all" option on the Website's cookie banner. But that statement is demonstrably inaccurate since the "Reject all" language was removed from the Website's cookie banner well before the summer of 2025. These inconsistencies render his account unreliable and confirm that his memory cannot overcome GoFundMe's records showing he created an account and accepted GoFundMe's Terms of Service in 2017. Even if taken at face value, Plaintiff Munoz's declaration provides an independent basis to compel Plaintiff Munoz's claims to arbitration.

*Second*, Plaintiff Munoz attacks GoFundMe's evidentiary showing while ignoring well-established precedent in this District that courts routinely rely on similar company declarations to establish assent to terms. In totality, GoFundMe's evidence—including the Murray Declaration and the additional evidentiary support provided in connection with this Reply, establishes that Plaintiff assented to the Terms of Service and failed to opt out of the Arbitration Agreement. Plaintiff offers no credible evidence to rebut that showing; his inability to recall account creation does not create a dispute of fact.

Finally, Plaintiff Munoz's reliance on *Chabolla v. ClassPass* is misplaced. That decision does not establish a bright-line rule and instead emphasizes a fact-specific inquiry. The deficiencies that doomed ClassPass's design—cluttered, multi-page screens, distracting marketing content, low-contrast text, and ambiguous action buttons—are absent here. GoFundMe used a clean, single-page flow, standard-size and high-contrast text, and clear language stating that proceeding constitutes agreement to the Terms of Service. Under governing Ninth Circuit authority, that design provides reasonably conspicuous notice as a matter of law.

In short, the record shows that Plaintiff agreed to GoFundMe's Terms of Service, including its Arbitration Agreement. Plaintiff Munoz's contrary arguments rely on inconsistent recollections, unsupported evidentiary challenges, and inapposite case law. The Court should enforce the Arbitration Agreement and compel Plaintiff Munoz's claims to individual arbitration.

## II. <u>ARGUMENT</u>

As a preliminary matter, Plaintiff Munoz does not contest, and therefore concedes, that (1) GoFundMe's Terms of Service contain a valid arbitration provision that is binding to any individual who affirms consent, Mot. at 4–6; (2) Plaintiff Munoz's claims alleged in his Complaint are within the scope of the Arbitration Agreement, *id.* at 8–10; (3) under California law, a sign-in wrap agreement is an acceptable method to assent to Terms of Service, *id.* at 4–6; (4) GoFundMe's Arbitration Agreement incorporates the American Arbitration Association ("AAA") rules, *id.* at 10–11; (5) GoFundMe's Terms of Service have delegated any issues of arbitrability to the arbitrator itself, *id.* at 10–11; and (6) if this Motion to Compel Arbitration is granted, it is appropriate for Plaintiff Munoz's claims alleged in his Complaint to be dismissed or stayed pending the completion of arbitration, *id.* at 11. Accordingly, GoFundMe will not focus its arguments on these sections already briefed in its Motion to Compel Arbitration and conceded by Plaintiff Munoz in his Opposition.

### A. <u>Mr. Murray's Declaration is Sufficient to Establish that Plaintiff Munoz Assented to GoFundMe's Terms of Service.</u>

Plaintiff Munoz challenges the Murray Declaration submitted by GoFundMe claiming it to be inadmissible hearsay. More specifically, Plaintiff claims Murray relies on business records for his testimony without providing the appropriate foundation or personal knowledge. *See* Opp. at 10-13; *see also* Dkt. No. 18-1, Declaration of Matthew Murray in Support of GoFundMe's Motion to Compel Arbitration ("Murray Decl."). Plaintiff Munoz is wrong. The Murray Declaration adequately establishes the existence of the Arbitration Agreement between GoFundMe and Plaintiff Munoz by referencing internal GoFundMe records and outlining the exact sign-up consent flow process Plaintiff Munoz completed back in 2017 when he created his GoFundMe account. *See id.*, ¶¶ 6, 8–10, 14.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Courts in this District routinely find comparable company declarations admissible and sufficient on the merits. *See Bender v. Twilio Inc.*, No. 24-CV-04914-AMO, 2025 WL 2308484, at *1–2 (N.D. Cal. Aug. 11, 2025) (Martínez-Olguín, J.) (granting motion to compel arbitration, relying on company declaration depicting the consent flow and associated terms on the Calm application, and the declarant's assertion that "Calm.com has no record of Bender ever opting out of binding arbitration."); *Kroskey v. Elevate Labs, LLC*, No. 5:24-CV-08113-EJD, 2025 WL 1507091, at *1–2 (N.D. Cal. May 27, 2025) (Davila, J.) (granting motion to compel arbitration where defendant submitted company declaration and account-creation screen demonstrating that plaintiff assented to terms during signup flow, and relying on record evidence describing how the platform presented terms and captured assent); *Sarhadi v. Pear Health Labs, Inc.*, No. 24-CV-07921-TLT, 2025 WL 1350033, at *8 (N.D. Cal. Apr. 18, 2025) (Thompson, J.), *reconsideration denied*, No. 24-CV-07921-TLT, 2025 WL 4644296 (N.D. Cal. July 11, 2025) (granting motion to compel declaration, relying on company declaration which outlined consent flow process including "to create an account, Plaintiff was required to enter his name, email, and password and to affirmatively click a button stating 'Join Aaptiv.'"); *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 919, 922–23 (N.D. Cal. 2024) (Davila, J.) (granting motion to compel arbitration, relying on the company declaration mimicking "Coursera's 2015 sign-in flow" to demonstrate "[p]laintiff agreed to Coursera's then-operative Terms of Use.").

Based on the Opposition and correspondence with his counsel, Plaintiff Munoz appears to impose an impracticable standard by demanding that GoFundMe produce a business record resembling a recording establishing that Plaintiff Munoz ***himself***—rather than someone else who had access to his Facebook credentials—assented to GoFundMe's Terms of Service on March 2, 2017. *See* Opp. at 7, 11–12; *see also* Dkt. Nos. 30-1 & 30-2, Declaration of Anthony Patek in Opposition to Defendant's Motion to Compel Arbitration ("Patek Decl.") ¶ 2, Exh. A at 1 ("I don't see any evidence that he navigated the account creation screenshot in your motion…where is the evidence in GoFundMe's business records indicating that he submitted his email, as opposed to someone else doing so?").[1] In order to confirm this was not a case of mistaken identity, GoFundMe

[1] Notably absent from the Patek Declaration is GoFundMe's subsequent follow-up and continued willingness to meet and confer further on the issues. *See* Exhibits A and B to Declaration of





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

provided Plaintiff Munoz with the email address and profile photo associated with the GoFundMe account at issue. *See id.* at 1–3. The Opposition "concede[s] that the screenshot later provided by counsel" well in advance of when the Opposition was filed contains Plaintiff Munoz's "correct email address." *See* Opp. at 12 n.2. Plaintiff Munoz does not contend that another individual had access to his email address or his Facebook credentials, nor does he claim that anyone would have been able to use his Facebook or email to sign up for a GoFundMe account without his knowledge. These concessions should be dispositive for this Motion.

Nevertheless, out of an abundance of caution and without conceding that the Murray Declaration is insufficient, GoFundMe provides supplementary evidentiary support to establish that Plaintiff Munoz created a GoFundMe account in 2017. *See generally* Declaration of Alex Krylov ("Krylov Decl."); *see also Echeverria-Corzan v. Michaels Stores, Inc.*, No. 4:25-CV-05839 YGR, 2026 WL 668533, at *4 (N.D. Cal. Feb. 6, 2026) (Rogers, J.) (permitting supplemental briefing and declaration to establish whether plaintiff signed up for a Michaels Rewards account); *see also Navarro v. SmileDirectClub, Inc.*, No. 22-CV-00095-WHO, 2022 WL 1786582, at *2 (N.D. Cal. June 1, 2022) (Orrick, J.) (granting motion to compel arbitration where defendant submitted a supplemental declaration).

GoFundMe maintains an internal operations platform commonly referred to as the "Stats Tool," or "Stats Hub". *See* Krylov Decl. ¶ 11. It is a centralized dashboard and landing page for account and fund management tools used by GoFundMe's Customer Care, Trust & Safety, Compliance, and other operational teams to review user account information and perform a range of account management and compliance functions. *See id.* GoFundMe's "Stats Hub" confirms that Plaintiff Munoz created a GoFundMe account using his Facebook log in credentials on March 2, 2017 at approximately 13:18:15. *See* Murray Decl. ¶ 5; *see also* Krylov Decl. ¶ 16. The email address associated with Plaintiff Munoz's account is "menloak77@yahoo.com" which Plaintiff concedes belongs to him. *See* Opp. at 12 n.2; *see also* Krylov Decl. ¶ 15. Because Plaintiff Munoz

---

Kamran B. Ahmadian in Support of Reply to GoFundMe's Motion to Compel Arbitration ("Ahmadian Decl."). On June 2, 2026, Mr. Ahmadian followed up once more to further discuss the issue, *see* Ahmadian Decl. ¶ 3, Exh. A at 1, and Mr. Patek responded, "I think a call will be a waste of time at this point." *See id.* ¶ 3, Exh. B at 1.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

signed up through his Facebook, the "Stats Hub" also includes a profile picture and a Facebook ID. *See* Patek Decl. ¶ 2, Exh. A at 1–3; Krylov Decl. ¶ 16. A user's information would not be stored on GoFundMe's internal dashboard unless that user created a GoFundMe account. Krylov Decl. ¶¶ 11, 13. In other words, GoFundMe would not have an account tied to a particular email address and Facebook account that was not created by the user. *Id.*. For further clarity, because it was raised by Plaintiff Munoz's counsel in his prior correspondence, the "Processor" section of the profile denotes whether that user has saved a payment processor account—i.e., a bank account or credit card—with GoFundMe. "Account setup incomplete" simply means that Plaintiff Munoz did not save a payment process to his account. *Id.* ¶ 17; Opp. at 3. Lastly, as previously attested to in GoFundMe's Motion to Compel Arbitration, which Plaintiff Munoz does not dispute, Plaintiff Munoz did not opt out of GoFundMe's Arbitration Agreement. *See* Murray Decl. ¶ 14.

Accordingly, GoFundMe has more than satisfied its burden to establish that Plaintiff Munoz assented to GoFundMe's Arbitration Agreement and respectfully requests this Court to compel Plaintiff's Munoz's claims to arbitration.

### B. The Court Should Disregard Plaintiff Munoz's Declaration.

In support of his Opposition, Plaintiff Munoz submitted a declaration ("Munoz Decl."), in which he claims that, despite GoFundMe's records, he "do[es] not recall signing up for a GoFundMe account" in March 2017. *See* Munoz Decl. ¶ 5. He does recall, however, visiting the Website in the summer of 2025, during which he was "presented with a cookie consent banner" and clicked the "Reject all" selection. *Id.* ¶¶ 2–3; *see also* Compl. ¶¶ 79–81. Even if the Court considers Plaintiff Munoz's self-serving declaration, the Court should give it little weight because his recollection of the alleged visit is demonstrably inaccurate. Plaintiff Munoz could not have selected "Reject all" on GoFundMe's cookie banner in the summer of 2025 because GoFundMe removed that language nearly a year earlier. *See* Krylov Decl. ¶ 9; *see also* Murray Decl., ¶ 4, Exh. A (present day consent banner presents "Do Not Sell/Share My Personal Information" button, not "Reject all" button). Indeed, GoFundMe's Website has not displayed a "Reject all" button on its consent banner to California Website visitors ***since May 2024***. Krylov Decl. ¶ 9; *see also* Munoz Decl., ¶¶ 2–3; Compl. ¶ 79 ("Plaintiff Munoz visited the Website…while located in ***California***, on



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

one or more occasions during the last four years.") (emph. added).

Plaintiff Munoz's assertion that he does not recall visiting the Website on March 2, 2017 and creating a GoFundMe account through his Facebook account is not dispositive and does little to rebut GoFundMe's proffered evidence that an account was created using Plaintiff Munoz's Facebook account.[2] *Houtchens v. Google LLC*, 649 F. Supp. 3d 933, 942 (N.D. Cal. 2023) (Freeman, J.) ("Plaintiffs' bare assertion that they do not recall the process does not overcome [] Google's evidence.") (int. cit. omitted). And Plaintiff Munoz cannot avoid honoring his agreement to arbitrate simply because he does not recall entering any such agreement or even reviewing the terms. *See e.g.*, *Molina v. Scandinavian Designs, Inc.*, No. 13-CV-04256 NC, 2014 WL 1615177, at *3 (N.D. Cal. Apr. 21, 2014) (Cousins, M.J.) ("[O]ne who accepts or signs an instrument, which on its face is a contract, is deemed to assent to all its terms, and cannot escape liability on the ground that he has not read it.") (int. quot. omitted). "Not recalling an event is not evidence that the event did not occur, and courts have consistently rejected the notion that an [individual's] failure to recall signing an agreement establishes lack of an agreement. *See Gonzalez v. Peak California Rest. Grp., LLC*, No. 25-CV-04068-AMO, 2026 WL 765325, at *3 (N.D. Cal. Mar. 18, 2026) (Martínez-Olguín, J.) (granting motion to compel arbitration despite plaintiff's purported failure to recall signing an agreement).[3] Accordingly, the Court should accord Plaintiff Munoz's Declaration little weight—if not disregard it entirely.

However, if the Court does consider Plaintiff Munoz's Declaration at face value, the Declaration ***provides an additional basis to compel Plaintiff Munoz's claims to arbitration***. If Plaintiff Munoz visited the GoFundMe Website during the summer of 2025, ***after*** May 2024, Plaintiff Munoz would have been presented with a consent banner similar to what is currently present on GoFundMe's Website, a "Do Not Sell/Share opt-out banner" with no "Accept all" or

[2] Thus, either Plaintiff Munoz visited the Website earlier than he now recalls, or he did not select "Reject all" when he visited the Website from California in 2025 because GoFundMe's cookie banner did not present that option. Krylov Decl. ¶ 9.

[3] Plaintiff Munoz's claim that he has never donated to a campaign on GoFundMe is irrelevant. Munoz Decl. ¶ 5. Indeed, a visitor to the Website can create a GoFundMe account, thereby agreeing to GoFundMe's Terms of Service, and never donate to a campaign. Nor has GoFundMe represented to Plaintiff Munoz in its filings or subsequent correspondence that he donated through GoFundMe. *See* Patek Decl. ¶ 2, Exh. A at 2 ("We also aren't arguing that he contributed to a campaign. We argue that he agreed to the Terms when he ***created*** his GoFundMe account.").





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

"Reject all" control. Krylov Decl. ¶ 9. Since May 2024, its heading and wording would have been refined from time to time, none of which added or removed an "Accept all" or "Reject all" control. *Id.* Additionally, it would include a similar provision which states: "For more information, please see our Privacy Notice and Cookie Policy. By continuing to use our site, you agree to our Terms of Service." *Id.* Moreover, the Privacy Notice, Cookie Policy, and Terms of Service would have been clearly hyperlinked and include a checkbox option which states: "Do Not Sell/Share My Personal Information."; a "Confirm" button underneath; and lastly a "See Your Privacy Notice" which is hyperlinked. *See* Murray Decl. ¶ 4, Exh. A; *see also* Krylov Decl. ¶ 9. The current Terms of Service hyperlinked at GoFundMe's consent banner contains a binding arbitration agreement and class action waiver." Murray Decl. ¶ 10, Exh. C at pg. 50–51. During his Website interaction, Plaintiff Munoz "visited and ***browsed*** the GoFundMe website—www.gofundme.com (the 'Website')," Munoz Decl. ¶ 2 (emph. added). Through his affirmative action of browsing the GoFundMe Website, Plaintiff Munoz assented to GoFundMe's Terms of Service by "continuing to use [GoFundMe's] site." *See* Murray Decl. ¶¶ 4, 10, Exhs. A & C at 50–51; *see also Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024) (affirming district court decision to compel arbitration where one of the plaintiffs assented to defendant's "browsewrap agreement[], in which a website offers terms that are disclosed only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website.") (int. quot. omitted). And as previously attested to in GoFundMe's Motion to Compel Arbitration, which Plaintiff Munoz does not dispute, Plaintiff Munoz did not opt out of GoFundMe's Arbitration Agreement. *See* Murray Decl. ¶ 14.

Accordingly, even if this Court does give weight to Plaintiff Munoz's Declaration, Plaintiff Munoz's claims are subject to arbitration for an additional basis. To the extent Plaintiff Munoz's Declaration conflicts with the evidence proffered by GoFundMe, the Court should resolve any disputes "in favor of arbitration." *Sarhadi*, 2025 WL 1350033, at *3 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

### C. Plaintiff Munoz Had Sufficient Notice of GoFundMe's Terms of Service.

Plaintiff Munoz argues the sign-up screen used by GoFundMe in 2017 did not provide

sufficiently conspicuous notice to Plaintiff Munoz—heavily relying on the Ninth Circuit's decision in *Chabolla v. ClassPass Inc.*, 129 F.4th 1147 (9th Cir. 2025); *see also* Opp. at 4. Contrary to Plaintiff Munoz's assertions, *Chabolla* does not support a denial of GoFundMe's Motion, and instead, confirms that, "there is no bright-line test for finding that a particular design element is adequate in every circumstance." *Chabolla*, 129 F.4th at 1156–57. The "[v]isual conspicuousness is a 'fact-intensive' inquiry that requires the Court to consider the 'totality of the circumstances.'" *Bender*, 2025 WL 2308484, at *3 (quoting *Godun v. JustAnswer LLC*, 135 F.4th 699, 709 (9th Cir. 2025)). Thus, the reasonably conspicuous inquiry is highly subjective.

In *Chabolla*, the Ninth Circuit found the sign-in wrap agreement unenforceable due to a combination of factors that are not present here. Specifically, the ClassPass sign-up flow was spread across multiple pages, cluttered with superfluous images of people exercising, and colors that distracted from the terms. *Chabolla*, 129 F.4th at 1156–58, 1165–69; *see also Sarhadi*, 2025 WL 1350033, at *5 ("A cluttered design may contain 'visual elements [that] draw the user's attention away' from important terms.") (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022)); *see also* Opp. at 4. By contrast, GoFundMe presents its notice on a single, uncluttered page that does not require the user to scroll to view its Terms of Service hyperlink. *See Bender*, 2025 WL 2308484, at *3; *Ghazizadeh*, 737 F. Supp. at 926; *Chabolla*, 129 F.4th at 1157 (distinguishing *Oberstein* where "[t]he notices were not buried on the bottom of the webpage or placed outside the action box…") (int. quot. omitted).[4]

Plaintiff Munoz further argues that GoFundMe's notice to its Terms of Service was not sufficiently conspicuous because the hyperlink was not capitalized or in blue font. Opp. at 7. But, as noted in *Chabolla*, there is no bright-line rule that a particular design element is adequate. *Chabolla*, 129 F.4th at 1156. Indeed, the Ninth Circuit has found in other cases "[t]hat the links are not blue, underlined, or capitalized does not undercut the district court's conclusion that [defendant] provided [plaintiff] with reasonably conspicuous notice" of the Terms. *Patrick*, 93 F.4th at 477 (int. quot. omitted) (holding that defendant provided conspicuous notice where the

[4] Plaintiff Munoz improperly suggests that GoFundMe's reliance on *Ghazizdeh* is misplaced because it was "abrogated" by *Chabolla*. Opp. at 9. This is not true. Indeed, this Court has relied on the findings in *Ghazizdeh* even after *Chabolla*. *See Sarhadi*, 2025 WL 1350033, at *6.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

phrase "Terms of Use" was the same color as other links on the page).

Notably, the text used to disclose GoFundMe's Terms of Service does not suffer from many of the deficiencies the Ninth Circuit has previously identified—i.e., it is neither "considerably smaller than the font used in the surrounding website elements" nor "so small that it is barely legible to the naked eye." *Id.* (int. quot. omitted). Here, GoFundMe presents its Terms of Service and Privacy Policy language in 14-pixel font—the same standard text size used throughout the Website at the time. Murray Decl. ¶ 6. By contrast, in *Chabolla*, the court found that "Screen #1," displayed assent language in a faded gray font that failed to contrast with the background and was "notably timid in both size and color." *Chabolla*, 129 F.4th at 1157, 1166. GoFundMe's design does the opposite. It uses a darker text that sharply contrasts with the light gray background, making the Terms of Service readily apparent to a reasonably prudent visitor. *See* Murray Decl. ¶ 6. Although *Chabolla* identified similar issues with "Screen #2" and "Screen #3," the court, "decline[d] to consider any further whether the notices on screens 2 and 3 are conspicuous enough." *Chabolla*, 129 F.4th at 1157–58, 1168.

*Chabolla* also turned on the confusing nature of ClassPass's assent mechanism. The sign-up flow used multiple different action buttons—labeled "Continue" and "Redeem now"—that obscured whether the user was agreeing to certain terms, as opposed to merely providing an email address or redeeming a promotion. *Id.* at 1158–59, 1165–69. Furthermore, ClassPass's flow incorporated marketing language—such as "Exclusive deal for friends of ClassPass" and "$40 OFF FIRST MONTH"—that could further confuse visitors about the nature of the action they were taking. *Id.* at 1173–74.

By contrast, GoFundMe's design contains no marketing language. Instead, it clearly states at the top of the flow that "Signing Up is Free"—leaving no ambiguity that this process will lead to the visitor creating a GoFundMe account. *See* Murray Decl. ¶ 6. Further, GoFundMe's consent flow presents two-sign up options on one screen, and language clearly stating that "[b]y continuing, you agree with the GoFundMe terms and privacy policy," providing for a more streamlined sign-up process. *See id.* Plaintiff Munoz's contention this language is confusing because a user would likely understand it to mean that "by continuing with a donation" it consented to the Terms of



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Service, not by signing up for a GoFundMe account is unavailing. As Plaintiff Munoz concedes in his Complaint, Plaintiff Munoz understands that GoFundMe users can visit the GoFundMe Website "to seek and obtain information about GoFundMe's services and/or view certain fundraising campaigns," Compl., ¶ 79, not to only make donations through the Website.

In sum, the *Chabolla* case does not establish a bright-line rule rendering any particular design element inadequate in all circumstances. Rather, it underscores that when analyzing the sufficiency of a sign-in wrap agreement, courts must undertake a fact specific inquiry that weighs the overall presentation. *Chabolla*, 129 F.4th at 1156–57. Under that analysis, GoFundMe provided Plaintiff Munoz with reasonably conspicuous notice of its Terms of Service when he signed up for a GoFundMe account.

## III. CONCLUSION

For all of the foregoing reasons, GoFundMe respectfully requests that the Court grant GoFundMe's Motion and compel Munoz's claims to individual arbitration. Should the Court determine, after reviewing the Motion and supporting declarations, that GoFundMe has not yet established the formation of an agreement to arbitrate with Plaintiff Munoz, GoFundMe respectfully requests leave to take limited discovery on this discrete issue of arbitrability and to amend its Motion.

Dated: June 24, 2026

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: */s/ Kamran B. Ahmadian*
Bethany G. Lukitsch
Kamran B. Ahmadian
Safina Motiwala

*Attorneys for Defendant*
GOFUNDME, INC.