**BAKER & HOSTETLER LLP**
Bethany G. Lukitsch (SBN 314376)
*blukitsch@bakerlaw.com*
Kamran B. Ahmadian (SBN 314566)
*kahmadian@bakerlaw.com*
1900 Avenue of the Stars | Suite 2700
Los Angeles, CA 90067-4508
Telephone: 310.820.8800
Facsimile: 310.820.8859

**BAKER & HOSTETLER LLP**
Safina Motiwala (SBN 358668)
*smotiwala@bakerlaw.com*
600 Montgomery Street | Suite 3100
San Francisco, CA 94111
Telephone: 415.659-2600
Facsimile: 415.659-2601

*Attorney for Defendant*
GOFUNDME, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

SAL MUNOZ and SHIRLEY VANASCH, individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

GOFUNDME, INC.,

Defendant.

Case No.: 3:26-CV-01217-TLT

*[Assigned to the Hon. Trina L. Thompson]*

**DEFENDANT GOFUNDME, INC.'S REPLY IN SUPPORT OF ITS NOTICE OF MOTION AND MOTION TO DISMISS**

*[Filed concurrently with Declaration of Alex Krylov]*

**Date:** September 8, 2026
**Time:** 2:00 P.M.
**Dept.:** Courtroom 9, 19th Floor

**Action Filed:** February 9, 2026

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... iii
I. INTRODUCTION .......... 1
II. PLAINTIFFS LACK ARTICLE III STANDING .......... 1
III. PLAINTIFFS' ALLEGATIONS FAIL TO SATISFY RULE 9(B) .......... 4
IV. PLAINTIFFS' COMMON LAW PRIVACY CLAIMS FAIL .......... 6
V. PLAINTIFFS' CIPA CLAIMS FAIL .......... 9
    A. Plaintiffs' Wiretapping (CIPA § 631) Claim Is Not Sufficiently Pled .......... 9
    B. Plaintiffs' Pen Register (CIPA § 638.51) Claim Is Not Sufficiently Pled .......... 12
VI. PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS .......... 14
VII. PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE STRICKEN .......... 15
VIII. CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blaker v. NetScout Systems, Inc.*,
No. 25STCV31283, 2026 WL 1709143 (Cal. Super. May 27, 2026) ....................................13

*Bradshaw et al. v. Lowe's Cos., Inc.*,
2025 WL 3171740 (S.D. Cal. Nov. 12, 2025) ....................................4

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ....................................7, 9

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ....................................7

*Crano v. Sojern, Inc.*,
No. 3:25-CV-02600-JSC, 2026 WL 1670136 (N.D. Cal. June 9, 2026) ....................................3, 8

*de Ayora v. Inspire Brands, Inc.*,
No. 25-CV-03645-AGT, 2025 WL 3707561 (N.D. Cal. Dec. 22, 2025) ....................................4, 5

*Doe v. Amgen*,
2024 WL 3811251 (C.D. Cal. Aug. 13, 2024)....................................11, 12

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ....................................12

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025)....................................11

*DellaSala v. Samba TV, Inc.*,
2025 WL 3034069 (N.D. Cal. Oct. 30, 2025)....................................3, 4

*ESG Cap. Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) ....................................14

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025) ....................................9, 14

*Gabrielli v. Motorola Mobility LLC*,
No. 24-CV-09533-JST, 2025 WL 1939957 (N.D. Cal. July 14, 2025)....................................6

*Garcia v. Blackhawk Network, Inc.*,
2026 WL 925028 (C.D. Cal. Apr. 1, 2026) ....................................8

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023)....................................13

*Gutierrez v. Converse Inc.*,
2025 WL 1895315 (9th Cir. July 9, 2025)....................13

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022)....................8

*Hart v. TWC Prod. & Tech. LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021)....................7

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024)....................10

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024)....................11

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)....................2, 4, 7

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014)....................6

*In re Zynga Priv. Litig.*,
750 F.3d 1098, 1102 (9th Cir. 2014)....................9

*Ingraham, et al. v. Capital One Financial Corp.*,
No. 24-cv-05985-TLT, 2026 WL 1759155 (N.D. Cal. June 16, 2026)....................3, 15

*Insurance King Agency, Inc., v. Ask Media Group, LLC*,
No. 24-CV-09509-TLT, 2025 WL 4785111 (N.D. Cal. May 2, 2025)....................4

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023)....................11

*Katz-Lacabe v. Oracle America, Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023)....................7, 10

*Kotlarsz v. Integrity Vehicle Servs., Inc.*,
2024 WL 4800695 (C.D. Cal. Sep. 3, 2024)....................11, 12

*Mirmalek v. L.A. Times Commc'ns LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024)....................12

*Morilha v. Alphabet Inc.*,
2024 WL 5205542 (N.D. Cal. Dec. 23, 2024)....................8

*Neubronner v. Milken*,
6 F.3d 666 (9th Cir. 1993)....................6

*Oganyan v. Biolife Plasma Servs. L.P.*,
2025 WL 2979619 (E.D. Cal. Oct. 22, 2025)....................4

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Ortiz v. Foris Dax, Inc.*,
No. 25-CV-08950-EMC, 2026 WL 1430720 (N.D. Cal. May 21, 2026)............................8, 14

*Pemberton v. Rest. Brands Int'l, Inc.*,
No. 25-CV-03647-JSC, 2025 WL 3268404 (N.D. Cal. Nov. 24, 2025)..................................6

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ..........................................................................1, 2, 4

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)...............................................................11, 12

*Rodriguez v. Culligan*,
2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) ....................................................................4

*Rodriguez v. Ink Am. Int'l Grp. LLC*,
2025 WL 4034985, at *4 (Cal. Super. Dec. 10, 2025) ..................................................13

*Shah v. MyFitnessPal, Inc.*,
No. 25-CV-04430-PCP, 2026 WL 216334 (N.D. Cal. Jan. 27, 2026) ....................................5

*Silver v. Stripe Inc.*,
No. 4:20-CV-08196-YGR, 2021 WL 3191752 (N.D. Cal. July 28, 2021)...............................7

*St. Aubin v. Carbon Health Techs., Inc.*,
No. 24-CV-00667-JST, 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024)...............................9, 11

*Timothee v. Meta Platforms, Inc.*,
No. 25-CV-05106-LB, 2026 WL 1130363 (N.D. Cal. Apr. 27, 2026)..................................15

*Torres v. SeatGeek, Inc.*,
No. 25-CV-07118-LB, 2026 WL 1495202 (N.D. Cal. May 28, 2026) ................................3, 8

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ..........................................................4, 10, 11

*Variety Media, LLC v. Superior Court*,
No. B350578 (Cal. Ct. App., 2nd Dist., Nov. 21, 2025)...................................................13

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ........................................................................................4

*Wiley v. Universal Music Grp., Inc.*,
No. 25-CV-03095-PCP, 2025 WL 3654085 (N.D. Cal. Dec. 17, 2025) ..........................10, 13

*Wooten v. BioLife Plasma Servs. L.P.*,
807 F. Supp. 3d 1139 (E.D. Cal. 2025)..........................................................................3, 8

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**Rules**

Fed. R. Civ. Proc. 9(b) ........ *passim*

**Statutes**

Cal. Pen. Code § 631(a) ........ *passim*

Cal. Pen. Code § 638.51(a) ........ *passim*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## I. INTRODUCTION

Plaintiffs' Opposition ("Opp.") fails to even acknowledge the most basic and fundamental pleading deficiencies as identified in Defendant GoFundMe, Inc's ("GoFundMe") Motion to Dismiss ("Motion")—the lack of any specific factual allegations of misrepresentations, harms, and their *own experiences* on GoFundMe's website (www.gofundme.com) (the "Website"). Plaintiffs rely on generalized and conclusory assertions referencing generic e-commerce website categories that bear little resemblance with GoFundMe's fundraising platform, and overstated holdings of inapposite case law while ignoring newer, evolving laws surrounding CIPA. As the Ninth Circuit recently reaffirmed in *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025), these scant allegations are simply not sufficient to establish a concrete privacy injury. Just like the plaintiff in *Popa*, Plaintiffs have failed to identify any "embarrassing, invasive, or otherwise private information collected by" the alleged web tracking, and without such allegations, there is no privacy harm and no Article III standing. *Id.* at 791. Additionally, the Complaint fails to satisfy Rule 9(b)'s heightened pleading standard, and in any event fails to state a claim against GoFundMe. Accordingly, each cause of action should be dismissed with prejudice. Finally, even if the Complaint were to survive dismissal (it should not), the Court should strike the facially overbroad class allegations which seek to certify a nationwide class based on the purported experiences of two California residents—riddled with contradictions and differing experiences even between the two named Plaintiffs.

## II. PLAINTIFFS LACK ARTICLE III STANDING

The Opposition confirms that Plaintiffs have not pled their personal or sensitive data was collected during *their* visits to the Website. Plaintiffs instead argue that GoFundMe's assurances on its cookie banner created a privacy expectation that *on its own* is sufficient to establish a concrete privacy injury. *See* Opp. at 1, 5–6. This argument, however, squarely conflicts with controlling Ninth Circuit authority, which makes clear that alleging data collection, even without a person's consent, is not enough. *See Popa*, 153 F.4th at 791. If lack of consent were sufficient, the plaintiff in *Popa*—who alleged that a website collected more than thirty categories of her information during a single visit without her consent—would have had standing. *See id.* at 786, 796. The *Popa* court

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

confirmed that courts must look beyond the circumstances surrounding the collection and focus on the ***type of data*** collected in determining whether a cognizable privacy harm occurred. *Popa*, 153 F.4th at 786, 791. Plaintiffs' reliance on GoFundMe's representations on its cookie banner—representations that varied over time—does not change the analysis. Even assuming at some point a contrary promise not to use certain tracking technologies existed, that promise does not transform the alleged collection of innocuous, non-sensitive information into a concrete privacy injury. Indeed, Article III requires a real invasion of a protected privacy interest—i.e., facts showing that the data collected constituted "embarrassing, invasive, or otherwise private information." *See id.* at 791; *see also Garcia v. Blackhawk Network, Inc.*, 2026 WL 925028, at *6 (C.D. Cal. Apr. 1, 2026) ("In order to satisfy *Popa*'s standing requirement, Plaintiff must allege facts" showing that the tracking technologies "collected especially sensitive or wide-reaching information[.]"). Plaintiffs allege no such facts.

The Ninth Circuit's requirement that plaintiffs must allege highly sensitive or invasive data collection to obtain standing is not new. In *In re Facebook, Inc. Internet Tracking Litig*, 956 F.3d 589 (9th Cir. 2020) ("*In re Facebook*")—a case Plaintiffs repeatedly cite in their Opposition—the Ninth Circuit found a concrete privacy injury was sufficiently alleged based the highly invasive and sensitive nature of the information allegedly collected. *See id.* at 598. The court reached that conclusion only after weighing multiple factors, including the volume of data collected, the mechanism of collection (including collecting data when users had logged off of the social media platform), and the type and nature of the data itself (highly sensitive information). *Id.* Plaintiffs' attempt to analogize this case to *In re Facebook* fails. They assert that the tracking here similarly "continues across websites and across multiple browsing sessions" to build detailed user profiles. Opp. at 6:5–7. That characterization is not only inaccurate but grossly misleading. In *In re Facebook*, plaintiffs alleged that ***Facebook*** collected an "enormous amount of individualized data" through ***Facebook's*** own cookies embedded on "countless websites" that incorporated ***Facebook*** plugins—effectively allowing ***Facebook*** to track users across the internet without consent. 956 F.3d at 602–03. By contrast, this case involves activity confined to a single site—GoFundMe's. Plaintiffs do not—and cannot—allege that GoFundMe engages in anything approaching the kind



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

of pervasive, cross-site surveillance that drove the analysis in *In re Facebook*.

Rather than allege facts about their own visits, Plaintiffs rely on generic allegations about how the technology supposedly works or could hypothetically collect sensitive information. *See* Opp. at 6–7. But they never tie those allegations to themselves or their own experience interacting with GoFundMe's Website. For example, Plaintiffs point to the Website's search bar and argue that entries in it could potentially "reveal sensitive personal or economic circumstances." *Id.* at 7 (citing Compl. ¶¶ 24, 38, 75). Yet Plaintiffs do not allege that they ever used or interacted with GoFundMe's search bar. *See generally id.* Further, Plaintiffs' allegations invoke a generic retail website, not GoFundMe's fundraising platform. Their Complaint alleges the capture of "[s]hopping [b]ehavior," "products viewed or added to shopping carts," and clicks on "ads on the Website," *see id.* ¶ 22—none of which corresponds to the fundraising platform Plaintiffs themselves allege GoFundMe to be. *See id.* ¶ 24 (describing GoFundMe as "an online platform for fundraising by individuals and organizations"). These boilerplate categories, likely lifted wholesale from copycat complaints filed against unrelated commercial websites, confirm that Plaintiffs have pled the capabilities of *some* website's tracking technology in the abstract, not any data actually collected from Plaintiffs on GoFundMe's Website.

In fact, they allege ***nothing*** about their visits to the Website—let alone facts showing that any data collected was personal or sensitive. Plaintiffs therefore fail to allege a concrete privacy injury.[1] *See, e.g.*, *Crano v. Sojern, Inc.*, No. 3:25-CV-02600-JSC, 2026 WL 1670136, at *4 (N.D. Cal. June 9, 2026) (Corley, J.) ("Plaintiff has not alleged actual injury to herself and instead alleges the 'trackers have the capability to use these pieces of information[.]'") (quoting *Wooten v. BioLife Plasma Servs. L.P.*, 807 F. Supp. 3d 1139, 1145–46 (E.D. Cal. 2025); *Torres v. SeatGeek, Inc.*, No. 25-CV-07118-LB, 2026 WL 1495202, at *3 (N.D. Cal. May 28, 2026) (Beeler, M.J.) (no concrete injury based on the collection of "browsing information" that did not include embarrassing or sensitive data or a highly offensive disclosure); *DellaSala v. Samba TV, Inc.*, 2025 WL 3034069,

[1] As this Court recently noted, the standing analysis in these cases necessarily requires an analysis and determination *for each plaintiff* on "what, if any, data was shared, how that data was shared … and the nature of that data to each plaintiff." *Ingraham, et al. v. Capital One Financial Corp.*, No. 24-cv-05985-TLT, 2026 WL 1759155, at * 7 (N.D. Cal. June 16, 2026) (Thompson, J.).



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

at *5 (N.D. Cal. Oct. 30, 2025) (relying on *Popa* and dismissing privacy claim because plaintiffs "have not plausibly alleged a highly offensive violation of a privacy interest."); *Bradshaw et al. v. Lowe's Cos., Inc.*, 2025 WL 3171740, at *5–6 (S.D. Cal. Nov. 12, 2025) (dismissing for lack of concrete injury); *Rodriguez v. Culligan*, 2025 WL 3064113, at *3 (S.D. Cal. Nov. 3, 2025) (same); *Oganyan v. Biolife Plasma Servs. L.P.*, 2025 WL 2979619, at *4 (E.D. Cal. Oct. 22, 2025) (same).

Lastly, Plaintiffs' arguments that they have alleged both economic and non-economic harm fail. *See* Opp. at 7–8. Whether framed as economic or non-economic harm, Plaintiffs allege no facts showing that their data either has independent economic value or that any alleged loss of control caused them actual harm. *See* Opp. at 7. Plaintiffs' reliance on *In re Facebook* is misplaced for the reasons discussed above, as this case lacks comparable factual allegations. Plaintiffs also fail to respond to GoFundMe's argument that they have not plausibly alleged any loss of economic value, thereby waiving the issue. *See* Opp. at 7:17–8; Mot. at 10–11. Accordingly, Plaintiffs' Complaint should be dismissed in its entirety for lack of standing.

## III. PLAINTIFFS' ALLEGATIONS FAIL TO SATISFY RULE 9(B)

Plaintiffs' Opposition incorrectly suggests that Rule 9(b)'s heightened pleading standard does not apply to all of their claims. That is wrong. Plaintiffs concede their entire case is predicated on its allegations that GoFundMe provided "affirmative assurances [] that users could reject tracking technologies and where the plaintiffs had not expressly rejected cookies." Opp. at 6. As the Ninth Circuit has long held—when a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct," ***all pleaded claims*** "sound in fraud," and are therefore subject to Rule 9(b)'s heightened pleading requirements. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003); *see also de Ayora v. Inspire Brands, Inc.*, No. 25-CV-03645-AGT, 2025 WL 3707561, at *3 (N.D. Cal. Dec. 22, 2025) (Tse, M.J.) (dismissing all of plaintiffs' claims for failure to allege the "when" and "where," finding ***all*** of plaintiffs' claims, including CIPA claims and common law privacy claims were sound in fraud); *Insurance King Agency, Inc., v. Ask Media Group, LLC*, No. 24-CV-09509-TLT, 2025 WL 4785111, at *7 (N.D. Cal. May 2, 2025) (Thompson, J.)

Plaintiffs nevertheless argue that the Complaint satisfies Rule 9(b). *See* Opp. at 8–10.

Again, Plaintiffs are wrong. In particular, Plaintiffs fail to allege "when" and "how" the alleged misconduct occurred. Simply alleging that they visited the Website at some point during the last four years *is not* sufficient, particularly because the Website did not continuously display a cookie banner during that period, and when it did, GoFundMe repeatedly revised the banner's appearance. *Compare* Compl. ¶ 27 *with* Dkt. No. 18-1, Declaration of Matthew Murray ("Murray Decl.") ¶ 4, Exh. A.[2] Plaintiffs' own allegations underscore this deficiency. The cookie banner depicted in the Complaint (¶ 27) has not appeared on the Website since at least May 13, 2024—nearly two years before Plaintiffs filed suit. Declaration of Alex Krylov ("Krylov Decl.") ¶¶ 7–10. Critically, all versions of the banner used since May 2024 for California Website visitors have not included a "Reject All" button, which both Plaintiffs claim to have seen and selected.[3] *Id.*; Compl. ¶¶ 81, 90. Moreover, contrary to Plaintiffs' assertion, the Complaint does not provide a "remarkable amount of detail," based on the screenshots and specific cookie names identified. Opp. at 9–10. These screenshots are irrelevant given that they are undated and otherwise bear no connection to Plaintiffs' alleged visits. *Id.*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

For these reasons, courts have repeatedly rejected virtually identical vague pleadings advanced by this same plaintiffs' counsel. *See, e.g.*, *de Ayora*, 2025 WL 3707561, at *4 ("Given that the cookie banners were changed during the accused period, the Court finds that Plaintiffs have not adequately given Defendants notice of the 'when' or the 'where' here. As such, all of Plaintiffs' claims are dismissed for failure to comply with Rule 9(b)."); *Shah v. MyFitnessPal, Inc.*, No. 25-CV-04430-PCP, 2026 WL 216334, at *9 (N.D. Cal. Jan. 27, 2026) (Pitts, J.) (holding virtually identical allegations failed to satisfy Rule 9(b) because they did not provide the defendant with

---

[2] The Court should not permit Plaintiffs to rely on these vague pleading tactics. Absent allegations in their Complaint that they visited the Website and interacted with the cookie banner within two years before filing the Complaint (and within one year for their CIPA claims), their privacy claims should be dismissed as they are time barred under the statute of limitations. *See* Mot. at 13; *see also* Opp. 10–11.

[3] In opposing GoFundMe's Motion to Compel Arbitration, Plaintiff Munoz submitted a declaration stating that he did not visit the Website until "summer 2025." *See* ECF No. 30-3, ¶ 2. That assertion, however, directly contradicts his allegations in the Complaint. Given his visit date, Plaintiff Munoz could not have seen the cookie banner depicted in the Complaint nor could he have selected "Reject All", because GoFundMe removed that version of the banner at least a year earlier. *See* Krylov Decl. ¶ 10; *see also* Compl. ¶¶ 27, 81.

notice of the misconduct alleged because the defendant "cannot, for example, determine what specific representations regarding cookies were made on [the] website on the specific dates that [plaintiffs] visited those websites or how the websites were using any cookies placed on users' devices on those specific dates.").

Moreover, the cases relied upon by Plaintiffs are entirely distinguishable. *See* Opp. at 8–9. In each, the plaintiffs alleged a more specific time period for their visits, and the parties did not dispute that the cookie consent banner remained consistent during that period. *See, e.g.*, *Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-CV-03647-JSC, 2025 WL 3268404, at *7 (N.D. Cal. Nov. 24, 2025) (Corley, J.) (finding Rule 9(b) was satisfied where plaintiff alleged it visited defendant's website on March 2023); *Gabrielli v. Motorola Mobility LLC*, No. 24-CV-09533-JST, 2025 WL 1939957, at *14 (N.D. Cal. July 14, 2025) (Tigar, J.) (finding Rule 9(b) was satisfied where a singular plaintiff alleges website visits during a less than two year period, and defendant did not contend that the popup banner changed during the time period alleged by plaintiff).

This case is different. Plaintiffs allege visits to the Website over a broad four-year period, even though GoFundMe continuously changed its cookie banner and underlying technology during that time. *See* Krylov Decl. ¶¶ 5–10. The Complaint's complete lack of specificity fails to give GoFundMe proper "notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (int. quot. omitted). For these reasons, the Complaint should be dismissed.

## IV. PLAINTIFFS' COMMON LAW PRIVACY CLAIMS FAIL

Plaintiffs' Opposition again sidesteps the central deficiency in the Complaint: Plaintiffs allege no facts showing that GoFundMe collected ***personal or sensitive data*** from them during their visits to the Website. California law imposes an extremely high bar for invasion of privacy claims—one that Plaintiffs cannot meet, even at the pleading stage, without concrete allegations of sensitive data collection. *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014) (Koh, J.) ("The California Constitution sets a 'high bar' for establishing an invasion of privacy claim.") (int. cit. omitted). Instead of alleging what GoFundMe ***actually collected*** from each Plaintiff and



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

what their privacy expectation was in each, Plaintiffs assert in vague terms that they had a reasonable expectation of privacy in "large swaths of their data and communications," which GoFundMe allegedly helped third parties collect after "***specifically representing***" that certain data would not be shared. *See* Opp. at 11. This conclusory assertion is not enough. Even in *In re Facebook*, on which Plaintiffs heavily rely, the Ninth Circuit emphasized that the actionable privacy violation turned on the extraordinary volume and sensitive nature of the data collected—not merely the existence of an alleged misrepresentation in a privacy disclosure. 956 F.3d at 602–05. Because Plaintiffs do not allege what data GoFundMe collected, the Court cannot determine whether Plaintiffs had a reasonable expectation of privacy in that information.[4]

The non-binding cases cited by Plaintiffs are factually distinguishable and otherwise unpersuasive. *See* Opp. at 11:22–12:17. For example, many of the cases included allegations that the defendant collected sensitive or personal data. *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 925, 941 (N.D. Cal. 2023) (Rogers, J.) (summary judgment motion where plaintiffs had proffered "evidence that the data collected [was] vast and sensitive."); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 629–30 (N.D. Cal. 2021) (Koh, J.) (plaintiffs alleged facts establishing they had a "reasonable expectation of privacy based on the amount of data collected, the sensitivity of the data collected, and the nature of the data collection."); *Silver v. Stripe Inc.*, No. 4:20-CV-08196-YGR, 2021 WL 3191752, at *6 (N.D. Cal. July 28, 2021) (Rogers, J.) (finding reasonable expectation of privacy where financial information was collected). Other cases relied upon by Plaintiffs involved the *continued* collection of data from users even after they were *offline* or had the application closed—something Plaintiffs do not and cannot allege here. *See Katz-Lacabe v. Oracle America, Inc.*, 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023) (Seeborg, C.J.); *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 602 (N.D. Cal. 2021) (Tigar, J.).

Even if Plaintiffs could establish that the alleged representations created a reasonable expectation of privacy in their unspecified, non-record browsing data, their common-law privacy

---

[4] Again, Plaintiffs rely ***general and hypothetical*** allegations not their own experiences on GoFundMe's Website to make their unremarkable argument. *See* Opp. at 11; *see also* Compl. ¶ 22. The Complaint even alleges the hypothetical collection of data, such as "shopping behaviors", which may apply to a generic retail website, but does not apply to GoFundMe's fundraising platform Website.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

claims still fail because they do not—and cannot—plead facts satisfying the second required element: that GoFundMe's conduct was "highly offensive." *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022) (Breyer, J.). Courts find the use of tracking technology "highly offensive" at the pleading stage only in limited and extreme circumstances, such as when it captures especially sensitive information (e.g., health or financial data) or when it broadly tracks a user's activity across multiple websites in a manner that renders the intrusion egregious. *See, e.g.*, *Ortiz v. Foris Dax, Inc.*, No. 25-CV-08950-EMC, 2026 WL 1430720, at *4 (N.D. Cal. May 21, 2026) (Chen, J.) (finding conduct was not "highly offensive" where "a company tracks limited information on its own website and discloses it to third parties" but does not continue to track "after plaintiffs stopped using defendant's services."); *Blackhawk Network*, 2026 WL 925028, at *6, *13 ("misrepresentation alone" not "enough to meet the highly offensive bar"). Plaintiffs allege neither. The Opposition points to no facts in the Complaint showing that Plaintiffs' sensitive information was collected or that GoFundMe engaged in broad, invasive tracking.

Instead, Plaintiffs argue that the Court cannot resolve this issue at the pleading stage because whether an intrusion is "highly offensive" is a question of fact. Opp. at 12:24–13:5. That is simply wrong. Courts routinely dismiss privacy claims as a matter of law where the alleged conduct does not rise to the level of a highly offensive intrusion. *See, e.g.*, *Crano*, 2026 WL 1670136, at *4 ("'disclosure of one's email address and IP address, without more, does not bear similarity to the 'highly offensive' interferences or disclosures that were actionable at common law.'") (quoting *Wooten*, 807 F. Supp. 3d at 1144); *SeatGeek*, 2026 WL 1495202, at *7 (rejecting claims for invasion of privacy because plaintiff had "not pleaded that his browsing information was embarrassing or sensitive data or that its disclosure would be highly offensive."); *Morilha v. Alphabet Inc.*, 2024 WL 5205542, at *4 (N.D. Cal. Dec. 23, 2024) (Tigar, J.) (dismissing privacy claim at the pleading stage where alleged disclosure of IP addresses and geolocation data was not sufficiently egregious).

Because Plaintiffs' allegations fall well short of the required "highly offensive" threshold, their common law privacy claims fail as a matter of law and must be dismissed.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## V. PLAINTIFFS' CIPA CLAIMS FAIL

### A. Plaintiffs' Wiretapping (CIPA § 631) Claim Is Not Sufficiently Pled

As Plaintiffs concede, Plaintiffs proceed solely under CIPA's fourth prong for aiding and abetting liability. *See* Opp. at 13. The Complaint, however, does not sufficiently allege an underlying predicate violation by a third party such that derivative liability can be attached to GoFundMe. Specifically, Plaintiffs have failed to allege that a third party intercepted—meaning they read or attempted to read—the contents of Plaintiffs' own communications while they were in transit. The arguments advanced in their Opposition entirely miss the point.

*Plaintiffs Do Not Allege the "Contents" of "Communications."*

Plaintiffs argue that they adequately pled that the contents of their communications were intercepted, relying on generic allegations about search queries entered into the Website. *See* Opp. at 13 ("This is a direct allegation that search queries—unambiguous 'contents' of communications—were intercepted.") But Plaintiffs did not allege that they used the search function on the Website or personally sent ***any communications*** to the Website at all—let alone communications that have "contents" capable of interception. *See In re Zynga Priv. Litig.*, 750 F.3d 1098, 1102, 1107–08 (9th Cir. 2014) (rejecting the notion that descriptive urls created after clicking a link on a website constitutes a communication with contents under ECPA, CIPA's federal analog). Outside of allegedly clicking "Reject All" on the cookie banner, the Opposition does not identify (and cannot identify) a single allegation in the Complaint describing how either Plaintiff personally interacted with or input any information into any Website. Plaintiffs do not allege that they entered search queries, names, demographic information, email addresses, location data, payment information, birthday or any other substantive content. Nor do they allege that they searched for or viewed any fundraising campaign. In short, ***they plead no personal input or interaction whatsoever***.

That failure renders many of Plaintiffs' cited authorities inapposite. In each of those cases, the plaintiffs affirmatively alleged specific user input communications they personally made on the website at issue. *See* Opp. at 13–14 (citing *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 860, 871 (N.D. Cal. 2025) (Orrick, J.) (finding sufficient that plaintiff alleged its ***own*** contents of a



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

communication were collected after plaintiff alleged ***specific dates and pages visited*** where the cookie banner remained unchanged); *St. Aubin v. Carbon Health Techs., Inc.*, No. 24-CV-00667-JST, 2024 WL 4369675, at *2 (N.D. Cal. Oct. 1, 2024) (Tigar, J.) (plaintiff alleges specific instances where she visited the website to schedule medical appointments to obtain COVID-19 vaccine, implicating specific health data information); *Brown*, 685 F. Supp. 3d at 935–36 (plaintiffs provided examples of descriptive URLs Google allegedly intercepted while plaintiffs were browsing on incognito mode); *Katz-Lacabe*, 668 F. Supp. 3d at 944–45 (finding specific allegations that plaintiffs entered data into forms sufficient, but did not rule on plaintiffs' lack of specificity for full-string detailed URLs); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 859 (C.D. Cal. 2024) (plaintiffs allege specific search terms were entered into a specific search bar on the website).

Ultimately, Plaintiffs rely on generalized assertions about the capabilities of third-party cookies and boilerplate categories—but that is not enough. Absent allegations about ***their own user input communications***, their claims fail as a matter of law. *See, e.g.*, *Wiley v. Universal Music Grp., Inc.*, No. 25-CV-03095-PCP, 2025 WL 3654085, at *7 (N.D. Cal. Dec. 17, 2025) (Pitts, J.) (collecting cases).

<u>*Plaintiffs Do Not Allege a Contemporaneous Interception.*</u>

As explained above, the Complaint does not allege that Plaintiffs sent any communications to the Website. Without them, Plaintiffs cannot plead a contemporaneous interception. Moreover, given that Plaintiffs do not allege ***what*** cookies and corresponding software were installed or triggered *after* interactions with the cookie banner, it is unclear what third party they are alleging performed the interception. Given these deficiencies, Complaint's allegations fail to satisfy the contemporaneous interception requirement under Section 631(a). Even if Plaintiffs did allege their communication was intercepted (they did not), the Opposition identifies no factual allegations explaining how any third party read—or even attempted to read—the contents of Plaintiffs' communications during transmission as required to establish a wiretapping violation. *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) (Corley, J.) ("But this complaint is entirely speculative. How do these third parties interface with Defendant's chat platform other than via 'code'? It is impossible to infer from the complaint. Thus, Plaintiff's

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

simultaneity claims are just too conclusory to survive…”).

Nor could it, because Plaintiffs fail to identify any specific third-party interceptor that read or attempted to read their specific communication. *See* Compl. ¶¶ 64–72 (vague, generalized allegations about how third-party website technologies operate in the abstract, but failing to allege one singular cookie specifically operated as such). For this reason alone, the cases Plaintiffs rely on are factually distinguishable. In each, the plaintiff alleged that a *specific* third-party intercepted communications in real time. *See* Opp. at 14–15 (citing *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 838 (E.D. Cal. 2025) (pleading that data was simultaneously intercepted in real time using a specific Meta Pixel); *see also Valenzuela*, 674 F. Supp. at 759 (finding plaintiff failed to plead the contemporaneous interception requirement); *Carbon Health Techs., Inc.*, 2024 WL 4369675, at *7 (dismissing Section 631(a) claim as to Google Pixel because plaintiff did not allege how and when the interception occurs)). Even if Plaintiffs did identify a specific third-party interceptor—which they did not—the deficiency that plagues their entire pleading also dooms their argument on contemporaneous interception: they fail to tie the hypothetical interactions to their ***actual experiences*** on GoFundMe's Website. Allegations about how third-party systems may process data in the abstract are not a substitute for facts showing a contemporaneous interception of Plaintiffs' own content-bearing communications. *Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1126 (C.D. Cal. 2024).

*Plaintiffs Do Not Allege Intent.*

Finally, Plaintiffs fail to allege sufficient facts to show GoFundMe *intended* to aid and abet a third party's illegal wiretapping of Plaintiffs' communications. Plaintiffs do not dispute, and therefore concede, that Plaintiffs must allege scienter for a claim under section 631. *See* Opp. at 17. Rather, Plaintiffs misplace their reliance on *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 954 (N.D. Cal. 2023) (Chen, J.) which did not involve a cookie banner or the rejection of cookies. In *James*, the court inferred intent based on Disney's contractual relationship with Oracle—something Plaintiffs do not allege here. *Id.* Further, Plaintiffs distort *Doe v. Amgen*, 2024 WL 3811251 (C.D. Cal. Aug. 13, 2024), *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) (Alsup, J.), and *Kotlarsz v. Integrity Vehicle Servs., Inc.*, 2024 WL 4800695 (C.D.

Cal. Sep. 3, 2024) to suggest that allegations of intentional enabling of third-party cookies suffice to establish the intent requirement. *See* Opp. at 17. But ***none*** of these cases held that the intent element is satisfied by such conclusory allegations—they never addressed the issue. Instead, they simply found that enabling third-party misconduct *could* state a claim under Section 631's fourth prong without analyzing whether the requisite criminal intent was established. *See Amgen*, 2024 WL 3811251, at *2 (finding that as a party to its own communication, defendant cannot be liable under Section 631(a) unless plaintiff shows defendant enabled third party's eavesdropping or interception); *Revitch*, 2019 WL 5485330, at *2 (same); *Kotlarsz*, 2024 WL 4800695, at *7 (finding plaintiff failed to plead facts linking defendant to the website sufficient to make aiding and abetting allegations plausible).

Because Plaintiffs' allegations fail to satisfy the requirements under CIPA's fourth prong for aiding and abetting liability, their wiretapping claim under Section 631 fails and should be dismissed.

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

**B. Plaintiffs' Pen Register (CIPA § 638.51) Claim Is Not Sufficiently Pled**

Simply put, Section 638.51 does not extend to the website-tracking scenario at issue in this case. As Judge Chhabria recently emphasized, by bringing these types of claims, Plaintiffs seek to apply "CIPA's already-obtuse language" to new internet technologies that were never contemplated by the California Legislature. *See Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1112 (N.D. Cal. 2025) (Chhabria, J.) ("The language of CIPA is a total mess. It was a mess from the get-go, but the mess gets bigger and bigger as the world continues to change[.]"). Contrary to Plaintiffs' contention, the statutory context—and CIPA's structure as a whole—makes clear that "pen register" cannot reasonably encompass the factual scenario involving cookies here.

The Opposition sidesteps this argument, claiming it "contradicts the plain text of the statute, which is deliberatively expansive." *See* Opp. at 18 (cleaned up). Each of the cases cited by Plaintiffs merely relies on the "expansive" definitions of "pen registers" and "electronic communication" to conclude that Section 638.51 *could plausibly* apply to website technology. *See, e.g.*, *Mirmalek v. L.A. Times Commc'ns LLC*, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) (Breyer, J.) (relying on *Greenley*); *Haleon*, 815 F. Supp. 3d at 871 (relying on *Greenley* and *Mirmalek*); *Greenley v.*

*Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023) ("[T]he Court cannot ignore the expansive language in the California Legislature's chosen definition."). But none of these decisions meaningfully examine legislative history to confirm their interpretation aligns with legislative intent or, more importantly, the factual scenario pled here.

Plaintiffs also make no effort to reconcile the fundamental differences between the Legislature's intent underlying CIPA and the distinct policy objectives behind the CCPA and CPRA. *See* Opp. at 20. The term "pen register" should be afforded its commonsense meaning within the context of the statutory scheme and its legislative history. Section 638.51 does not apply to website cookies in this context—and the Legislature in 2015 never intended it to. *See Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *3 (9th Cir. July 9, 2025) ("If the California legislature wanted to apply [CIPA] to the internet, it could do so by amending … or adding to CIPA's statutory scheme."); *Variety Media, LLC v. Superior Court*, No. B350578 (Cal. Ct. App., 2nd Dist., Nov. 21, 2025) (a pending California Court of Appeals case where the court is considering whether Section 638.51 applies to website tracking technologies); *see also Blaker v. NetScout Systems, Inc.*, No. 25STCV31283, 2026 WL 1709143, at *3 (Cal. Super. May 27, 2026) (sustaining a demurrer when interpreting the plain statutory text of Sections 638.51 and 638.52(d), holding "[t]he use of 'telephone line' in this Code section explicitly narrows the scope of the definition of 'pen register' or 'trap and trace device' in the context of the statute…If the legislature had intended for section 638.51 to apply to commercial websites, it would have stated either in the statute itself or in the surrounding materials."); *see also Rodriguez v. Ink Am. Int'l Grp. LLC*, 2025 WL 4034985, at *4 (Cal. Super. Dec. 10, 2025) ("Penal Code § 638 does not clearly apply to the web functions at issue in this case and [would] expand the interpretation of the statute in ways not clearly intended by the Legislature").

Even assuming CIPA's pen register provisions could apply to website tracking technologies under circumstances different than these (they do not), Plaintiffs' claims still fail because the Complaint does not allege the specific "dialing, routing, addressing, or signaling information" for outgoing communications that was tracked. *See Universal Music Grp.,* 2025 WL 3654085, at *9 ("[T]hey must identify not only their communications with UMG's websites but also the specific

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

'dialing, routing, addressing, or signaling information' for outgoing communications that was tracked."). For example, in the classic pen-register scenario, the device is used to capture outgoing dialing, routing, and addressing information from a known telephone number. For that reason, when law enforcement seeks a court order authorizing attachment of a pen register, they must identify the specific phone number that the device will track. By analogy, Plaintiffs' theory assumes that GoFundMe attached a third-party cookie to a known IP address or device identifier to track a website visitor's outgoing "calls"—that is, dialing, routing, and addressing information. But Plaintiffs never allege these mechanics, let alone identify any ***outgoing*** dialing, routing, or addressing information they themselves transmitted. GoFundMe does not argue that Plaintiffs must plead every technical detail. Plaintiffs must, however, allege at least some routing information tied to ***their own communications*** with the Website that fits within the statutory framework. They do not, and that omission is fatal. Plaintiffs' failure to adequately plead their pen register claim warrants dismissal.

## VI. <u>PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS</u>

An unjust enrichment claim may proceed ***only when*** pled as quasi-contract claims. *See, e.g.*, *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038–39 (9th Cir. 2016). Yet Plaintiffs fail to identify any quasi-contract claim that could plausibly support this theory. That defect alone is dispositive. Nor do Plaintiffs explain how GoFundMe benefited from using their information when the Website is free and publicly accessible. Instead, they speculate GoFundMe *could* retain a benefit by allegedly invading Plaintiffs' privacy and purported profits—however, these allegations, at best support how third parties benefit from the alleged collection, not GoFundMe. *See* Opp. at 20–21; *see also Foris Dax, Inc.*, 2026 WL 1430720, at *9 (dismissing unjust enrichment claim where plaintiffs failed to describe how defendant, not the third parties benefited from the purported data collection). Additionally, Plaintiffs' reliance on *Haleon* is distinguishable here because it is predicated on defendant's "misrepresentation that users could 'Reject All' cookies," while here, the allegations lack specificity of Plaintiffs' visits to pinpoint ***what*** cookie banner appeared during their visit(s). *See Haleon*, 815 F. Supp. 3d at 875. Because the Complaint is devoid of any facts showing

GoFundMe profited from *their* data, the unjust enrichment claim fails and must be dismissed.[5]

## VII. PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE STRICKEN

Plaintiffs' Opposition entirely misstates their own Complaint—purporting that the proposed class simply encompasses persons in "the State of ***California***," Opp. at 21 (emph. added), when it in fact impermissibly seeks to certify a class in "the ***United States***" during an unspecified time period. Compl. ¶ 97 (emph. added). Further, Plaintiff Munoz declared under penalty of perjury that during "summer 2025" he clicked "Reject all" to GoFundMe's cookie banner—even though GoFundMe did not display a cookie banner in California with such language during that time period. *See* ECF No. 30-3 ¶¶ 2–3; *see also* Krylov Decl. ¶¶ 7–10. Even among the two named Plaintiffs, there are highly individualized claims and analysis—including such basic issues as what cookie banner they encountered when they visited GoFundMe's Website—such that it is clear that the class claims cannot be maintained. *See Ingraham*, 2026 WL 1759155, at * 6–7 (denying class certification where plaintiff's privacy claims here depend on an individualized assessment of each prospective plaintiffs' interactions with the tracking technology and the amount and type of information included on their credit card application.") Accordingly, Plaintiffs' class allegations should be stricken because California laws (which are the sole statutory claims) do not protect out-of-state plaintiffs, Plaintiffs' claims are highly individualized, and there is no specified time period. *See Timothee v. Meta Platforms, Inc.*, No. 25-CV-05106-LB, 2026 WL 1130363, at *8 (N.D. Cal. Apr. 27, 2026) (striking plaintiffs' class allegations during motion to dismiss phase where plaintiffs alleged a nationwide class during the time period preceding the date of filing because "California laws do not protect out-of-state plaintiffs, and the plaintiffs' claims are inherently individualized.").

## VIII. CONCLUSION

For the foregoing reasons, GoFundMe respectfully requests that Plaintiffs' Complaint be dismissed in its entirety with prejudice.

[5] Plaintiffs' Fraud and Misrepresentation claim also fails. Plaintiffs' Opposition merely repeats the flawed assertion that general allegations about GoFundMe's purportedly false representations satisfy Rule 9(b)'s heightened pleading standard. *See* Opp. at 20. As detailed in Section III, *supra*, they do not.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Dated: June 24, 2026

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: */s/ Kamran B. Ahmadian*
Bethany G. Lukitsch
Kamran B. Ahmadian
Safina Motiwala

*Attorneys for Defendant*
GOFUNDME, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES