UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIRLEY VANASCH, et al.,<br>Plaintiffs,<br>v.<br>GOFUNDME INC.,<br>Defendant. | Case No. 26-cv-01217-TLT<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. Nos. 18, 19 |

Before the Court is Defendants' motion to compel arbitration. The parties dispute whether Defendant's website sufficiently notifies customers that they are agreeing to an arbitration provision when they create an account on GoFundMe. The Court finds that Defendant's website provides sufficient notice.

Having considered the parties' briefs, the relevant legal authority, and for the reasons below, the Court **GRANTS** Defendants' motion to compel arbitration

## I. BACKGROUND

### A. Procedural History

Plaintiffs Sal Munoz and Shirley VanAsch (collectively, "Plaintiffs") filed this putative class action on February 9, 2026, asserting violations of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631 and 638.51, and common law fraud, deceit, and/or misrepresentation, arising from GoFundMe's use of tracking technologies on its website.

On April 29, 2026, GoFundMe, Inc. ("Defendant" or "GoFundMe") filed its Motion to Compel Arbitration solely as to Plaintiff Munoz. ECF 18. Plaintiff Munoz opposed the motion on June 3, 2026. ECF 30 Defendant filed a reply on June 24, 2026. ECF 32.

### B. Factual Background

GoFundMe is a publicly accessible online fundraising and allows individuals to raise

money for and donate to a variety of causes. GoFundMe also allows users to share fundraising campaigns to reach potential donors and to browse and donate to various campaigns directly through its Website.

When consumers visit GoFundMe's website at www.gofundme.com (the "Website"), GoFundMe displays to them a popup cookie consent banner. Compl. ¶¶ 1, 27. The banner states: "We use cookies[.] By clicking 'Accept all', you agree to the storing of cookies on your device for functional, analytics, and advertising purposes." *Id.* ¶ 27. Users are then given three options: "Accept All," "Reject All," or "More choices." *Id.* Plaintiffs allege that they clicked "Reject All." *Id.* ¶¶ 82–83, 91–92.

Plaintiffs allege that GoFundMe caused multiple third parties—primarily Google LLC, through its DoubleClick, Google Ads, and Google Analytics platforms—to place and transmit cookies on users' devices and to receive users' Private Communications, even after users clicked "Reject All." *Id.* ¶¶ 3–4, 33–72. These cookies allowed the Third Parties to track and collect users' browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and geolocation data (collectively, "Private Communications"). *Id.* ¶ 4–5, 22, 32–40, 45. The Third Parties use the personal information to profile users and target them with advertising for the Third Parties' own financial gain. *Id.* ¶¶ 5, 35, 61–63, 74–78.

Plaintiffs visited the Website on one or more occasions during the last four years to seek information about GoFundMe's services and to view fundraising campaigns. *Id.* ¶¶ 79, 88. When they visited, GoFundMe immediately presented them with its popup cookie consent banner. *Id.* ¶¶ 81, 90. They each clicked "Reject All," relying on GoFundMe's representation that doing so would prevent the placement of non-essential tracking cookies, and then browsed the Website. *Id.* ¶¶ 82–83, 91–92.

Plaintiffs allege that despite their rejections, GoFundMe nonetheless caused the Third Parties' cookies to be placed on their devices and caused their Private Communications to be transmitted to third parties. *Id.* ¶¶ 83–86, 92–95.

United States District Court
Northern District of California

Plaintiff Munoz created a free account on GoFundMe's free and publicly available Website on March 2, 2017. *See* Declaration of Matthew Murray ("Murray Decl."), ¶ 3. At that time, users could sign up for an account by clicking "Sign Up" and selecting one of two options: (1) "Use My Facebook Account" or (2) Use My Email Address. *Id.* ¶¶ 5-7. Munoz chose the "Use My Facebook Account" option and, in doing so, accepted GoFundMe's 2017 Terms of Service. *Id.* The "Use My Facebook Account" button appeared directly above the statement: "By continuing, you agree with the GoFundMe terms and privacy policy." *Id.* The hyperlink to the 2017 Terms of Service was underlined and in 14-point pixels, a font used frequently on the GoFundMe Website. *Id.* ¶ 5.

In March 2017, the first paragraph of the 2017 Terms of Service includes in bold green letters and hyperlinked, "Dispute Resolution By Binding Arbitration." Murray Decl., ¶ 8, Ex. B at 1. The 2017 Terms of Service further explained GoFundMe's dispute resolution procedures under the heading: "Dispute Resolution by Binding Arbitration: PLEASE READ THIS SECTION CAREFULLY AS IT AFFECTS YOUR RIGHTS," which appeared in green, underlined, and capitalized text. That section stated, in all capital letters: "YOU AND GOFUNDME AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING." Id. ¶ 9, Ex. B at 11 (the "2017 Arbitration Agreement").

## II. MOTION TO COMPEL ARBITRATION

### A. LEGAL STANDARD

The Federal Arbitration Act (FAA) governs any arbitration agreement that is "written" and in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* As the Supreme Court has explained, "[t]he overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). This "liberal federal policy favoring arbitration

agreements" applies "notwithstanding any state substantive or procedural policies to the contrary." Id. at 346, (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, (1983)).

In deciding whether to compel arbitration, a district court must determine (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). If the court is satisfied "that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses*, 460 U.S. at 24–25.

Under California law, a court may refuse to enforce a provision of a contract if it determines that the provision was "unconscionable at the time it was made." Cal. Civ. Code § 1670.5(a). To establish this defense, the party opposing arbitration must demonstrate procedural and substantive unconscionability, but both "need not be present in the same degree." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1000 (9th Cir. 2021) (citation omitted). Instead, a sliding scale exists such that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.*

## B. DISCUSSION

GoFundMe requests this Court compel Munoz to submit his alleged claims against GoFundMe to individual arbitration in accordance with the Arbitration Agreement. ECF 18 at 7. Plaintiff argues that Defendant's sign-up screen did not provide conspicuous, unambiguous notice that clicking that button constituted agreement to the terms at issue. ECF 30 at 5.

### i. The Parties Formed a Valid Agreement

The party seeking to compel arbitration "bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *See Johnson v. Walmart Inc.*, 57

F.4th 677, 681 (9th Cir. 2023). When evaluating whether a party is bound by an arbitration agreement, federal courts "'apply ordinary state-law principles that govern the formation of contracts' to decide whether an agreement to arbitrate exists." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting *First Options of Chi. Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *see also Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (noting that although the FAA preempts state laws that are only applicable to arbitration agreements, general contract principles and defenses "grounded in state contract law, may operate to invalidate arbitration agreements") (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). To form a contract under California law, there must be "actual or constructive notice of the agreement" and a "manifest[ation of] mutual assent." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512-13 (9th Cir. 2023).

"Courts in the Ninth Circuit and other circuits acknowledge that mutual assent manifests when internet users accept 'clickwrap' agreements." *Adibzadeh v. Best Buy, Co. Inc.*, No. 20-CV-06257-JSW, 2021 WL 4440313, at *5 (N.D. Cal. Mar. 2, 2021) (collecting cases). "A '*clickwrap*' agreement is one in which an internet user accepts a website's terms of use by clicking an 'I agree' or 'I accept' button, with a link to the agreement readily available." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 464, 289 Cal.Rptr.3d 1 (2021). The website operator can show that a contract has been formed where the consumer has actual knowledge of the agreement, or based on an inquiry notice theory if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022)

Here Plaintiff Munoz was presented with a basic and clear screen with an option to "Use My Facebook Account" or "Use My Email Address" with the explicit understanding that "[b]y continuing, you agree with the GoFundMe terms and privacy policy." Murray Decl., ¶ 6. By creating an account with GoFundMe, Munoz received reasonably conspicuous notice of the 2017 Terms of Service and manifested his assent by clicking a button. The hyperlink to the Terms of Service appeared underlined, was visually distinct from the surrounding text and displayed on an

uncluttered webpage directly beneath the "Use My Facebook Account" button. *See* Murray Decl., ¶ 6. The presentation of the terms contains key features which make the display of information sufficiently conspicuous to give Plaintiffs notice of their agreement to arbitrate their disputes. *Berman*, 30 F.4th at 856 (assessing the font size and format, overall design of the webpage, the use of a contrasting font color (typically blue) to identify an important hyperlink). The fact that the hyperlink was not a different color than the remaining text is not dispositive here. Patrick, 93 F.4th at 477 (finding "[t]hat the links are not blue, underlined, or capitalized does not undercut the district court's conclusion that [defendant] provided [plaintiff] with reasonably conspicuous notice" of the Terms).

Moreover, the terms are clear, and the agreement does not contain indications of oppression or surprise, or a high degree of substantive unconscionability sufficient to render the agreement unenforceable. *Shroyer v. New Cingular Wireless Servs., Inc*., 498 F.3d 976, 981 (9th Cir. 2007); *Chavarria v. Ralphs Grocery Co*., 733 F.3d 916, 922 (9th Cir. 2013); *Longboy v. Pinnacle Prop. Mgmt. Servs., LLC*, 718 F. Supp. 3d 1004, 1014 (N.D. Cal. 2024) (surprise exists when "the allegedly unconscionable provision is hidden within a prolix printed form").

## III. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's motion to compel arbitration with respect to Plaintiff Munoz. This action is **STAYED** during the pendency of the parties' arbitration proceedings. *Smith v. Spizzirri*, 601 U.S. 472, 472 (2024).

Within 90 days, and no later than December 3, 2026, the parties shall file a joint statement informing the Court of the name of the assigned mediator and the contemplated arbitration schedule.

Thereafter the parties shall provide a status report every 90 days.

//

//

The parties' further case management conference set for December 10, 2026 is hereby **VACATED**. A further case management conference is set for March 25, 2027. The Court will consider lifting the stay at that time.

This Order resolves ECF 18

IT IS SO ORDERED.

Dated: September 11, 2026

TRINA L. THOMPSON
United States District Judge